Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel, New Jersey 08054-0015
856.761.3400
856.761.1020 fax

Attorneys for Defendant Subaru of America, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Aimee Hickman, Jared Hickman, William Treasurer, Kelly Drogowski, and Frank Drogowski, individually and on behalf of all others similarly situated,** | Case No. 1:21-CV-02100-NLH-AMD |
| Plaintiffs; | **Defendant Subaru of America, Inc.'s Brief in Support of its Motion to Dismiss** |
| v. | |
| **Subaru of America, Inc. and Subaru Corporation f/k/a Fuji Heavy Industries, LTD.,** | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

    A.    Plaintiffs' allegations ............................................................................ 2

    B.    The warranties made by Subaru of America, Inc. ............................... 2

    C.    The alleged design defect.................................................................... 3

    D.    The claims and relief sought ............................................................... 3

III.    ARGUMENT ...................................................................................................... 4

    A.    Plaintiffs' Magnuson-Moss Warranty Act claim must be dismissed
because the Court lacks subject matter jurisdiction over that claim. (Count
VIII) ..................................................................................................... 4

    B.    Plaintiffs' unjust enrichment claims fail for several reasons. (Count VI) ............. 7

        1.    Plaintiffs' unjust enrichment claim fails because plaintiffs did not
purchase their vehicles directly from SOA. ................................. 8

        2.    It is undisputed that an express contract covers the identical subject
of the unjust enrichment claims and Plaintiffs rely on such a
contract in pleading their unjust enrichment claims. ................................. 8

        3.    Plaintiffs do not allege they expected remuneration from SOA. ................ 9

    C.    Plaintiffs' breach of express warranty claims must be dismissed because
the New Vehicle Limited Warranty does not cover design defects.
(Counts I & VIII) ................................................................................ 9

    D.    Plaintiff Treasurer fails to state a claim for breach of express or implied
warranty because he affirmatively alleges fulfillment of the New Vehicle
Limited Warranty and that his vehicle is merchantable. (Counts I, II &
VIII) ................................................................................................... 13

    E.    Plaintiffs do not allege their vehicles are unmerchantable or unfit for their
ordinary purpose. (Counts II & VIII) ................................................ 15

    F.    Plaintiff Treasurer lacks the requisite privity to assert a claim for breach of
the implied warranty of merchantability against SOA. (Counts II & VIII) .......... 17

    G.    Plaintiffs' fraud claims fail for several reasons. (Counts III—VI) ...................... 17

        1.    Plaintiffs fail to plead fraud with the particularity required by
Federal Rule of Civil Procedure 9(b)........................................ 17

        2.    The economic loss doctrine bars Plaintiffs' common law fraud
claims. ....................................................................................... 22

        3.    Plaintiffs' state consumer fraud claims fail for additional reasons........... 23

    H.    Plaintiffs seek relief they are not entitled to. ................................... 24

        1.    Plaintiffs' request for an order requiring SOA to issue a voluntary
recall is preempted by the Safety Act. ...................................... 24

        2.    Plaintiffs' request for injunctive relief with respect to supposed
false advertising fails as a matter of law. ................................. 26

IV.    CONCLUSION................................................................................................. 26

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abraham v. Volkswagen of Am., Inc.*,
  795 F.2d 238 (2d Cir. 1986)......................................................................5

*In re Actimmune Mktg. Litig.*,
  No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408 (N.D. Cal. Nov. 6,
  2009) ............................................................................................19

*Alban v. BMW of N. Am., L.L.C.*,
  No. 09-5398 (DRD), 2011 U.S. Dist. LEXIS 26754 (D.N.J. Mar. 15, 2011) .........................22

*Amato v. Subaru of Am., Inc.*,
  No. 18-16118, 2019 U.S. Dist. LEXIS 209659 (D.N.J. Dec. 5, 2019)...........................10, 12

*Angiano v. Anheuser-Busch Inbev Worldwide*,
  No. CV 21-01879 PA, 2021 U.S. Dist. LEXIS 66914 (C.D. Cal. Apr. 5, 2021).....................6

*Arndt v. Extreme Motorcycles*,
  No. 1:07cv302, 2007 U.S. Dist. LEXIS 95625 (W.D.N.C. Dec. 26, 2007) .........................14

*Atchison, T. & S.F.R. Co. v. Buell*,
  480 U.S. 557 (1987)................................................................................6

*B&K Coastal, LLC v. Promenade at Surf City, LLC (In re B&K Coastal, LLC)*,
  Nos. 11-08609, 12-00287, 2013 Bankr. LEXIS 1914 (Bankr. E.D.N.C. May 9,
  2013) ............................................................................................9

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017)............................................................19

*Berni v. Barilla S.P.A.*,
  964 F.3d 141 (2d Cir. 2020)......................................................................26

*Birdsong v. Apple,Inc.*,
  590 F.3d 955 (9th Cir. 2009) ....................................................................16

*BK Trucking Co. v. PACCAR, Inc.*,
  Civ. Act. No. 15-2282, 2016 U.S. Dist. LEXIS 85149 (D.N.J. June 30, 2016) .....................14

*Block v. Jaguar Land Rover N. Am., LLC*,
  No. 15-cv-5957 (SRC), 2016 U.S. Dist. LEXIS 69085 (D.N.J. May 26, 2016).................8, 19

*Block v. Jaguar Land Rover N. Am., LLC*,
  No. 15-cv-5957 (SRC), 2017 U.S. Dist. LEXIS 31807 (D.N.J. Mar. 7, 2017) .........................9

*In re Bridgestone/Firestone Inc., ATX, ATX II & Wilderness Tires Prods. Liab.*
*Litig.*,
   153 F. Supp. 2d 935 (S.D. Ind. 2001) .......................................................25

*Brisson v. Ford Motor Co.*,
   No. 8:08-cv-2491-T-26MAP, 2009 U.S. Dist. LEXIS 137789 (M.D. Fla. Jan.
   20, 2009) .......................................................................................5

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) .................................................................23

*Bruce Martin Constr. v. CTB, Inc.*,
   735 F.3d 750 (8th Cir. 2013) .................................................................10

*Bussian v. DaimlerChrysler Corp.*,
   411 F. Supp. 2d 614 (M.D.N.C. 2006) ..............................................25, 26

*Butcher v. DaimlerChrysler Co.*,
   No. 1:08CV207, 2008 U.S. Dist. LEXIS 57679 (M.D.N.C. July 29, 2008)...........................14

*Cadena v. Am. Honda Motor Co.*,
   No. CV 18-4007-MWF, 2019 U.S. Dist. LEXIS 117584 (C.D. Cal. May 29,
   2019) .......................................................................................5, 6

*Carlson v. Gen. Motors. Corp.*,
    883 F.2d 287, 297 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990)...................................16

*Chi. v. EDF*,
   511 U.S. 328 (1994)...........................................................................7

*Clark v. Actavis Grp. HF*,
   567 F. Supp. 2d 711 (D.N.J. 2008) ...........................................................26

*Coba v. Ford Motor Co.*,
   932 F.3d 114 (3d Cir. 2019)...........................................................10, 12, 13

*Coba v. Ford Motor Co.*,
   No. 12-1622 (KM) (MAH), 2016 U.S. Dist. LEXIS 136283 (D.N.J. Sept. 30,
   2016) .......................................................................................13

*Cowart v. Nicklos Drilling Co.*,
   505 U.S. 469 (1992)...........................................................................6

*Cox House Moving, Inc. v. Ford Motor Co.*,
   CA No. 7:06-1218-HMH, 2006 U.S. Dist. LEXIS 55490 (D.S.C. Aug. 8,
   2006) .......................................................................................24

- iii -

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*,
   482 U.S. 437 (1987).................................................................................................7

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)...............................................................................................25

*Cross v. Ciox Health, LLC*,
   No. 4:19-cv-7-FL, 438 F. Supp. 3d 572 (E.D.N.C. 2020) .....................................17

*Cummings v. FCA US LLC*,
   401 F. Supp. 3d 288 (N.D.N.Y. 2019) .............................................................12, 20

*Darne v. Ford Motor Co.*,
   No. 13 C 03594, 2015 U.S. Dist. LEXIS 169752 (N.D. Ill. Dec. 18, 2015) ..........14

*Defillippo v. Whirlpool Corp.*,
   No. 1:18-cv-12523-NLH-AMD, 2019 U.S. Dist. LEXIS 148304 (D.N.J. Aug.
   30, 2019)...............................................................................................................8

*Dialectic Distrib., L.L.C. v. Power Play Mktg. Grp., L.L.C.*,
   No. 2:18-03388, 2018 U.S. Dist. LEXIS 217827 (D.N.J. Dec. 31, 2018)............8, 9

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) .....................................................................24

*Duncan v. Nissan N. Am., Inc.*,
   305 F. Supp. 3d 311 (D. Mass. 2018) ..................................................................23

*E. River S.S. Corp. v. Transamerica Delaval*,
   476 U.S. 858 (1986)..............................................................................................23

*Ebin v. Kangadis Food Inc.*,
   No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 107224 (S.D.N.Y. July 25,
   2013) .................................................................................................................5, 7

*Far East Conf. v. United States*,
   342 U.S. 570 (1952)..............................................................................................26

*Ferranti v. Hewlett-Packard Co.*,
   No. 5:13-cv-03847-EJD, 2014 U.S. Dist. LEXIS 131249 (N.D. Cal. Sept. 16,
   2014) ...................................................................................................................14

*Fisher v. Honda N. Am.*,
   No. LA CV13-09285 JAK(PLAx), 2014 U.S. Dist. LEXIS 84570 (C.D. Cal.
   June 12, 2014)......................................................................................................22

*Floyd v. Am. Honda Motor Co.*,
   966 F.3d 1027 (9th Cir. July 28, 2020).......................................................4, 5, 6, 7

*Floyd v. Am. Honda Motor Co.*,
  No. 2:17-cv-08744-SVW-AS, 2018 U.S. Dist. LEXIS 132750 (C.D. Cal. June
  13, 2018) ...................................................................................................................5, 6

*Foster v. Attias*,
  Nos. 18-4853, 19-866, 2020 U.S. Dist. LEXIS 165136 (E.D. Pa. Sept. 9,
  2020) ...............................................................................................................................17

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000) .......................................................................................................25

*In re GMC Anti-Lock Brake Prods. Liab. Litig.*,
  966 F. Supp. 1525 (E.D. Mo. 1997) ...............................................................................19

*Goldstein v. GM L.L.C.*,
  445 F. Supp. 3d 1000 (S.D. Cal. 2020) ............................................................................5

*Gotthelf v. Toyota Motor Sales, U.S.A., In.*,
  525 F. App'x 94 (3d Cir. 2013) .......................................................................................21

*Granillo v. FCA US L.L.C.*,
  No. 16-153 (FLW) (DEA), 2016 U.S. Dist. LEXIS 116573 (D.N.J. Aug. 29,
  2016) ........................................................................................................................18, 22

*Green v. Bock Laundry Mach. Co.*,
  490 U.S. 504 (1989) .........................................................................................................7

*Hancock v. Americo Fin. Life & Annuity Ins. Co.*,
  378 F. Supp. 3d 413 (E.D.N.C. 2019) .............................................................................23

*Hancock v. Americo Fin. Life & Annuity Ins. Co.*,
  799 Fed. App'x 179 (4th Cir. 2019) ................................................................................23

*Haskell v. Time, Inc.*,
  857 F. Supp. 1392 (E.D. Cal. 1994) ................................................................................19

*Hindsman v. GM LLC*,
  No. 17-cv-05337-JSC, 2018 U.S. Dist. LEXIS 92319 (N.D. Cal. June 1, 2018) .............10, 13

*Hornberger v. Gen. Motors Corp.*,
  929 F. Supp. 884 (E.D. Pa. 1996) ...................................................................................16

*Jager v. Bos. Rd. Auto Mall, Inc.*,
  No. 14 Civ. 614 (LLS), 2015 U.S. Dist. LEXIS 5509 (S.D.N.Y. Jan. 16, 2015) ....................7

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .........................................................................................18

*Kelly v. Ga.-Pac. L.L.C.*,
    671 F. Supp. 2d 785 (E.D.N.C. 2009) ............................................................17

*Kesse v. Ford Motor Co.*,
    No. 14 C 6265, 2015 U.S. Dist. LEXIS 24541 (N.D. Ill. Mar. 2, 2015) ................12

*Lewis v. Mercedes-Benz United States*,
    No. 19-CIV-81220-RAR, 2021 U.S. Dist. LEXIS 60557 (S.D. Fla. Mar. 30,
    2021) ............................................................................................................6, 7

*Lieb v. Am. Motors Corp.*,
    538 F. Supp. 127 (S.D.N.Y. 1982) .................................................................5

*Loo v. Toyota Motor Sales, USA, Inc.*,
    No. 8:19-cv-00750-VAP, 2019 U.S. Dist. LEXIS 225771 (C.D. Cal. Dec. 20,
    2019) ..........................................................................................................12, 16

*MacDougall v. Am. Honda Motor Co.*,
    No. SACV 17-01079 AG (DFMx), 2017 U.S. Dist. LEXIS 221537 (C.D. Cal.
    Dec. 4, 2017) ...............................................................................................7

*Mack Trucks, Inc. v. Borgwarner Turbo Sys.*,
    508 F. App'x 180 (3d Cir. 2012) .................................................................10, 13

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) ........................................................21

*McDonald Bros., Inc. v. Tinder Wholesale, LLC*,
    395 F. Supp. 2d 255 (M.D.N.C. 2005) ........................................................23

*McGee v. Cont'l Tire N. Am., Inc.*,
    No. 06-6234 (GEB), 2007 U.S. Dist. LEXIS 62869 (D.N.J. Aug. 27, 2007) ...........5

*McNair v. Synapse Group, Inc.*,
    672 F.3d 213 (3d Cir. 2012) ........................................................................26

*MDNet, Inc. v. Pharmacia Corp.*,
    147 F. App'x 239 (3d Cir. 2005) .................................................................18

*Miller v. Hyundai Motor Am.*,
    No. 15-cv-4722, 2017 U.S. Dist. LEXIS 161729 (S.D.N.Y. Sep. 29, 2017) ...........12

*Montanez v. D&D Auto, L.L.C.*,
    CASE NO. 3:15-cv-397 (VAB), 2016 U.S. Dist. LEXIS 40911 (D. Conn.
    Mar. 29, 2016) .............................................................................................5

*Montanez v. HSBC Mortg. Corp. (USA)*,
    876 F. Supp. 2d 504 (E.D. Pa. 2012) ..........................................................9

*Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*,
    265 F.3d 601 (7th Cir. 2001) ...............................................23

*In re MyFord Touch*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ...................................19

*Nader v. Allegheny Airlines*,
    426 U.S. 290 (1976)..............................................................25

*Nelson v. Nissan N. Am., Inc.*,
    894 F. Supp. 2d 558 (D.N.J. 2012) ......................................15

*Nelson v. Nissan N. Am., Inc.*,
    CIV. NO. 11-5712, 2014 U.S. Dist. LEXIS 175224 (D.N.J. Dec. 19, 2014) ...................10, 13

*NovaCare, Inc. v. S. Health Mgmt.*,
    CIV. NO. 97-5903, 1998 U.S. Dist. LEXIS 12326 (E.D. Pa. Aug. 11, 1998).........................9

*Nunez v. Subaru of Am. Inc.*,
    No. 19-cv-18303-JDW (slip op.) (D.N.J. Feb. 23, 2021) ..........................6

*Pitt. & L.E.R. Co. v. Ry. Labor Execs.' Ass'n*,
    491 U.S. 490 (1989)..............................................................6

*Powell v. Subaru of Am., Inc.*,
    No. 1:19-cv-19114, 2020 U.S. Dist. LEXIS 220096 (D.N.J. Nov. 24, 2020) .............5, 6, 8, 17

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
    Civ. No. 14-277, 2015 U.S. Dist. LEXIS 108634 (D.N.J. Aug. 18, 2015)............................17

*Robinson v. Kia Motors Am., Inc.*,
    Civ. No. 13-006, 2015 U.S. Dist. LEXIS 121755 (D.N.J. Sept. 11, 2015) ............................20

*Sarsfield v. Citimortgage, Inc.*,
    707 F. Supp. 2d 546 (M.D. Pa. 2010) ..................................24

*Sheris v. Nissan N. Am., Inc.*,
    No. 07-2516, 2008 U.S. Dist. LEXIS 43664 (D.N.J. June 2, 2008)......................................15

*Short v. Hyundai Motor Co.*,
    444 F. Supp. 3d 1267 (W.D. Wash. 2020)...............................5

*Soliman v. Daimler AG*,
    No. CV 10-408 (SJF)(AKT), 2011 U.S. Dist. LEXIS 151413 (E.D.N.Y. Aug. 8, 2011) ........................................................11

*In re Subaru Battery Drain Prods. Liab. Litig.*,
  No. 1:20-cv-03095-JHR-JS, 2021 U.S. Dist. LEXIS 62373 (D.N.J. Mar. 31,
  2021) ...........................................................................................................................6, 8, 15

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
  No. 03 Civ. 9608 (SCR), 2004 U.S. Dist. LEXIS 27086 (S.D.N.Y. June 23,
  2004) ................................................................................................................................2

*Tietsworth v. Sears, Roebuck & Co.*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................................16

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
  08-939 (DRD), MDL No. 1956, 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept.
  10, 2009) ........................................................................................................................19

*Traynor v. Turnage*,
  485 U.S. 535 (1988)..........................................................................................................6

*Troup v. Toyota Motor Corp.*,
  545 F. App'x 668 (9th Cir. 2013) ...................................................................................10

*United States v. Providence Journal Co.*,
  485 U.S. 693 (1988)..........................................................................................................6

*United States v. Smith*,
  499 U.S. 160 (1991)..........................................................................................................7

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir. 2002)...........................................................................................24

**State Cases**

*BOC Grp., Inc. v. Chevron Chem. Co., LLC*,
  359 N.J. Super. 135 (App. Div. 2003) ...........................................................................15

*Callano v. Oakwood Park Homes Corp.*,
  91 N.J. Super. 105 (App. Div. 1966) ................................................................................8

*Castro v. NYT Television*,
  370 N.J. Super. 282 (App. Div. 2004) ...........................................................................7, 8

*Collins v. Reynard*,
  154 Ill. 2d 48 (1992) .......................................................................................................23

*Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*,
  747 A.2d 600 (Md. 2000) ..................................................................................................9

DMEAST #43865324 v10

*Friedman v. Am. Guardian Warranty Servs.*,
    837 So. 2d 1165 (Fla. 4th DCA 2003) ...................................................................21

*Garlock v. Henson*,
    112 N.C. App. 243 (1993) ...........................................................................................23

*Thiedemann v. Mercedes-Benz USA LLC*,
    183 N.J. 234 (2005) .....................................................................................................14

*VRG Corp. v. GKN Realty Corp.*,
    135 N.J. 539 (1994) .......................................................................................................8

**Federal Statutes**

15 U.S.C. § 1232 ..................................................................................................................22

15 U.S.C. §§ 2301, et seq. .......................................................................................4, 5, 6, 7

28 U.S.C. § 1367 ....................................................................................................................7

28 U.S.C. §§ 1711–15 ..............................................................................................4, 5, 6, 7

49 U.S.C. §§ 30101-30183 (2012) ..................................................................................24, 25

Violation of the Maryland Consumer Protection Act Md. Code Ann., Com. Law
    §§ 13-101, et seq. .........................................................................................................4

**State Statutes**

Md. Code Ann., Transp. § 15-203 ..........................................................................................2

N.C. Gen. Stat. § 20-305.2 .....................................................................................................3

N.C. Gen. Stat. § 25-2-313 ...................................................................................................14

N.C. Unfair and Deceptive Acts and Practices Act, 73 P.S. §§ 201-1, et seq. .....................4

N.J.S.A. 12A:2-313 ...............................................................................................................14

63 P.S. § 818.303 ....................................................................................................................2

PA Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, et
    seq. ...............................................................................................................................4

**Rules**

Fed. R. Civ. P. 8 .................................................................................................10, 13, 17, 20

Fed. R. Civ. P. 9 .........................................................................................................17, 19, 20

**Regulations**

49 C.F.R. 577 ...................................................................................................................25

49 C.F.R. 579 ...................................................................................................................21

N.J.A.C. 13:21-15.2–.4 .....................................................................................................2

**Other Authorities**

Gerald R. Bodisch, US Department of Justice, *Economic Effects of State Bans on
    Direct Manufacturer Sales to Car Buyers* (2009),
    www.justice.gov/atr/economiceffects-state-bans-direct-manufacturer-sales-
    car-buyers ....................................................................................................................2

*Restatement (Second) of Conflict of Laws* §§ 6, 188 ...................................................17

## I.      INTRODUCTION

Plaintiffs Aimee Hickman, Jared Hickman, William Treasurer, Kelly Drogowski, and Frank Drogowski bring this putative class action against Defendant Subaru of America, Inc. ("SOA")[1] alleging they each purchased or leased a vehicle sold with a design defect that ultimately caused their vehicles to experience transmission shuddering, squealing, or hesitation. Plaintiffs claim that the CVT transmissions in their 2019–2020 Subaru Ascent vehicles ("Class Vehicles") are "defective." But other than describing several characteristics of the transmission that they find displeasing, Plaintiffs fail to allege that their vehicles experienced any failures. And, in Mr. Treasurer's case, Plaintiffs allege that Subaru repaired his vehicle as requested pursuant to the applicable warranties.

Most fatally, Plaintiffs' claims are premised solely upon an alleged design defect. It is now well-settled that express warranties covering materials and workmanship—such as Subaru's warranty here—do not cover design defects. Plaintiffs plead nothing that can aid their efforts to avoid the fact that the Powertrain Limited Warranty at issue does not cover the type of design defects alleged. Nor do they plead anything that aids their efforts to assert claims under the Magnuson-Moss Warranty Act, which this Court lacks subject matter jurisdiction over. Plaintiffs also fail to state a claim for unjust enrichment because they did not purchase their vehicles directly from Subaru. Finally, Plaintiffs' state law fraud claims fail for various reasons, including failure to plead any alleged fraud with the required particularity, untimeliness, and the inability of wholly uninjured Plaintiffs to bring such claims

For these reasons and others more fully developed below, SOA requests Plaintiffs' complaint be dismissed for failure to state a claim.

---

[1] Subaru Corporation ("SBR"), while named as a defendant in this action, has not been served pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. 5, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

## II.      BACKGROUND

### A.      Plaintiffs' allegations

The Complaint (ECF No. 1) includes five Plaintiffs asserting claims arising from their purchase and use of three Subaru vehicles. For each Plaintiff, the name, vehicle, purchased date, and state of purchase are:

| PLAINTIFF(S) | VEHICLE[2] | PURCHASE DATE | STATE OF PURCHASE |
|---|---|---|---|
| Aimee & Jared Hickman | 2020 Subaru Ascent | June 2020 | Maryland |
| William Treasurer | 2019 Subaru Ascent | November 2, 2018 | North Carolina |
| Kelly & Frank Drogowski | 2019 Subaru Ascent | December 1, 2018 | Pennsylvania |

*See* Compl ¶¶ 16, 26, 37.

### B.      The warranties made by Subaru of America, Inc.

SOA does not design or manufacture Subaru vehicles. Subaru Corporation ("SBR"), a Japanese entity, is the "manufacturer engaged in the development and manufacture of Subaru vehicles, parts, and accessories." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, No. 03 Civ. 9608 (SCR), 2004 U.S. Dist. LEXIS 27086, at *5 (S.D.N.Y. June 23, 2004). SOA is the "United States importer and distributor of Subaru brand vehicles, parts and accessories." *Id.* at *6. SOA does not sell vehicles directly to consumers; instead, independent franchisee authorized retailers sell vehicles to consumers.[3] *See* Compl. ¶¶ 54, 16, 26, 37 (alleging Plaintiffs purchased vehicles from "authorized Subaru dealership[s]").

---

[2] A reference to a year in connection with a vehicle model refers to the model year of that vehicle, which does not necessarily relate to the calendar year.

[3] That is required by law because "direct manufacturer auto sales are prohibited in almost every state by franchise laws requiring that new cars be sold only by dealers." Gerald R. Bodisch, US Department of Justice, *Economic Effects of State Bans on Direct Manufacturer Sales to Car Buyers* (2009), www.justice.gov/atr/economiceffects-state-bans-direct-manufacturer-sales-car-buyers. Each state at issue in this action prohibits the direct sale of internal combustion engine vehicles, like the Class Vehicles, by manufacturers and requires that such vehicles be sold through independent franchisees. N.J.A.C. 13:21-15.2–.4. (requiring proof of franchise agreement with a manufacturer to sale vehicles in state); 63 P.S. § 818.303(e)(1) ("new vehicle dealers shall hold a franchise in writing with a manufacture"); Md. Code Ann., Transp. § 15-203

SOA is the warrantor of such vehicles. *See* Compl. ¶ 62; Watkins Decl. Ex. A, at 15 (2019 Warranty & Maintenance Booklet). As the warrantor, SOA provides several express written warranties to purchasers of Subaru vehicles that "cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use." Compl. ¶ 159. Among them is the New Vehicle Limited Warranty, which covers the entire vehicle, subject to exclusions in the Warranty & Maintenance Booklets, for three years or 36,000 miles, whichever comes first. *Id.* ¶ 160. Further, no person is "authorize[d] to assume for any [Subaru entity] any obligations or liabilities greater than or different from those set forth in" the Warranty and Maintenance Booklet. *See, e.g.*, Watkins Decl. Ex. A, at 15 (2019 Warranty & Maintenance Booklet).

### C.      The alleged design defect

Plaintiffs allege that the TR690 transmission in their Class Vehicles "was originally designed for use in smaller, lighter cars" and that SBR's decision to use that transmission in the larger Class Vehicles resulted in behaviors they allege are undesirable. Compl. ¶ 3. Plaintiffs do not allege a manufacturing defect. That is, they do not allege that SBR failed to manufacture these components to the design specifications. To the contrary, Plaintiffs specifically allege these components were improperly selected for use in the Class Vehicles. *Id.*

### D.      The claims and relief sought

Plaintiffs seek to represent a nationwide class comprising "[a]ll persons or entities who purchased or leased a 2019 to present Subaru Ascent vehicle (Class Vehicle) in the United States." Compl. ¶ 146. Plaintiffs also seek to represent separate state subclasses for Maryland, North Carolina, and Pennsylvania. *Id.*

Plaintiffs assert eight causes of action:

---

(requiring franchise agreement with a manufacturer); N.C. Gen. Stat. § 20-305.2 (prohibiting manufacturer from operating dealership in state).

| COUNT | CAUSE OF ACTION | ASSERTED BY |
|-------|-----------------|-------------|
| One | Breach of Express Warranty | Class or all Sub-Classes |
| Two | Breach of the Implied Warranty of Merchantability | Class or all Sub-Classes |
| Three | Violation of the Maryland Consumer Protection Act Md. Code Ann., Com. Law §§ 13-101, et seq. ("MCPA") | Maryland Sub-Class |
| Four | Violation of the North Carolina Unfair and Deceptive Acts and Practices Act, 73 P.S. §§ 201-1, et seq. ("NCUDTPA") | North Carolina Sub-Class |
| Five | Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCA") 73 P.S. §§ 201-1, et seq. | Pennsylvania Sub-Class |
| Six | Fraud by Omission or Fraudulent Concealment | Class or all Sub-Classes |
| Seven | Unjust Enrichment | Class or all Sub-Classes |
| Eight | Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ("MMWA") | Class or all Sub-Classes |

SOA now moves to dismiss Plaintiffs' Complaint.

## III.   ARGUMENT

### A.   Plaintiffs' Magnuson-Moss Warranty Act claim must be dismissed because the Court lacks subject matter jurisdiction over that claim. (Count VIII)

A consumer wishing to allege a claim under the MMWA on behalf of a putative class must satisfy certain jurisdictional requirements. 15 U.S.C. § 2310(d)(1), (B). Specifically, a consumer may allege claims on behalf of a putative class only if (1) the amount in controversy of any individual claim is not less than $25; (2) the aggregate amount in controversy is greater than $50,000; and (3) the number of named plaintiffs is at least 100. *Id.* § 2310(d)(3).

The Complaint does not allege jurisdiction under the MMWA, and Plaintiffs do not clear the jurisdictional threshold of having at least 100 named plaintiffs. *See* Compl. ¶ 13. The statutory provision cited by Plaintiffs as the basis for their MMWA claim, *id.* ¶ 264 (citing 15 U.S.C. § 2310(d)(1)), permits an individual to bring a claim but not in the capacity of a class representative without satisfying the 100-named plaintiff requirement.

The requirement there be at least 100 named plaintiffs has been strictly construed. *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. July 28, 2020) ("CAFA may not

be used to evade or override the MMWA's specific numerosity requirement[.]"); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 244–47 (2d Cir. 1986) (noting decertification of class required if number of named plaintiffs falls below 100); *Powell v. Subaru of Am., Inc.*, No. 1:19-cv-19114, 2020 U.S. Dist. LEXIS 220096, at *51-52 (D.N.J. Nov. 24, 2020) (citing *Floyd* and dismissing MMWA claims in class action against Subaru); *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 135 (S.D.N.Y. 1982) (dismissing MMWA claims "for failure to name 100 plaintiffs"). As the Ninth Circuit recently confirmed, the pleading of jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1711–15—an act that expanded diversity jurisdiction—does not allow Plaintiffs to end-run the MMWA's federal question jurisdictional requirements. *Floyd*, 966 F.3d at 1035. To the contrary, the "MMWA's requirement to name one hundred plaintiffs must be met independently of CAFA's jurisdictional standard." *Floyd v. Am. Honda Motor Co.*, No. 2:17-cv-08744-SVW-AS, 2018 U.S. Dist. LEXIS 132750, at *8 (C.D. Cal. June 13, 2018).[4]

While some earlier cases had reached the opposite conclusion without undertaking a meaningful analysis to reconcile the two statutes, *see, e.g., McGee v. Cont'l Tire N. Am., Inc.*, No. 06-6234 (GEB), 2007 U.S. Dist. LEXIS 62869, at *9 (D.N.J. Aug. 27, 2007) (holding CAFA provides alternative basis for jurisdiction), "the weight of more recent authority is that the 100-plaintiff requirement cannot be supplanted by the prerequisites for exercising diversity

---

[4] *See also Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1287-88 (W.D. Wash. 2020); *Goldstein v. GM L.L.C.*, 445 F. Supp. 3d 1000, 1013 (S.D. Cal. 2020); *Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF (PJWx), 2019 U.S. Dist. LEXIS 117584, at *34 (C.D. Cal. May 29, 2019) ("[T]he weight of more recent authority is that the 100-plaintiff requirement cannot be supplanted by the prerequisites for exercising diversity jurisdiction under CAFA"); *Montanez v. D&D Auto, L.L.C.*, CASE NO. 3:15-cv-397 (VAB), 2016 U.S. Dist. LEXIS 40911, at *22 (D. Conn. Mar. 29, 2016) (dismissing MMWA claims for lack of subject-matter jurisdiction for failure to satisfy amount-in-controversy requirement); *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 U.S. Dist. LEXIS 107224, at *4 (S.D.N.Y. July 25, 2013) (dismissing MMWA claims for lack of subject-matter jurisdiction and holding that the argument that MMWA claims that do not satisfy that statute's requirements may be brought under CAFA to be "flatly contradicted by the plain text of the MMWA"); *Brisson v. Ford Motor Co.*, No. 8:08-cv-2491-T-26MAP, 2009 U.S. Dist. LEXIS 137789, at *1–3 (M.D. Fla. Jan. 20, 2009) (dismissing MMWA claim for lack of jurisdiction and declining to hold jurisdiction proper under CAFA).

DMEAST #43865324 v10

jurisdiction under CAFA." *Cadena*, 2019 U.S. Dist. LEXIS 117584, at \*34; *e.g.*, *Floyd*, 966 F.3d at 1035; *Angiano v. Anheuser-Busch Inbev Worldwide*, No. CV 21-01879 PA (PVCx), 2021 U.S. Dist. LEXIS 66914, at \*16–17 (C.D. Cal. Apr. 5, 2021); *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 1:20-cv-03095-JHR-JS, 2021 U.S. Dist. LEXIS 62373, at \*5962 (D.N.J. Mar. 31, 2021); *Lewis v. Mercedes-Benz United States*, No. 19-CIV-81220-RAR, 2021 U.S. Dist. LEXIS 60557, at \*25-26 (S.D. Fla. Mar. 30, 2021); *Nunez v. Subaru of Am. Inc.*, No. 19-cv-18303-JDW, slip op. ¶¶ 38–39 (D.N.J. Feb. 23, 2021);[5] *Powell*, 2020 U.S. Dist. LEXIS 220096, at \*51–52.

The recent and significant trend of better-reasoned authority holding that CAFA does not supplant the MMWA's jurisdictional requirements is grounded in the text of the MMWA and a more thoughtful analysis of the purposes of the two statutory schemes. Under well-settled principles of statutory construction, courts must follow the plain meaning of statutory text, unless that text suggests an absurd result or a scrivener's error. *See Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992); *United States v. Providence Journal Co.*, 485 U.S. 693, 700–01 (1988). The language of § 2310(d)(3)(C) of the MMWA is clear:

> No claim shall be cognizable in a suit brought … if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

That lack of ambiguity mandates compliance with the plain text of the statute. Decisions permitting class claims under the MMWA to proceed with fewer than 100 named plaintiffs "attempt to create an exception to § 2310(d)(3)(C)—an exception without statutory support—for situations where there is an alternative jurisdictional basis like CAFA." *Floyd*, 2018 U.S. Dist. LEXIS 132750, at \*10. Because CAFA does not expressly address the MMWA's jurisdictional requirements, such cases also violate the strong presumption in our courts against repeals by implication. *See Pitt. & L.E.R. Co. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 490, 510 (1989); *Traynor v. Turnage*, 485 U.S. 535, 547–48 (1988); *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S.

---

[5] A true and correct copy of the Court's order in *Nunez* is attached as Exhibit B to the Watkins Declaration filed with this motion.

557, 564–67 (1987); *Floyd*, 966 F.3d at *1035 ("Plaintiffs' arguments of policy and of implied repeal do not outweigh the clear statutory language establishing the requirements for federal jurisdiction under the MMWA."); *Lewis*, 2021 U.S. Dist. LEXIS 60557, at *25–26 ("Ultimately, the result here is compelled by the plain text of the statute. If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent." (internal quotation marks omitted)).[6]

While CAFA expanded the diversity jurisdiction of federal courts over class action litigation, its general provisions did not supersede the more specific provisions governing federal question jurisdiction of MMWA claims. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989) (holding specific provisions targeting a particular issue apply instead of provisions more generally covering an issue); *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 444–45 (1987) (same); *United States v. Smith*, 499 U.S. 160, 166–67 (1991) (cautioning against creating exceptions additional to those specified by Congress); *Chi. v. EDF*, 511 U.S. 328, 337–38 (1994) (noting presumption against creating exemption in a statute that has none); *see also MacDougall v. Am. Honda Motor Co.*, No. SACV 17-01079 AG (DFMx), 2017 U.S. Dist. LEXIS 221537, at *12 (C.D. Cal. Dec. 4, 2017) ("CAFA—a basis for federal courts to exercise jurisdiction over state law disputes between diverse parties—doesn't fill in the gaps for missing substantive requirements of a federal law."). Plaintiffs' MMWA claim must be dismissed.

## B. Plaintiffs' unjust enrichment claims fail for several reasons. (Count VI)

Unjust enrichment is not recognized as an independent tort cause of action but may serve as the basis for a claim sounding in equity for quasi-contractual liability. *Castro v. NYT*

---

[6] There is no basis for supplemental jurisdiction to the extent Plaintiffs may seek to avail themselves of 28 U.S.C. § 1367. Section 1367 allows for supplemental jurisdiction "*[except] as expressly provided otherwise by Federal statute*." (emphasis added). The MMWA is just such a federal statute. "[B]y enacting the specific jurisdictional limitations for [MMWA] claims in federal court, Congress foreclosed the exercise of supplemental jurisdiction over [MMWA] claims" when the jurisdictional requirements of 15 U.S.C. § 2310(d) are not satisfied. *Jager v. Bos. Rd. Auto Mall, Inc.*, No. 14 Civ. 614 (LLS), 2015 U.S. Dist. LEXIS 5509, at *10 (S.D.N.Y. Jan. 16, 2015); *accord Ebin*, 2013 U.S. Dist. LEXIS 107224, at *4.

*Television*, 370 N.J. Super. 282, 299 (App. Div. 2004). "To establish unjust enrichment as a basis for quasi-contractual liability, 'a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust.'" *Id.* (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). "Such liability will be imposed only if 'plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred.'" *Id.* (quoting *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div. 1966)).

Plaintiffs' unjust enrichment claim fails for at least three reasons.

## 1. Plaintiffs' unjust enrichment claim fails because plaintiffs did not purchase their vehicles directly from SOA.

Plaintiffs each alleged they purchased their vehicles from independent third parties—not SOA. Compl. ¶¶ 16 (alleging purchase from "Heritage Subaru Owings Mills, an authorized Subaru dealership"), 26 (alleging purchase from "Prestige Subaru, an authorized Subaru dealership), 37 (alleging purchase from "Ciocca Subaru, an authorized Subaru dealership); *see also supra* note 2 (citing statutory and regulatory authority prohibiting Subaru from selling vehicles directly to consumers). And Plaintiffs allege neither any direct purchasing relationship with SOA nor that they directly conferred any benefit upon SOA that it retained to their detriment. *Id.*

That fact is fatal to their unjust enrichment claims. *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 62373, at *88–89; *Powell*, 2020 U.S. Dist. LEXIS 220096, at *85; *Defillippo v. Whirlpool Corp.*, No. 1:18-cv-12523-NLH-AMD, 2019 U.S. Dist. LEXIS 148304, at *38 (D.N.J. Aug. 30, 2019); *Block v. Jaguar Land Rover N. Am., LLC*, No. 15-cv-5957 (SRC), 2016 U.S. Dist. LEXIS 69085, at *9-11 (D.N.J. May 26, 2016).

## 2. It is undisputed that an express contract covers the identical subject of the unjust enrichment claims and Plaintiffs rely on such a contract in pleading their unjust enrichment claims.

The pleading of simultaneous breach of contract and quasi-contractual claims is not permitted when a valid contract covers the subject of the quasi-contractual claim. *Dialectic*

*Distrib., L.L.C. v. Power Play Mktg. Grp., L.L.C.*, No. 2:18-03388, 2018 U.S. Dist. LEXIS 217827, at *9-10 (D.N.J. Dec. 31, 2018).[7] Moreover, an unjust enrichment claim that incorporates by reference all of the preceding paragraphs must fail when the plaintiff pleads the "existence of an express contract covering the identical subject matter of the claim." *Dialectic Distrib., L.L.C.*, 2018 U.S. Dist. LEXIS 217827, at *9. Plaintiffs incorporate by reference preceding paragraphs, which include allegations concerning the existence and applicability of the NVLW to their relationship with SOA, into their unjust enrichment claims. *See* Compl. ¶¶ 62–66 (alleging existence of express warranty), 247 (incorporating "each and every allegation contained in paragraphs 1 through 144 above as if fully set forth herein").

### 3. Plaintiffs do not allege they expected remuneration from SOA.

Plaintiffs also fail to plead that they expected remuneration from SOA—a required element of an unjust enrichment claim. *Block v. Jaguar Land Rover N. Am., LLC*, No. 15-cv-5957 (SRC), 2017 U.S. Dist. LEXIS 31807, at *5 (D.N.J. Mar. 7, 2017) (dismissing with prejudice unjust enrichment claim arising from supposed parasitic battery drain defect).

Plaintiffs' unjust enrichment claim must be dismissed for each of these three reasons.

### C. Plaintiffs' breach of express warranty claims must be dismissed because the New Vehicle Limited Warranty does not cover design defects. (Counts I & VIII)

Plaintiffs' express warranty claims (Counts I & VIII) fail as a matter of law because the New Vehicle Warranty does not cover design defects. It explicitly covers defects in "material or workmanship," Compl. ¶ 159:

---

[7] *See also B&K Coastal, LLC v. Promenade at Surf City, LLC (In re B&K Coastal, LLC)*, Nos. 11-08609, 12-00287, 2013 Bankr. LEXIS 1914, at *9-11 (Bankr. E.D.N.C. May 9, 2013) (holding unjust enrichment claim only available in absence of express contract); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 515 (E.D. Pa. 2012) ("Pennsylvania has long ascribed to the rule that when 'the parties' relationship is based on an express written contract no unjust enrichment recovery is permitted.'" (quoting *NovaCare, Inc. v. S. Health Mgmt.*, CIVIL ACTION NO. 97-5903, 1998 U.S. Dist. LEXIS 12326, at *4-5 (E.D. Pa. Aug. 11, 1998)); *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 610 (Md. 2000) ("[Q]uasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists.").

> These warranties cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use.

Watkins Decl. Ex. A, at 4 (2019 Warranty & Maint. Booklet).

"[T]he vast weight of authority hold[s] that a workmanship and materials warranty cannot encompass a design defect claim." *Nelson v. Nissan N. Am., Inc.*, CIV. NO. 11-5712 (JEI/AMD), 2014 U.S. Dist. LEXIS 175224, at *7–9 (D.N.J. Dec. 19, 2014). That is, express warranties covering defects in material or workmanship—like the warranties pleaded by Plaintiffs here—do not cover design defects. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("The plain and ordinary meaning of the term 'defect[s] in … materials or workmanship,' unambiguously excludes 'design' defects." (internal citation omitted)); *Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("[W]here a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'"); *Mack Trucks, Inc. v. Borgwarner Turbo Sys.*, 508 F. App'x 180, 184–85 (3d Cir. 2012) (finding the ordinary meaning of "material and workmanship" does not include design); *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 U.S. Dist. LEXIS 209659, at *13 (D.N.J. Dec. 5, 2019); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668–69 (9th Cir. 2013). Boilerplate allegations regarding a supposed manufacturing defects do not satisfy Rule 8's plausibility standard. *Hindsman v. GM LLC*, No. 17-cv-05337-JSC, 2018 U.S. Dist. LEXIS 92319, at *23 (N.D. Cal. June 1, 2018).

Plaintiffs try to skirt this precedent by referring to the alleged defect as one "in the design, workmanship, and/or manufacturing of the transmission." Compl. ¶ 2. However, the simple use of the word "manufacturing" represents the entirety of any attempt to allege anything specific about the nature of the supposed manufacturing defect. The Complaint fails to allege a single fact regarding an alleged manufacturing defect; there are no allegations that the manufacturing of any Plaintiff's *specific vehicle* or transmission somehow deviated from its intended design or construction. At a minimum, this fails to satisfy Plaintiffs' obligation to plead a plausible claim under Rule 8.

- 10 -

A plain reading of the factual contentions that do exist in the Complaint indicates they are antithetical to the existence of manufacturing allegations: Plaintiffs are instead attempting to allege a *design* defect. Specifically, Plaintiffs criticize the use of the TR690 transmission in, and the construction of, the Ascent model because they claim the transmission "was originally designed for use in smaller, lighter cars." Compl. ¶ 3. Plaintiffs further criticize the *redesign* of the TR690 transmission because it "was extremely limited and mostly consisted of adding a feature called 'X-MODE.'" Compl. ¶¶ 4, 72. Indeed, Plaintiffs go to great lengths to explain how the design of the CVT transmission used by Subaru differs from a traditional automatic transmission and specifically plead that the supposed Transmission Defect concerns:

> 1) material and/or workmanship defects with transmission components, including the sensors for the hydraulic pressure system which determines the gear ratio, the CVT chain, and, the transmission wiring harness; 2) improper **design** and/or calibration of the software which controls the transmission's function, the Transmission Control Module (the "TCM"); 3) improper **design** and/or calibration of the transmission's features, including X-MODE, with other features of the vehicle, including Pre-Collision Throttle Management; and 4) **design** defects which did not properly account for the size, shape, and weight of the Ascent model compared to other Subaru models which also use the TR690.

Compl. ¶¶ 81–82, 84 (emphasis added).

While Plaintiffs do vaguely reference "material and/or workmanship defects," no Plaintiff alleges that his or her vehicle was actually afflicted by a discrete manufacturing or workmanship defect. And Plaintiffs do not point to any flaw in the manufacturing process by which the transmission or its components were produced for their vehicles. *Id*. Rather, Plaintiffs allege the existence of a global defect present in all Ascent models. *See Soliman v. Daimler AG*, No. CV 10-408 (SJF)(AKT), 2011 U.S. Dist. LEXIS 151413, at *8 n.5 (E.D.N.Y. Aug. 8, 2011) ("The Court concludes that [p]laintiff's [transmission] lunge theory is premised on a design defect as opposed to a manufacturing defect, since [p]laintiff's arguments for a defect are not limited to the particular [vehicle] involved in the accident. Instead, [p]laintiff's arguments center on a more global design defect of the [model], i.e., the vehicle's alleged excessive power coupled with an automatic transmission."). When, as here, a complaint asserts claims on behalf of *all*

- 11 -

purchasers of a vehicle model, Comp. ¶ 146, alleges pre-release testing, *id.* ¶ 119, and discusses

engineering principles behind transmission design, *id.* ¶¶ 81–83, that "means th[e] case is about a

design defect not a manufacturing one." *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-

00750-VAP (ADSx), 2019 U.S. Dist. LEXIS 225771, at *21 (C.D. Cal. Dec. 20, 2019)

(dismissing warranty claims asserted against Toyota on grounds that transmission defect alleged

was one of design and not covered by NVLW).

That Plaintiffs intend to certify a class further shows that they allege a design, and not a

manufacturing defect. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 315 (N.D.N.Y. 2019)

(dismissing warranty claims concerning alleged transmission defect and noting "where the

plaintiff has asserted a defect on behalf of a putative class of persons who all purchased vehicles

with the same alleged defect, such class action 'contradicts the nature of manufacturing defects,

which, by definition, are imperfections that inevitable occur in a typically small percentage of

products,' particularly where the plaintiff has failed to allege a flaw in the larger manufacturing

process." (quoting *Miller v. Hyundai Motor Am.*, No. 15-cv-4722, 2017 U.S. Dist. LEXIS

161729, at *14-15 (S.D.N.Y. Sep. 29, 2017)); *Loo*, 2019 U.S. Dist. LEXIS 225771, at *21

(holding fact that complaint "defines the putative class as all purchasers or lessees of any 2018 or

2019 Toyota Camry vehicle" indicated action related to design defect). It is unlikely that

Plaintiffs could have knowledge of a specific individualized manufacturing defect in each of the

approximately 200,000 putative class vehicles.

Plaintiffs are criticizing the design choices concerning function and tolerances made by

SBR and SBR's design decision to use the TR690 transmission in the larger Ascent model. *See,

e.g., Coba,* 932 F.3d at 123 (affirming dismissal of warranty claims because defect complained

of concerned "the overall plan of construction and operation of the fuel tanks.") (internal

quotation marks omitted); *Amato*, 2019 U.S. Dist. LEXIS 209659, at *17 ("Such criticism fails

to allege a problem in the process of constructing the [component], rather it alleges a flaw in the

overall intended construction (a design decision)."); *cf. Kesse v. Ford Motor Co.*, No. 14 C 6265,

2015 U.S. Dist. LEXIS 24541, at *2 (N.D. Ill. Mar. 2, 2015) (characterizing similar allegations as "design defects").

Plaintiffs' express warranty claims cannot be salvaged by a deliberate refusal to refer to the alleged transmission defect solely as a design defect. *See Nelson*, 2014 U.S. Dist. LEXIS 175224, at *8; *Coba v. Ford Motor Co.*, No. 12-1622 (KM) (MAH), 2016 U.S. Dist. LEXIS 136283, at *29 (D.N.J. Sept. 30, 2016). In *Nelson*, this Court rejected a similar express warranty claim where that plaintiff alleged the class vehicles' transmissions were defective because the lead bushings used in the vehicles' transmissions were vulnerable to high heat. In its analysis, the Court noted that "absent specific language to the contrary, design defects cannot be encompassed within the meaning of defects in workmanship or materials." *Nelson*, Civ. No. 11-5712 (JEI/AMD), 2014 U.S. Dist. LEXIS 175382, at *5 (2014) (citing *Mack Trucks, Inc. v. Borgwarner Turbo Sys.*, 508 F. App'x 180, 184 (3d Cir. 2012)). In dismissing the warranty claims, the Court found the allegedly defective lead bushings were "undisputedly common to every Class Vehicle," and their use was a design defect, not a manufacturing defect. *Id.* at *7–8.

Similarly, no claim can survive when a plaintiff has intentionally refused to plead that the defect alleged was one of design. *Coba*, 2016 U.S. Dist. LEXIS 136283, at *29. In *Coba*, because all the facts presented showed the plaintiff was alleging a design defect, the Court rejected the warranty claim because design defects were not covered by the express workmanship and materials warranty. *Id.* Here, Plaintiffs fail to properly classify the alleged transmission defect. Even so, the Complaint can support only a claim for design defect, which is not covered under the express warranty. Boilerplate allegations regarding a supposed manufacturing defects do not satisfy Rule 8's plausibility standard. *Hindsman*, 2018 U.S. Dist. LEXIS 92319, at *23. Plaintiffs' express warranty claims must fail.

### D. Plaintiff Treasurer fails to state a claim for breach of express or implied warranty because he affirmatively alleges fulfillment of the New Vehicle Limited Warranty and that his vehicle is merchantable. (Counts I, II & VIII)

To succeed on a claim for breach of express warranty under North Carolina law, Plaintiff Treasurer must demonstrate "that (1) a defect exists, (2) a warranty covered the defect, and (3)

- 13 -

the seller breached the warranty." *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 U.S. Dist. LEXIS 169752, at *21 (N.D. Ill. Dec. 18, 2015) (citing *Butcher v. DaimlerChrysler Co.*, No. 1:08CV207, 2008 U.S. Dist. LEXIS 57679, at *6 (M.D.N.C. July 29, 2008); N.C. Gen. Stat. 25-2-313).[8] Here, Treasurer fails to plead a plausible claim for breach of warranty because he alleges no breach by SOA. Indeed, what he actually alleges is that SOA fulfilled its obligations under the NVLW by paying for any necessary repairs.

When vehicle repairs are made free-of-charge to solve issues brought to an authorized retailer's attention by the plaintiff during the warranty period, no breach of warranty has occurred. *See Darne*, 2015 U.S. Dist. LEXIS 169752, at *21–24 (dismissing breach of warranty claim when Ford twice repaired truck during warranty period at no cost to the plaintiff); *Ferranti v. Hewlett-Packard Co.*, No. 5:13-cv-03847-EJD, 2014 U.S. Dist. LEXIS 131249, at *18 (N.D. Cal. Sept. 16, 2014) (HP compl[ied] with its warranty" through "replacement printers" and assistance); *Arndt v. Extreme Motorcycles*, No. 1:07cv302, 2007 U.S. Dist. LEXIS 95625, at *12-13 (W.D.N.C. Dec. 26, 2007) (dismissing warranty claim when defendant repaired all problems called to its attention and fully complied with terms of written warranty). The NVLW does not promise a perfect vehicle that will never require repairs—nor is that the expectation under well-settled law. *See, e.g.*, *Thiedemann v. Mercedes-Benz USA LLC*, 183 N.J. 234, 251 (2005) ("Defects can, and do, arise with complex instrumentalities such as automobiles. The mere fact that an automobile defect arises does not establish … an actual and ascertainable loss to the vehicle purchaser."). What the NVLW does promise is that, upon presentment "to an Authorized SUBARU Retailer's place of business during normal business hours," covered "parts

---

[8] North Carolina law applies, at a minimum, to Plaintiff Treasurer's implied warranty claims. *See infra* Part III.F. However, the test is substantially the same under New Jersey law. N.J.S.A. 12A:2-313; *BK Trucking Co. v. PACCAR, Inc.*, Civil Action No. 15-2282 (JBS/AMD), 2016 U.S. Dist. LEXIS 85149, at *18 (D.N.J. June 30, 2016) ("To state a claim for breach of express warranty, a plaintiff must show: '(1) that [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.'").

- 14 -

that malfunction or fail during the warranty period as a result of a manufacturing defect will be repaired without charge." Walters Decl. Ex. A at 7 (2019 Warranty). That is, "Plaintiffs agreed to the Limited Warranty which 'limit[s] the seller's obligation to repair or replace the defective equipment.'" *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 62373, at *44 (quoting *BOC Grp., Inc. v. Chevron Chem. Co., LLC*, 359 N.J. Super. 135, 147 (App. Div. 2003)). And that is precisely what Treasurer alleges happened here.

Treasurer alleges that he brought his vehicle to an authorized Subaru retailer for repairs on January 28, 2021, when his vehicle had 24,900 miles on the odometer, and that "Prestige Subaru performed a full transmission replacement." Compl. ¶ 33. He does not allege that his vehicle was not successfully repaired or that it experienced any issues after it was repaired pursuant to the terms of the warranty. *Id.* Thus, his own allegations confirm that Subaru complied with its obligations to him under the NVLW. *See In re Subaru Battery Drain Prods. Liab. Litig.* 2021 U.S. Dist. LEXIS 62373, at *46–47 (dismissing warranty claims when the plaintiffs did not allege repair services performed failed to cure alleged issue).

Mr. Treasurer has failed to plead a necessary element of his claims, namely, that SOA failed to honor its warranty. As a result, he has not stated a claim for breach of warranty, express or implied.

### E.   Plaintiffs do not allege their vehicles are unmerchantable or unfit for their ordinary purpose. (Counts II & VIII)

Under the UCC, the implied warranty of merchantability requires that a product be reasonably fit for the general purpose for which it was sold, a standard that does not require the vehicle to satisfy buyers' expectations, but rather imposes only "a minimum level of quality." *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 566-67 (D.N.J. 2012) ("'Merchantability does not mean that the goods are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality.'") (quoting *Sheris v. Nissan N. Am., Inc.*, No. 07-2516, 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. June 2, 2008) ("[T]he implied warranty of merchantability is breached only when a defect 'renders the vehicle unfit for its ordinary purpose of providing

transportation for its owner.'"")); *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996) ("[W]here a car can provide safe, reliable transportation, it is generally considered merchantable.") (quoting *Carlson v. Gen. Motors. Corp.*, 883 F.2d 287, 297 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990)).

Here, each Plaintiff alleges they drove "their vehicle in a foreseeable manner and in the manner in which it was intended to be used." Compl. ¶¶ 25, 36, 50. No Plaintiff alleges that their Ascent no longer provides basic transportation or that they are unable to drive their vehicles on a daily basis. Compl. ¶¶ 24–25, 36, 50. No Plaintiff alleges his or her particular vehicle is unsafe or inoperable, or that he or she has stopped using the vehicle for any reason. Compl. ¶¶ 26–50 (alleging Plaintiffs continued to drive vehicle after visits to dealerships). Indeed, Plaintiff Treasurer fails even to allege he experienced the transmission defect after his vehicle was properly repaired under the NVLW. *See supra* Part III.D. Rather, it appears Plaintiffs' vehicles provided regular, reliable transportation, and that the issues complained of did not impact their ability to use the vehicles for ordinary purposes. The dealerships found the Hickmans' and Drogowskis' vehicles to be operating normally. Compl. ¶ 23.

Plaintiffs do not sufficiently explain why the circumstances in which they experienced shuddering, slipping, or revving created an unreasonable safety risk or otherwise rendered their vehicles unfit for their ordinary purpose. *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) ("The mere manifestation of a defect by itself does not constitute a breach of the implied warranty of merchantability. Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose.") (internal quotation marks omitted). Thus, as the Central District of California recently held in a similar action, "Plaintiffs' own allegations—which the Court must accept as true at this stage—severely undermine their implied warranty of merchantability claims because Plaintiffs effectively concede that their vehicles are fit for driving 'as intended.' It is therefore not plausible for the Court to infer that Plaintiffs' [vehicles] lack 'even the most basic degree of fitness for ordinary use.'" *Loo*, 2019 U.S. Dist. LEXIS 225771, at *24 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009)).

- 16 -

F.    **Plaintiff Treasurer lacks the requisite privity to assert a claim for breach of the implied warranty of merchantability against SOA. (Counts II & VIII)**

North Carolina law requires plaintiffs asserting implied warranty claims to be in direct vertical privity with the defendant. *Kelly v. Ga.-Pac. L.L.C.*, 671 F. Supp. 2d 785, 797 (E.D.N.C. 2009) (North Carolina requires privity "when a plaintiff asserts an implied warranty claim [against a manufacturer] seeking only the recovery of economic loss"). New Jersey law does not require privity. *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, Civ. No. 14-277 (NLH/KMW), 2015 U.S. Dist. LEXIS 108634, at *9 (D.N.J. Aug. 18, 2015). In the face of this conflict with New Jersey law, North Carolina, as Plaintiff's home state, has the most significant relationship to Mr. Treasurer's claim under the test set forth in sections 6 and 188 of the *Restatement (Second) of Conflict of Laws* because he negotiated the purchase of their vehicle from a third-party retailer in North Carolina and presented his vehicle for repairs in that same state. *See Powell*, 2020 U.S. Dist. LEXIS 220096, at *37–38 (applying the law of the plaintiffs' home states when ruling on privity requirement of implied warranty claims).

Plaintiffs plead that SOA does not sell vehicles to consumers. Compl. ¶ 26; *see also supra* note 2. Thus, Plaintiff Treasurer is in vertical privity with Prestige Subaru, not SOA. Compl. ¶ 26. His implied warranty claim must be dismissed for this additional reason.

G.    **Plaintiffs' fraud claims fail for several reasons. (Counts III—VI)**

1.    **Plaintiffs fail to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).**

Plaintiffs' Maryland, North Carolina, and Pennsylvania statutory consumer fraud claims (Counts III—V), and claim of fraud by omission or fraudulent concealment (Count VI), are subject to the heightened pleading standard of Rule 9(b).[9] When fraud is alleged, the Rule 8 standard is enhanced by Rule 9(b), which commands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

---

[9] Claims based upon deception and fraudulent statements are subject to the Rule 9(b) heightened pleading standard. *See, e.g., Cross v. Ciox Health, LLC*, No. 4:19-cv-7-FL, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020); *Foster v. Attias*, Nos. 18-4853, 19-866, 2020 U.S. Dist. LEXIS 165136, at *22 (E.D. Pa. Sept. 9, 2020).

9(b). "Specifically, the plaintiff must plead or allege the 'date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Granillo v. FCA US L.L.C.*, No. 16-153 (FLW) (DEA), 2016 U.S. Dist. LEXIS 116573, at *16–17 (D.N.J. Aug. 29, 2016). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations omitted). Plaintiffs must state the precise conduct underlying their fraud claims. And where a complaint alleges fraud against multiple defendants, the complaint must "plead with particularity … the [specific] allegations of fraud" applicable to each defendant. *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).

Plaintiffs generally allege a fraudulent scheme to conceal from consumers that the Class Vehicles are supposedly defective. Plaintiffs assert in conclusory fashion that "Defendants" intended to mislead consumers through both misrepresentations and material omissions. Compl. ¶¶ 191, 196, 208-09, 214, 225-26, 231, 240. Each is addressed separately.

### a.      Plaintiffs plead no affirmative misrepresentations.[10]

The Complaint pleads no actual statement, by any actual person, at any actual time. Instead, Plaintiffs advance generic assertions regarding build quality and vehicle capabilities made in advertising and other forms of communications. Compl. ¶¶ 67–78. The Complaint identifies no actual statements, when they were made, by whom they were made, or to whom they were made. Simply noting that SOA's website contains generalized advertisements about safety and reliability, or making boilerplate allegations that prior to purchasing their vehicles, Plaintiffs viewed Subaru marketing materials concerning the Class Vehicle, including Subaru television commercials and online advertising, viewed the Monroney sticker on the vehicle, and spoke with Subaru sales representatives concerning the vehicle's features, *e.g.*, *id.* ¶¶ 18, 20, 28,

---

[10] Plaintiffs do not assert a cause of action for fraudulent misrepresentation. It is addressed here to the extent Plaintiffs' statutory fraud claims generically reference supposed misrepresentations.

39, 41, without identifying those statements to any extent, at undisclosed dates and times, is far from sufficient.

Plaintiffs' wholly conclusory allegations of general knowledge of the alleged defect, and unspecified affirmative misrepresentations, fall even further from the mark. These allegations are insufficient as a matter of law under Rules 9(b), 12(b)(6), *Twombly*, and *Iqbal*. No Plaintiff alleges he received any affirmative representations about the alleged defect, or relied on such representations when purchasing a vehicle. Such boilerplate allegations may properly be disregarded. *See In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, at *38-42 (N.D. Cal. Nov. 6, 2009). Those bare recitations are untethered to any actual facts, and courts have dismissed analogous claims. *See, e.g.*, *Block v. Jaguar Land Rover N. Am., LLC*, No. 15-cv-5957 (SRC), 2016 U.S. Dist. LEXIS 69085, at *9 (D.N.J. May 26, 2016) (dismissing fraud claims arising when no facts concerning misrepresentations were pleaded). For example, in *In re MyFord Touch*, the court dismissed plaintiffs' fraud claims based on affirmative misrepresentations when they generically alleged, without details, they viewed advertisements and spoke to dealership employees about Ford's vehicles prior to purchase. 46 F. Supp. 3d 936, 953-54 (N.D. Cal. 2014). Plaintiffs here plead even less.

Unable to identify actionable misrepresentations, Plaintiffs aver that they saw advertisements or spoke with sales representatives regarding the vehicle's features or reliability. Complaint ¶¶ 18, 20, 28, 30, 39, 41, 67-70, 72-78. But those "vague, highly subjective" statements are mere puffery and not actionable as opposed to "specific, detailed factual assertions" that are entirely lacking from Plaintiffs' Complaint. *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 08-939 (DRD), MDL No. 1956, 2009 U.S. Dist. LEXIS 82833, at *32 (D.N.J. Sept. 10, 2009) (quoting *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)); *see also In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1534 (E.D. Mo. 1997) (dismissing fraud claims based on general advertisements and promotional materials in action concerning allegedly defective anti-lock brake system); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017) ("[T]o the extent [Plaintiff] is claiming that he relied on

- 19 -

any [of Defendant's] representations regarding their vehicles' general safety, quality, reliability, or performance, those assertions undoubtedly constitute non-actionable puffery."); *Robinson v. Kia Motors Am., Inc.*, Civ. No. 13-006, 2015 U.S. Dist. LEXIS 121755, at *10–11 (D.N.J. Sept. 11, 2015) (finding the statement "[w]e have a lot of confidence in the quality and durability of every new Kia that rolls off the assembly line. So much confidence, that we offer an industry-leading Kia 10-year or 100,000-mile warranty program" non-actionable puffery).

### b.   Plaintiffs fail to adequately plead fraudulent omissions.

Plaintiffs similarly fail to adequately plead any fraudulent omissions. They allege no actual knowledge by anyone at SOA, but instead repeat generic allegations throughout the Complaint. Parroting vague and unfounded conclusions, Plaintiffs baldly assert—with no supporting factual specificity—that "Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of sale or lease and thereafter." Compl. ¶ 9. To support those unfounded assertions, Plaintiffs make general allegations about "pre-release testing data." *Id.* ¶ 10, 119. That allegation is woefully insufficient. At no point do Plaintiffs allege that any such pre-release testing actually revealed any defect, nor do Plaintiffs allege any background concerning any pre-release testing. Such pleading failures mandate dismissal. *See Cummings v. FCA US L.L.C.*, 401 F. Supp. 3d 288, 308–09 (N.D.N.Y. 2019) ("Plaintiff does not allege any facts plausibly suggesting that this testing in fact showed any sort of defect … or any occurrence of the problems Plaintiff has alleged she and others have experienced … [T]he mere existence of [pre-production] testing, without any allegations as to what that testing revealed, does not plausibly suggest that Defendant was aware of the alleged defect.").

Nor are Plaintiffs' broad and generic statements that SOA collects data and warranty information and maintains an internal quality management system, *e.g.* Compl. ¶¶ 10, 116, 123-24, sufficient to satisfy the heightened pleading standard of Rule 9(b) or even Rule 8's

plausibility standard.[11] *See Gotthelf v. Toyota Motor Sales, U.S.A., In.*, 525 F. App'x 94, 104 (3d Cir. 2013). In *Gotthelf*, the Third Circuit affirmed dismissal on the pleadings of statutory fraud claims where plaintiff alleged "that Toyota should have been aware of the [alleged] defect through its own '[b]ooks of [k]nowledge, internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints.'" *Id.* The court ruled that such general allegations about a car company's business operations were insufficiently pleaded because the plaintiff did "not state when the alleged complaints were received, or to whom at Toyota these alleged complaints were sent." *Id.* "Such conclusory allegations [were] insufficient to establish Toyota's knowledge, and concealment, of the [alleged] defect." *Id.*

Having alleged no presale knowledge based on supposed "internal pre-release testing," Plaintiffs point to complaints posted on the National Highway Traffic Safety Administration's ("NHTSA") website (many of which do not apply to vehicles owned by Plaintiffs) and statements appearing in online forums. Compl. ¶ 115 and Exs. 1–2. In essence, Plaintiffs are improperly attempting to use post-sale service data and owner complaints to third parties to suggest that SOA had pre-sale knowledge of the supposed defect. If Plaintiffs suggest that warranty data and NHTSA communications from vehicles *in use* would have been available *before* the vehicles were sold, that argument strains credulity.

Moreover, those cited complaints to NHTSA or posted on other third-party websites were not made to SOA, and they provide no support for Plaintiffs' fraud claims. *See, e.g., McCabe v. Daimler AG,* 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) (quoting *Friedman v. Am. Guardian Warranty Servs.,* 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003) (holding "[f]raud based upon a failure to disclose material information exists only when a duty to make such disclosure exists" and finding no duty to disclose alleged defect when plaintiff failed to plausibly allege knowledge

---

[11] The Court may take judicial notice of the fact that every automotive company collects warranty data and maintains a quality management system as required by federal regulations (e.g., TREAD Act and NHTSA's early warning reporting regulations, 49 C.F.R. §§ 579.1–.21). Therefore, Plaintiffs' allegations say nothing about SOA's requisite knowledge.

of the defect before sale)). Likewise, Plaintiffs' references to online forums are similarly unavailing. Setting aside that most of the posts referenced in the Complaint post-date the sale of most of the named plaintiffs' vehicles, "[c]ourts in this district have repeatedly found that consumer complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where there are no allegations that the manufacturer saw such complaints." *Granillo*, 2016 U.S. Dist. LEXIS 116573, at *29–30; *see also Fisher v. Honda N. Am.*, No. LA CV13-09285 JAK(PLAx), 2014 U.S. Dist. LEXIS 84570, at *13–14 (C.D. Cal. June 12, 2014) (finding allegations of consumer complaints on government website allegedly "tracked" by the defendant could not support presale knowledge); *Alban v. BMW of N. Am., L.L.C.*, No. 09-5398 (DRD), 2011 U.S. Dist. LEXIS 26754, at *3, *10–12, *32-34 (D.N.J. Mar. 15, 2011) (declining to view statements made to third parties as admission of knowledge).

Finally, Plaintiffs' mention of the "Monroney" or "window sticker", Compl. ¶¶ 18, 28, 39, 55, is irrelevant for both their fraudulent misrepresentation and omission claims because the categories of information to be included on that label are prescribed by law and do not include information about potential vehicle defects. *See* 15 U.S.C. § 1232 (delineating label and entry requirements). It is insufficient to allege that SOA omitted information that, by law, is not appropriate on this label.

Plaintiffs have pleaded no facts or specifics that establish who at SOA supposedly knew about the alleged defect or when that knowledge supposedly came about. Plaintiffs' omission-based fraud claims must be dismissed.

### 2.     The economic loss doctrine bars Plaintiffs' common law fraud claims.

While Plaintiffs attempt to frame their dissatisfaction with the Class Vehicles as a scheme to defraud, their claims are more accurately framed as an allegation they did not receive the full benefit of their bargain. *See* Compl. ¶ 245. They are attempting to predicate a tort claim— common law fraud—on a purely economic loss. Those claims are barred because a purchaser may not sue in tort based on the allegation that the product she purchased did not perform as expected. Under the Economic Loss Doctrine, a claim that a product has disappointed a customer

- 22 -

may only proceed as a breach of contract or warranty, if at all. *E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 871–72 (1986)*; see also Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 615 (7th Cir. 2001) (quoting *Collins v. Reynard*, 154 Ill. 2d 48, 54 (1992) (Miller, C.J., concurring) ("In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.")).

### 3.   Plaintiffs' state consumer fraud claims fail for additional reasons

#### a.   Plaintiff Treasurer's UDTPA claim is barred by the economic loss doctrine.

Plaintiff Treasurer asserts a claim under the North Carolina UDTPA (Count IV). Compl. ¶¶ 204-19. However, his claim is barred by the economic loss doctrine. The economic loss doctrine bars UDTPA claims that are based on the defectiveness of a product where the only damages pled are to the product itself. *See Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311, 325-26 (D. Mass. 2018); *McDonald Bros., Inc. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 269 (M.D.N.C. 2005); *Garlock v. Henson*, 112 N.C. App. 243, 245 (1993).

Accordingly, the Court should dismiss Plaintiff Treasurer's UDTPA claim (Count IV) as barred by the economic loss rule.

#### b.   Plaintiff Treasurer's allegation of a mere breach of warranty is insufficient to state a UDTPA claim.

Even if Plaintiff Treasurer's UDTPA claim were not barred by the economic loss doctrine, its allegation of a mere breach of warranty is insufficient to sustain a claim under the UDTPA. "North Carolina courts have repeatedly held that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA.]" *Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 799 Fed. App'x 179, 181 (4th Cir. 2019) (internal quotation marks omitted). A plaintiff must demonstrate a showing of "substantial aggravating circumstances to support a claim" under the UDTPA. *Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 378 F. Supp. 3d 413, 433 (E.D.N.C. 2019) (quoting *Broussard v. Meineke*

*Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998)). Here, Plaintiff Treasurer has failed to make such a showing.

### c.      Pennsylvania Plaintiffs' UTPCPL claim is barred by the economic loss doctrine.

The Drogowskis assert a claim under the Pennsylvania UTPCPL (Count V). Compl. ¶¶ 220-36. However, their claim is barred by the economic loss doctrine. In *Werinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), the Third Circuit held that the economic loss doctrine applied to statutory misrepresentation claims under the Pennsylvania UTPCPL the same way as it did to common law fraud claims. *Id.* at 681. Thus, where a plaintiff's fraudulent concealment claims regarding alleged transmission defects related to "the quality or character of the goods sold," and were "interwoven" with, and not "extraneous" to, their breach of warranty claims, the economic loss doctrine barred the UTPCPL claim. *Id.* at 676, 681.

There is a split in Pennsylvania among federal and state courts regarding the application of the economic loss doctrine. However, a federal district court is bound to follow *Werwinski*. *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 550-51 (D. Md. 2011) ("While this Court recognizes the considerable debate over the validity of the Third Circuit's decision, the Court cannot ignore this pronouncement of Pennsylvania law.") (citing *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 556 (M.D. Pa. 2010)). Accordingly, this Court should dismiss the Drogowskis' Pennsylvania UTPCPL Claim (Count V) as barred by the economic loss rule.

### H.      Plaintiffs seek relief they are not entitled to.

#### 1.      Plaintiffs' request for an order requiring SOA to issue a voluntary recall is preempted by the Safety Act.

In their prayer for relief, Plaintiffs ask the court to "compel[]Subaru to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a)." *See* Compl., Prayer for Relief ¶ B. That request is beyond the power of state law and must be dismissed.

Courts consistently conclude, regarding recalls, that state law is preempted by the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 49 U.S.C. §§ 30101-30183 (2012). *See Cox House Moving, Inc. v. Ford Motor Co.*, CA No. 7:06-1218-HMH, 2006

U.S. Dist. LEXIS 55490, at *23-24 (D.S.C. Aug. 8, 2006) ("Federal courts have held that conflict preemption applies to prevent the judiciary from ordering vehicle recalls as a remedy in a court action.").

Courts repeatedly have reached this conclusion under the principles of conflict preemption.[12] Conflict preemption arises where state action would frustrate the purpose of a federal scheme. *In re Bridgestone/Firestone Inc., ATX, ATX II & Wilderness Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 943-44 (S.D. Ind. 2001) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000)). It applies even if the preempting legislation contains a savings clause. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000). "[P]arallel, competing system[s] of court-ordered and supervised recalls would undermine and frustrate the Safety Act's objectives of prospectively protecting the public interest through a scheme of administratively enforced remedies." *Bridgestone*, 153 F. Supp. 2d at 944. The fundamental underpinning of the Safety Act was to implement a recall system that supported and supplemented the Federal Motor Vehicle Safety Standards created by NHTSA.[13]

The notice and recall relief are barred also by the doctrine of primary jurisdiction, a court-created doctrine that focuses on "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006) (citing *Nader v. Allegheny Airlines*, 426 U.S. 290, 303 (1976)). Although its elements defy exact definition, courts consider two factors: (1) whether the case "involves a matter within the special expertise of the agency; and (2) [whether]

---

[12]There is no presumption against preemption in this matter because "states have never assumed a significant role in *recalls* related to vehicle safety." *Bridgestone*, 153 F. Supp. 2d at 943–44 (emphasis in original).

[13] That scheme governs not only the recall itself, but any notices sent to consumers. *See, e.g.*, 49 U.S.C. § 30119 (2012) (mandating content, timing, and method of notification by manufacturers); *Bridgestone*, 153 F. Supp. 2d at 945 (discussing comprehensiveness of legislative scheme and stating "[t]he detail contained in the Safety Act suggests a clear congressional intent to limit encroachment on the agency's work"); 49 C.F.R. § 577.5 (regulating content and appearance of manufacturer's notice to customers in respect of safety recall); 49 C.F.R. § 577.7 (regulating time and manner of safety recall notifications); 49 C.F.R. § 577.13 (regulating safety-related defect notifications to dealers and distributors).

there is a need to promote uniformity in administrative policy or a possibility of inconsistent results between the courts and the agency." *Id.* (citing *Far East Conf. v. United States*, 342 U.S. 570 (1952)). Here, both factors strongly favor deferring to NHTSA's "special competence." *Id.* at 629; *see Clark v. Actavis Grp. HF*, 567 F. Supp. 2d 711, 719 (D.N.J. 2008) (holding doctrine of primary jurisdiction applies to federal agency's particularized knowledge and statutory authority over recalls).

The authority to grant the relief requested by Plaintiffs—the issuance of a safety-related defect notice to consumers and implementing a recall—lies not with this Court, but rather exclusively with NHTSA.

### 2.    Plaintiffs' request for injunctive relief with respect to supposed false advertising fails as a matter of law.

Among other relief, Plaintiffs seek "[a]n order enjoining Subaru from further deceptive distribution, sales, and lease practices with respect to Class Vehicles" and "enjoining Subaru from selling the Class Vehicles with the misleading information." Compl., Prayer for Relief ¶ B. To the extent Plaintiffs are seeking to base their fraud claims on supposed false advertising, they lack Article III standing to pursue such injunctive relief as past purchasers. *See Berni v. Barilla S.P.A.*, 964 F.3d 141, 148-49 (2d Cir. 2020); *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 225-26 (3d Cir. 2012).

## IV.    CONCLUSION

For all these reasons, Defendant SOA respectfully requests this Court enter an order dismissing Plaintiffs' claims as stated above for lack of subject matter jurisdiction or for failure to state a claim.

- 26 -

Dated: April 12, 2021

Respectfully submitted,

*s/Casey Watkins*

Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel, New Jersey 08054-0015
856.761.3400
856.761.1020 fax

Attorneys for Defendant Subaru of America, Inc.

- 27 -