Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel, New Jersey 08054-0015
856.761.3400
856.761.1020 fax

Attorneys for Defendant Subaru of America, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Aimee Hickman, Jared Hickman, William Treasurer, Kelly Drogowski, Frank Drogowski, John Taitano, Richard Palermo, Lori Woiwode, Shawn Woiwode, Carolyn Patol, Cassandra Sember, and Steven Sember, individually and on behalf of all others similarly situated,** | Case No. 1:21-CV-02100-NLH-AMD |
| Plaintiffs; | |
| v. | **Defendant Subaru of America, Inc.'s Brief in Support of its Motion to Dismiss** |
| **Subaru of America, Inc. and Subaru Corporation f/k/a Fuji Heavy Industries, LTD.,** | |
| Defendants. | |

DMEAST #45108553 v1

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................... 1
II. BACKGROUND ......................................................................................................... 1
    A. Plaintiffs' allegations ......................................................................................... 1
    B. The warranties made by Subaru of America, Inc. .............................................. 2
    C. The alleged design defect................................................................................... 3
    D. The claims and relief sought .............................................................................. 3
III. ARGUMENT............................................................................................................... 5
    A. Plaintiffs' breach of express warranty claim must be dismissed because the New Vehicle Limited Warranty does not cover design defects. (Count I) ............. 5
    B. Plaintiff Treasurer fails to state a claim for breach of express or implied warranty because he affirmatively alleges fulfillment of the New Vehicle Limited Warranty and that his vehicle is merchantable. (Counts I & II) .............. 9
    C. Plaintiffs' implied warranty claims are subject to dismissal. (Count II) .............. 10
        1. Plaintiffs do not allege their vehicles are unmerchantable or unfit for their ordinary purpose. ....................................................................... 10
        2. Plaintiffs Treasurer, Taitano, Patol, and the Sembers lack the requisite privity to assert a claim for breach of the implied warranty of merchantability against SOA. (Count II) .............................. 12
    D. Certain Plaintiffs' breach of warranty claims fail for lack of pre-suit notice. (Counts I & II).................................................................................... 13
    E. Plaintiff Taitano's breach of express warranty claims under the Song-Beverly Act fail as a matter of law. (Count VII) .................................................. 13
    F. Plaintiffs' fraud claims fail for several reasons. (Counts III—XIV) .................... 14
        1. Plaintiffs fail to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b)........................................................ 14
        2. Plaintiffs have not alleged facts sufficient to give rise to a duty to disclose................................................................................................... 21
        3. The economic loss doctrine bars Plaintiffs' common law fraud claims.................................................................................................... 23
        4. Plaintiffs' state consumer fraud claims fail for additional reasons........... 24
    G. Plaintiffs seek relief they are not entitled to. ....................................................... 28
        1. Plaintiffs' request for an order requiring SOA to issue a voluntary recall is preempted by the Safety Act. ..................................................... 28
        2. Plaintiffs' request for injunctive relief with respect to supposed false advertising fails as a matter of law................................................. 30
IV. CONCLUSION............................................................................................................. 30

DMEAST #45108553 v1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acedo v. DMAX, Ltd.*,
  No. 15-02443, 2015 U.S. Dist. LEXIS 189402 (C.D. Cal. July 31, 2015)...............................25

*In re Actimmune Mktg. Litig.*,
  No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408 (N.D. Cal. Nov. 6,
  2009) ...............................................................................................................................16

*Adams v. Nissan N. Am., Inc.*,
  395 F. Supp. 3d 838, 2018 U.S. Dist. LEXIS 87552 (S.D. Tex. May 4, 2018)......................22

*Adams v. NVR Homes, Inc.*,
  193 F.R.D. 243 (D.Md. 2000)................................................................................................15

*Alban v. BMW of N. Am., L.L.C.*,
  No. 09-5398 (DRD), 2011 U.S. Dist. LEXIS 26754 (D.N.J. Mar. 15, 2011) ...................19, 21

*Amato v. Subaru of Am., Inc.*,
  No. 18-16118, 2019 U.S. Dist. LEXIS 209659 (D.N.J. Dec. 5, 2019)................................5, 8

*Arndt v. Extreme Motorcycles*,
  No. 1:07cv302, 2007 U.S. Dist. LEXIS 95625 (W.D.N.C. Dec. 26, 2007) .............................9

*Banh v. Am. Honda Motor Co.*,
  No. 2:19-cv-05984-RGK-AS, 2019 WL 8683361 (C.D. Cal. Dec. 17, 2019) ........................13

*Beard Plumbing & Heating v. Thompson Plastics*,
  152 F.3d 313 (4th Cir. 1998) ...............................................................................................12

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017)................................................................................17

*Berni v. Barilla S.P.A.*,
  964 F.3d 141 (2d Cir. 2020)..................................................................................................30

*BK Trucking Co. v. PACCAR, Inc.*,
  Civil Action No. 15-2282, 2016 U.S. Dist. LEXIS 85149 (D.N.J. June 30,
  2016) .................................................................................................................................9

*Block v. Jaguar Land Rover N. Am., LLC*,
  No. 15-cv-5957 (SRC), 2016 U.S. Dist. LEXIS 69085 (D.N.J. May 26, 2016).....................16

- ii -

DMEAST #45108553 v1

*In re Bridgestone/Firestone Inc., ATX, ATX II & Wilderness Tires Prods. Liab. Litig.*,
  153 F. Supp. 2d 935 (S.D. Ind. 2001) ..................................................................28, 29

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) .............................................................................24

*Bruce Martin Constr. v. CTB, Inc.*,
  735 F.3d 750 (8th Cir. 2013) ...............................................................................5

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 ....................................................................................................20

*Bussian v. DaimlerChrysler Corp.*,
  411 F. Supp. 2d 614 (M.D.N.C. 2006) ..............................................................29

*Carlson v. Gen. Motors. Corp.*,
   883 F.2d 287, 297 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990)..................11

*Childers v. Menard, Inc.*,
  20-cv-107-jdp, 2020 U.S. Dist. LEXIS 162283 (W.D. Wisc. Sept. 3, 2020)..........14

*Chin v. Chrysler Corp.*,
  No. 95-5569 (JCL), 1999 U.S. Dist. LEXIS 23493 (D.N.J. Dec. 14, 1999) ..........21

*Chowning v. Kohl's Dep't Stores, Inc.*,
  No. 15-8673, 2016 U.S. Dist. LEXIS 187402 (C.D. Cal. July 27, 2016)...............25

*Clark v. Actavis Grp. HF*,
  567 F. Supp. 2d 711 (D.N.J. 2008) .....................................................................29

*Coba v. Ford Motor Co.*,
  932 F.3d 114 (3d Cir. 2019)............................................................................5, 7, 8

*Coba v. Ford Motor Co.*,
  No. Civ. 12-1622, 2013 U.S. Dist. LEXIS 8366 (D.N.J. Jan. 22, 2013) ..............21

*Cox House Moving, Inc. v. Ford Motor Co.*,
  CA No. 7:06-1218-HMH, 2006 U.S. Dist. LEXIS 55490 (D.S.C. Aug. 8, 2006) ....................................................................................................................28

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000)............................................................................................28

*Cross v. Ciox Health, LLC*,
  No. 4:19-cv-7-FL, 438 F. Supp. 3d 572 (E.D.N.C. 2020) ...................................14

DMEAST #45108553 v1

*Cummings v. FCA US L.L.C.*,
401 F. Supp. 3d 288 (N.D.N.Y. 2019) ..................................................................7, 15, 17

*Darne v. Ford Motor Co.*,
No. 13 C 03594, 2015 U.S. Dist. LEXIS 169752 (N.D. Ill. Dec. 18, 2015) .......................9, 20

*Dawson v. General Motors LLC*,
No. 19-424, 2019 WL 3283046 (D.N.J. July 22, 2019) ...........................................................20

*Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*,
No. 10-61519, 2011 U.S. Dist. LEXIS 51440 (S.D. Fla. 2011) ..............................................23

*Duncan v. Nissan N. Am., Inc.*,
305 F. Supp. 3d 311 (D. Mass. 2018) ......................................................................................24

*E. River S.S. Corp. v. Transamerica Delaval*,
476 U.S. 858 (1986)..................................................................................................................23

*In re Elk Cross Timbers Decking Mktg., Sales Practices & Prod. Liab. Litig.*,
Civ. No. 15-18 (JLL), MDL No. 2577, 2015 U.S. Dist. LEXIS 144790 (D.N.J. Oct. 26, 2015) ............................................................................................................14

*Far East Conf. v. United States*,
342 U.S. 570 (1952)..................................................................................................................29

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
280 F. Supp. 3d 975 (E.D. Mich. 2017)...................................................................................20

*Ferranti v. Hewlett-Packard Co.*,
No. 5:13-cv-03847-EJD, 2014 U.S. Dist. LEXIS 131249 (N.D. Cal. Sept. 16, 2014) .........................................................................................................................................9

*Fisher v. Honda N. Am.*,
No. LA CV13-09285 ................................................................................................................19

*Foster v. Attias*,
Nos. 18-4853, 19-866, 2020 U.S. Dist. LEXIS 165136 (E.D. Pa. Sept. 9, 2020) .......................................................................................................................................14

*Franklin Livestock, Inc. v. Boehringer Ingelheim Vetmedica, Inc.*,
113 F. Supp. 3d 834 (E.D.N.C. 2015)......................................................................................23

*Gaines v. Krawczyk*,
354 F. Supp. 2d 573 (W.D. Pa. 2004).......................................................................................22

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000)..................................................................................................................28

- iv -

*In re GMC Anti-Lock Brake Prods. Liab. Litig.*,
  966 F. Supp. 1525 (E.D. Mo. 1997)......................................................................................17

*Gonzalez v. Ford Motor Co.*,
  No. 19-652, 2019 U.S. Dist. LEXIS 50844 (C.D. Cal. Mar. 22, 2019)...................................13

*Gotthelf v. Toyota Motor Sales, U.S.A., In.*,
  525 F. App'x 94 (3d Cir. 2013) ...............................................................................................18

*Granillo v. FCA US L.L.C.*,
  No. 16-153 (FLW) (DEA), 2016 U.S. Dist. LEXIS 116573 (D.N.J. Aug. 29,
  2016) ...............................................................................................................................15, 19

*Hamilton v. TBC Corp.*,
  328 F.R.D. 359 (C.D. Cal. Aug. 24, 2018) .............................................................................12

*Hammer v. Vital Pharms.*,
  No. Civ. 11-4124, 2012 WL 1018842 (D.N.J. Mar. 26, 2012)................................................13

*Hancock v. Americo Fin. Life & Annuity Ins. Co.*,
  378 F. Supp. 3d 413 (E.D.N.C. 2019).....................................................................................24

*Hancock v. Americo Fin. Life & Annuity Ins. Co.*,
  799 Fed. App'x 179 (4th Cir. 2019) ........................................................................................24

*Hebron v. Am. Isuzu Motors*,
  60 F.3d 1095 (4th Cir. 1995) ..................................................................................................13

*Hindsman v. GM L.L.C.*,
  No. 17-cv-05337-JSC, 2018 U.S. Dist. LEXIS 92319 (N.D. Cal. June 1, 2018) .................5, 8

*Hornberger v. Gen. Motors Corp.*,
  929 F. Supp. 884 (E.D. Pa. 1996) ...........................................................................................11

*Johnson v. Nissan N. Am., Inc.*,
  No. 17-cv-00517-WHO, 2018 U.S. Dist. LEXIS 26065 (N.D. Cal. Feb. 15,
  2018) .......................................................................................................................................12

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................................................15

*Kelly v. Ga.-Pac. L.L.C.*,
  671 F. Supp. 2d 785 (E.D.N.C. 2009)......................................................................................12

*Kesse v. Ford Motor Co.*,
  No. 14 C 6265, 2015 U.S. Dist. LEXIS 24541 (N.D. Ill. Mar. 2, 2015) ..................................8

- v -

*Knafo v. Jaguar Land Rover N. Am. LLC*,
    No. 18-01401, 2019 U.S. Dist. LEXIS 210836 (C.D. Cal. July 12, 2019) ............................. 14

*Loo v. Toyota Motor Sales, USA, Inc.*,
    No. 8:19-cv-00750-VAP, 2019 U.S. Dist. LEXIS 225771 (C.D. Cal. Dec. 20,
    2019) ...................................................................................................................... 7, 12, 25, 26

*Mack Trucks, Inc. v. Borgwarner Turbo Sys.*,
    508 F. App'x 180 (3d Cir. 2012) ............................................................................................. 5

*Martin v. Mead Johnson Nutrition Co.*,
    No. 09-11609-NMG, 2010 U.S. Dist. LEXIS 104923 (D. Mass. Sept. 30,
    2010) ...................................................................................................................................... 14

*McCabe v. Daimler AG*,
    160 F. Supp. 3d 1337 (N.D. Ga. 2015) .................................................................................. 22

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) .................................................................................. 19

*McDonald Bros., Inc. v. Tinder Wholesale, LLC*,
    395 F. Supp. 2d 255 (M.D.N.C. 2005) .................................................................................. 24

*McNair v. Synapse Group, Inc.*,
    672 F.3d 213 (3d Cir. 2012) .................................................................................................. 30

*McQueen v. BMW of N. Am., LLC*,
    Civil Action No. 12-06674 (SRC), 2014 U.S. Dist. LEXIS 21084 (D.N.J. Feb.
    20, 2014) ........................................................................................................................... 20, 21

*MDNet, Inc. v. Pharmacia Corp.*,
    147 F. App'x 239 (3d Cir. 2005) ........................................................................................... 15

*Milman v. FCA U.S., LLC*,
    No. 18-00686, 2018 U.S. Dist. LEXIS 226613 (C.D. Cal. Aug. 30, 2018) ........................... 14

*Mullins v. Premier Nutrition Corp.*,
    No. 13-01271, 2018 U.S. Dist. LEXIS 10810 (N.D. Cal. Jan. 23, 2018) .............................. 26

*Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*,
    265 F.3d 601 (7th Cir. 2001) ................................................................................................ 23

*In re MyFord Touch*,
    46 F. Supp. 3d 936, 953-54 (N.D. Cal. 2014) ....................................................................... 16

*Nelson v. Nissan N. Am., Inc.*,
    894 F. Supp. 2d 558 (D.N.J. 2012) ....................................................................................... 10

DMEAST #45108553 v1

*Nelson v. Nissan N. Am., Inc.*,
  CIV. NO. 11-5712, 2014 U.S. Dist. LEXIS 175224 (D.N.J. Dec. 19, 2014) ........................5, 8

*Nguyen v. Cree, Inc.*,
  No. 3:18-cv-02097-SB, 2019 U.S. Dist. LEXIS 220007 (D. Or. Nov. 6, 2019) ....................12

*Otsuka Pharm. Co. v. Torrent Pharm. Ltd.*,
  118 F. Supp. 3d 646 (D.N.J. 2015) ......................................................................................20

*Powell v. Subaru of Am., Inc.*,
  No. 1:19-cv-19114, 2020 U.S. Dist. LEXIS 220096 (D.N.J. Nov. 24, 2020) ........................12

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
  Civ. No. 14-277, 2015 U.S. Dist. LEXIS 108634 (D.N.J. Aug. 18, 2015) ............................12

*Robinson v. Kia Motors Am., Inc.*,
  Civ. No. 13-006, 2015 U.S. Dist. LEXIS 121755 (D.N.J. Sept. 11, 2015) .......................17, 28

*Rosen v. Uber Tech., Inc.*,
  164 F. Supp. 3d 1165 (N.D. Cal. 2016) ................................................................................25

*Saitsky v. DirecTV, Inc.*,
  No. 08-cv-7918, 2009 U.S. Dist. LEXIS 134817 (C.D. Cal. Sept. 22, 2009) ........................25

*Schechter v. Hyundai Motor Am.*,
  No. 18-13634 (FLW), 2019 WL 3416902 (D.N.J. July 29, 2019) .........................................19

*Sheris v. Nissan N. Am., Inc.*,
   No. 07-2516, 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. June 2, 2008) ..........................11

*Soliman v. Daimler AG*,
  No. CV 10-408 (SJF)(AKT), 2011 U.S. Dist. LEXIS 151413 (E.D.N.Y. Aug.
  8, 2011) .................................................................................................................................6

*Stein v. Fenestra Am., L.L.C.*,
  No. 09-5038, 2010 U.S. Dist. LEXIS 22286 (E.D. Pa. Mar. 9, 2010) ...................................23

*In re Subaru Battery Drain Prods. Liab. Litig.*,
  2021 U.S. Dist. LEXIS 62373 .............................................................................................10

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
  No. 03 Civ. 9608 (SCR), 2004 U.S. Dist. LEXIS 27086 (S.D.N.Y. June 23,
  2004) .....................................................................................................................................2

*Szymczak v. Nissan N. Am., Inc.*,
  No. 10 CV 7493(VB), 2011 U.S. Dist. LEXIS 153911 (S.D.N.Y. Dec. 16,
  2011) ...................................................................................................................................21

DMEAST #45108553 v1

*In re Takata Airbag Prods. Liab. Litig.*,
   193 F.Supp. 3d 1324 (S.D. Fla. 2016) ...................................................................23

*Tatum v. Chrysler Grp. L.L.C.*,
   No. 10-cv-4269(DMC)(JAD), 2011 U.S. Dist. LEXIS 32362 (D.N.J. Mar. 28,
   2011) .......................................................................................................................28

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................11

*Tobin v. Samsung Elecs. Am.*,
   No. 18-12473, 2019 U.S. Dist. LEXIS 52360 (D.N.J. Mar. 27, 2019)...................27

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
   08-939 (DRD), MDL No. 1956, 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept.
   10, 2009) .................................................................................................................16

*Troup v. Toyota Motor Corp.*,
   545 F. App'x 668 (9th Cir. 2013) .............................................................................5

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002)....................................................................................23

*Wilson v. Dryvit Sys., Inc.*,
   206 F. Supp. 2d 749 (E.D.N.C. 2002)......................................................................23

*Zaccagnino v. Nissan N. Am., Inc.*,
   No. 14-3690, 2015 U.S. Dist. LEXIS 78441 (S.D.N.Y. June 16, 2015) ..........27, 28

**State Cases**

*Bigler-Engler v. Breg, Inc.*,
   7 Cal. App. 5th 276, 311–12 (Cal. Ct. App. 2017) .................................................22

*BOC Grp., Inc. v. Chevron Chem. Co., LLC*,
   359 N.J. Super. 135 (App. Div. 2003) .....................................................................10

*Connick v. Suzuki Motor Co.*,
   174 Ill. 2d 482 (Ill. 1996)........................................................................................22

*Garlock v. Henson*,
   112 N.C. App. 243 (1993) .......................................................................................24

*Goshen v. Mut. Life Ins. Co.*,
   774 N.E.2d 1190 (N.Y. 2002)..................................................................................26

*Harton v. Harton*,
   344 S.E.2d 117 (N.C. Ct. App. 1986) ......................................................................22

DMEAST #45108553 v1

*Luciano v. World-Wide Volkswagen Corp.*,
514 N.Y.S.2d 140 (3d Dep't 1987) ....................................................................12

*Morrissey v. Nextel Partners, Inc.*,
895 N.Y.S.2d 580 (N.Y. App. Div. 2010) ..........................................................27

*Mountz v. Glob. Vision Prods.*,
770 N.Y.S.2d 603 (2003) ...................................................................................26

*Neu v. Neu*,
756 N.Y.S.2d 598 (2d Dep't 2003) .....................................................................26

*Rossman v. Herb Chambers Commonwealth Ave*,
09-P-954, 2011 Mass. App. ................................................................................22

*Thiedemann v. Mercedes-Benz USA, L.L.C.*,
183 N.J. 234 (2005) .............................................................................................9

*Wade v. Ford Motor Co.*,
341 Mass. 596 (Mass. 1961) ..............................................................................22

**Federal Statutes**

15 U.S.C. § 1232 ......................................................................................................21

49 U.S.C. § 30118(a) ...............................................................................................28

49 U.S.C. § 30119 (2012) ........................................................................................29

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ......................................4

National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. §§ 30101-
30183 (2012) ......................................................................................................28

**State Statutes**

63 Pa. Stat. Ann. § 818.303(e)(1) ..............................................................................3

Cal. Bus. & Prof. Code § 17200 ................................................................................4

Cal. Civ. Code § 1795.91(a) ....................................................................................20

Cal. Veh. Code § 11713.3(o)(1) .................................................................................3

California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 .............................4

Md. Code Ann., Transp. § 15-203 ..............................................................................3

N.C. Gen. Stat. § 20-305.2 .........................................................................................3

DMEAST #45108553 v1

N.J.S.A. 12A:2-313.................................................................................................................9

N.Y. Gen. Bus. Law § 349....................................................................................................4, 27

N.Y. Gen. Bus. Law § 350.............................................................................................4, 27, 28

N.Y. Veh. & Traf. Law § 463(2)(bb)...........................................................................................3

North Dakota Consumer Fraud Act ...........................................................................................14

Massachusetts Consumer Protection Act, Mass. Gen. Laws 93A, §§ 1, et seq..............................4

North Carolina Unfair and Deceptive Acts and Practices Act, N.C. Gen Stat. § 75-
    1, et seq. ..........................................................................................................................4

Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCA")
    73 P.S. §§ 201-1, et seq....................................................................................................4

Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200(A), et seq. .................................4

## Other Authorities

Gerald R. Bodisch, US Department of Justice, *Economic Effects of State Bans on
    Direct Manufacturer Sales to Car Buyers* (2009),
    www.justice.gov/atr/economiceffects-state-bans-direct-manufacturer-sales-
    car-buyers...........................................................................................................................2

https://www.justice.gov/civil/ consumer-protection-branch-32 (last visited June 7,
    2021) ................................................................................................................................21

*Restatement (Second) of Conflict of Laws* §§ 6 and 188 ............................................................12

DMEAST #45108553 v1

## I.      INTRODUCTION

Plaintiffs Aimee Hickman, Jared Hickman, William Treasurer, Kelly Drogowski, Frank Drogowski, John Taitano, Richard Palermo, Lori Woiwode, Shawn Woiwode, Carolyn Patol, Cassandra Sember, and Steven Sember bring this putative class action against Defendant Subaru of America, Inc. ("SOA")[1] alleging they each purchased or leased a vehicle sold with a design defect that ultimately caused their vehicles to experience transmission shuddering, squealing, or hesitation. Plaintiffs claim that the CVT transmissions in their 2019–present Subaru Ascent vehicles ("Class Vehicles") are "defective." But other than describing several characteristics of the transmission that they find displeasing, Plaintiffs fail to allege that their vehicles experienced any failures. And, in Mr. Treasurer's case, Plaintiffs allege that Subaru repaired his vehicle as requested pursuant to the applicable warranties.

Most fatally, to the extent that Plaintiffs' claims may be characterized as stating a claim for a defect, those claims are premised solely upon an alleged design defect. It is now well-settled that express warranties covering materials and workmanship—such as Subaru's warranty here—do not cover design defects. Plaintiffs plead nothing that can aid their efforts to avoid the fact that the Powertrain Limited Warranty at issue does not cover the type of design defects alleged. Finally, Plaintiffs' state law fraud claims fail for various reasons, including failure to plead any alleged fraud with the required particularity, untimeliness, and the inability of wholly uninjured Plaintiffs to bring such claims.

For these reasons and others more fully developed below, SOA requests Plaintiffs' First Amended Complaint ("FAC") be dismissed for failure to state a claim.

## II.      BACKGROUND

### A.      Plaintiffs' allegations

The FAC includes twelve Plaintiffs asserting claims arising from their purchase and use

---

[1] Subaru Corporation ("SBR"), while named as a defendant in this action, has not been served pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. 5, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

of eight Subaru vehicles. For each Plaintiff, the name, vehicle, purchased date, and state of purchase are:

| PLAINTIFF(S) | VEHICLE[2] | PURCHASE DATE | STATE OF PURCHASE |
|---|---|---|---|
| Aimee & Jared Hickman | 2020 Subaru Ascent | June 2020 | Maryland |
| William Treasurer | 2019 Subaru Ascent | November 2, 2018 | North Carolina |
| Kelly & Frank Drogowski | 2019 Subaru Ascent | December 1, 2018 | Pennsylvania |
| John Taitano | 2020 Subaru Ascent | August 28, 2019 | California |
| Richard Palermo | 2019 Subaru Ascent | December 2018 | Massachusetts |
| Lori & Shawn Woiwode | 2019 Subaru Ascent | September 2, 2018 | North Dakota |
| Carolyn Patol | 2020 Subaru Ascent | January 2021 | New York |
| Cassandra & Steven Sember | 2020 Subaru Ascent | October 2019 | Virginia |

*See* FAC ¶¶ 16, 26, 37, 51, 64, 77, 87, 97.

### B.   The warranties made by Subaru of America, Inc.

SOA does not design or manufacture Subaru vehicles. Subaru Corporation ("SBR"), a Japanese entity, is the "manufacturer engaged in the development and manufacture of Subaru vehicles, parts, and accessories." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, No. 03 Civ. 9608 (SCR), 2004 U.S. Dist. LEXIS 27086, at *5 (S.D.N.Y. June 23, 2004). SOA is the "United States importer and distributor of Subaru brand vehicles, parts and accessories." *Id.* at *6. SOA does not sell vehicles directly to consumers; instead, independent franchisee authorized retailers sell vehicles to consumers.[3] *See* FAC. ¶¶ 16, 26, 37, 51, 64, 77, 87, 97 (alleging Plaintiffs purchased

---

[2] A reference to a year in connection with a vehicle model refers to the model year of that vehicle, which does not necessarily relate to the calendar year.

[3] That is required by law because "direct manufacturer auto sales are prohibited in almost every state by franchise laws requiring that new cars be sold only by dealers." Gerald R. Bodisch, US Department of Justice, *Economic Effects of State Bans on Direct Manufacturer Sales to Car Buyers* (2009), www.justice.gov/atr/economiceffects-state-bans-direct-manufacturer-sales-car-buyers. Indeed, the vast majority of states either prohibits the direct sale of internal combustion

DMEAST #45108553 v1

or leased vehicles from "authorized Subaru dealership[s]").

SOA is the warrantor of such vehicles. *See* FAC ¶ 119; Watkins Decl. Ex. A, at 15 (2019 Warranty & Maintenance Booklet). As the warrantor, SOA provides several express written warranties to purchasers of Subaru vehicles that "cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use." FAC ¶ 221. Among them is the New Vehicle Limited Warranty, which covers the entire vehicle, subject to exclusions in the Warranty & Maintenance Booklets, for three years or 36,000 miles, whichever comes first. *Id.* ¶ 222. Further, no person is "authorize[d] to assume for any [Subaru entity] any obligations or liabilities greater than or different from those set forth in" the Warranty and Maintenance Booklet. *See, e.g.*, Watkins Decl. Ex. A, at 15.

### C.     The alleged design defect

Plaintiffs allege that the TR690 transmission in their Class Vehicles "was originally designed for use in smaller, lighter cars" and that SBR's decision to use that transmission in the larger Class Vehicles resulted in behaviors they allege are undesirable. FAC ¶ 3. Plaintiffs do not allege a manufacturing defect. That is, they do not allege that SBR failed to manufacture these components to the design specifications. To the contrary, Plaintiffs specifically allege these components were improperly selected for use in the Class Vehicles. *Id.*

### D.     The claims and relief sought

Plaintiffs seek to represent a nationwide class comprising "[a]ll persons or entities who purchased or leased a 2019 to present Subaru Ascent vehicle (Class Vehicle) in the United

---

engine vehicles, like the Class Vehicles, by manufacturers or domestic distributors and requires that such vehicles be sold through independent franchisees or prohibits direct sales if an existing franchisee system is in place. *See, e.g.*, N.J.A.C. 13:21-15.2–.4. (requiring proof of franchise agreement with a manufacturer to sale vehicles in state); 63 Pa. Stat. Ann. § 818.303(e)(1) (West) ("new vehicle dealers shall hold a franchise in writing with a manufacture"); Md. Code Ann., Transp. § 15-203 (West) (requiring franchise agreement with a manufacturer); N.C. Gen. Stat. § 20-305.2 (prohibiting manufacturer from operating dealership in state); Cal. Veh. Code § 11713.3(o)(1) (Deering) (making it unlawful for a manufacturer to "compete with a dealer in the same line-make operating under an agreement or franchise from a manufacturer or distributor in the relevant market area"); N.Y. Veh. & Traf. Law § 463(2)(bb) (prohibiting franchisor from acquiring an interest in dealerships).

- 3 -

States." FAC ¶ 208. Plaintiffs also seek to represent separate state subclasses for Maryland, North Carolina, Pennsylvania, California (including a separate Song-Beverly Act subclass), Massachusetts, North Dakota, New York, and Virginia. *Id.*

Plaintiffs assert fourteen causes of action:[4]

| COUNT | CAUSE OF ACTION | ASSERTED BY |
|---|---|---|
| One | Breach of Express Warranty | Class or all Sub-Classes |
| Two | Breach of the Implied Warranty of Merchantability | Class or all Sub-Classes |
| Three | Violation of the Maryland Consumer Protection Act Md. Code Ann., Com. Law §§ 13-101, et seq. ("MCPA") | Maryland Sub-Class |
| Four | Violation of the North Carolina Unfair and Deceptive Acts and Practices Act, N.C. Gen Stat. § 75-1, et seq. ("NCUDTPA") | North Carolina Sub-Class |
| Five | Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCA") 73 P.S. §§ 201-1, et seq. | Pennsylvania Sub-Class |
| Six | Fraud by Omission or Fraudulent Concealment | Class or all Sub-Classes |
| Seven | Violation of the Song-Beverly Consumer Warranty Act | Song-Beverly Sub-Class |
| Eight | Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 (Deering) ("CLRA") | California Sub-Class |
| Nine | Violation of the Cal. Bus. & Prof. Code § 17200 (Deering) ("UCL") | California Sub-Class |
| Ten | Violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws 93A, §§ 1, et seq. | Massachusetts Sub-Class |
| Eleven | Violation of the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15-02 | North Dakota Sub-Class |
| Twelve | Violation of the N.Y. Gen. Bus. Law § 349 | New York Sub-Class |
| Thirteen | Violation of the N.Y. Gen. Bus. Law § 350 | New York Sub-Class |
| Fourteen | Violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200(A), et seq. | Virginia Sub-Class |

SOA now moves to dismiss Plaintiffs' FAC.

---

[4] Plaintiffs have withdrawn their previously pleaded claims for common law unjust enrichment and for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

- 4 -

## III.    ARGUMENT

### A.    Plaintiffs' breach of express warranty claim must be dismissed because the New Vehicle Limited Warranty does not cover design defects. (Count I)

Plaintiffs' express warranty claim (Count I) fails as a matter of law because the New Vehicle Warranty does not cover design defects. It explicitly covers defects in "material or workmanship," FAC ¶ 221:

> These warranties cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use.

Watkins Decl. Ex. A, at 4 (2019 Warranty & Maint. Booklet).

"[T]he vast weight of authority hold[s] that a workmanship and materials warranty cannot encompass a design defect claim." *Nelson v. Nissan N. Am., Inc.*, CIV. NO. 11-5712 (JEI/AMD), 2014 U.S. Dist. LEXIS 175224, at *7–9 (D.N.J. Dec. 19, 2014). That is, express warranties covering defects in material or workmanship—like the warranties pleaded by Plaintiffs here—do not cover design defects. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("The plain and ordinary meaning of the term 'defect[s] in … materials or workmanship,' unambiguously excludes 'design' defects." (internal citation omitted)); *Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("[W]here a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'"); *Mack Trucks, Inc. v. Borgwarner Turbo Sys.*, 508 F. App'x 180, 184–85 (3d Cir. 2012) (finding the ordinary meaning of "material and workmanship" does not include design); *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 U.S. Dist. LEXIS 209659, at *13 (D.N.J. Dec. 5, 2019); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668–69 (9th Cir. 2013). Boilerplate allegations regarding a supposed manufacturing defects do not satisfy Rule 8's plausibility standard. *Hindsman v. GM L.L.C.*, No. 17-cv-05337-JSC, 2018 U.S. Dist. LEXIS 92319, at *23 (N.D. Cal. June 1, 2018).

Plaintiffs try to skirt this precedent by referring to the alleged defect as one "in the design, workmanship, and/or manufacturing of the transmission." FAC ¶ 2. However, the simple use of the word "manufacturing" represents the entirety of any attempt to allege anything specific about the nature of the supposed manufacturing defect. The FAC fails to allege a single

- 5 -

fact regarding an alleged manufacturing defect; there are no allegations that the manufacturing of any Plaintiff's *specific vehicle* or transmission somehow deviated from its intended design or construction. At a minimum, this fails to satisfy Plaintiffs' obligation to plead a plausible claim under Rule 8.

A plain reading of the factual contentions that do exist in the FAC indicates they are antithetical to the existence of manufacturing allegations: Plaintiffs are instead attempting to allege a *design* defect. Specifically, Plaintiffs criticize the use of the TR690 transmission in, and the construction of, the Ascent model because they claim the transmission "was originally designed for use in smaller, lighter cars." FAC ¶ 3. Plaintiffs further criticize the *redesign* of the TR690 transmission because it "was extremely limited and mostly consisted of adding a feature called 'X-MODE.'" FAC ¶¶ 4, 129–30. Indeed, Plaintiffs go to great lengths to explain how the design of the CVT transmission used by Subaru differs from a traditional automatic transmission and specifically plead that the supposed Transmission Defect concerns:

> 1) material and/or workmanship defects with transmission components, including the sensors for the hydraulic pressure system which determines the gear ratio, the CVT chain, and, the transmission wiring harness; 2) improper **design** and/or calibration of the software which controls the transmission's function, the Transmission Control Module (the "TCM"); 3) improper **design** and/or calibration of the transmission's features, including X-MODE, with other features of the vehicle, including Pre-Collision Throttle Management; and 4) **design** defects which did not properly account for the size, shape, and weight of the Ascent model compared to other Subaru models which also use the TR690.

FAC ¶¶ 137–39, 141 (emphasis added).

While Plaintiffs do vaguely reference "material and/or workmanship defects," no Plaintiff alleges that his or her vehicle was actually afflicted by a discrete manufacturing or workmanship defect. And Plaintiffs do not point to any flaw in the manufacturing process by which the transmission or its components were produced for their vehicles. *Id*. Rather, Plaintiffs allege the existence of a global defect present in all Ascent models. *See Soliman v. Daimler AG*, No. CV 10-408 (SJF)(AKT), 2011 U.S. Dist. LEXIS 151413, at *8 n.5 (E.D.N.Y. Aug. 8, 2011) ("The Court concludes that [p]laintiff's [transmission] lunge theory is premised on a design

- 6 -

defect as opposed to a manufacturing defect, since [p]laintiff's arguments for a defect are not limited to the particular [vehicle] involved in the accident. Instead, [p]laintiff's arguments center on a more global design defect of the [model], i.e., the vehicle's alleged excessive power coupled with an automatic transmission."). When, as here, a complaint asserts claims on behalf of *all* purchasers of a vehicle model, FAC ¶ 207, alleges pre-release testing, *id.* ¶ 179–81, and discusses engineering principles behind transmission design, *id.* ¶¶ 137–39, that "means th[e] case is about a design defect not a manufacturing one." *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-00750-VAP (ADSx), 2019 U.S. Dist. LEXIS 225771, at *21 (C.D. Cal. Dec. 20, 2019) (dismissing warranty claims asserted against Toyota on grounds that transmission defect alleged was one of design and not covered by NVLW).

That Plaintiffs intend to certify a class further shows that they allege a common design, and not a manufacturing defect. *Cummings v. FCA US L.L.C.*, 401 F. Supp. 3d 288, 315 (N.D.N.Y. 2019) (dismissing warranty claims concerning alleged transmission defect and noting "where the plaintiff has asserted a defect on behalf of a putative class of persons who all purchased vehicles with the same alleged defect, such class action 'contradicts the nature of manufacturing defects, which, by definition, are imperfections that inevitable occur in a typically small percentage of products,' particularly where the plaintiff has failed to allege a flaw in the larger manufacturing process." (quoting *Miller v. Hyundai Motor Am.*, No. 15-cv-4722, 2017 U.S. Dist. LEXIS 161729, at *14-15 (S.D.N.Y. Sept. 29, 2017))); *Loo*, 2019 U.S. Dist. LEXIS 225771, at *21 (holding fact that complaint "defines the putative class as all purchasers or lessees of any 2018 or 2019 Toyota Camry vehicle" indicated action related to design defect). It is unlikely that Plaintiffs could have knowledge of a specific individualized manufacturing defect in each of the approximately 200,000 putative class vehicles.

Plaintiffs are criticizing the design choices concerning function and tolerances made by SBR and SBR's design decision to use the TR690 transmission in the larger Ascent model. *See, e.g., Coba,* 932 F.3d at 123 (affirming dismissal of warranty claims because defect complained of concerned "the overall plan of construction and operation of the fuel tanks.") (internal

- 7 -

quotation marks omitted); *Amato*, 2019 U.S. Dist. LEXIS 209659, at *17 ("Such criticism fails to allege a problem in the process of constructing the [component], rather it alleges a flaw in the overall intended construction (a design decision)."); *cf. Kesse v. Ford Motor Co.*, No. 14 C 6265, 2015 U.S. Dist. LEXIS 24541, at *2 (N.D. Ill. Mar. 2, 2015) (characterizing similar allegations as "design defects").

Plaintiffs' express warranty claims cannot be salvaged by a deliberate refusal to refer to the alleged transmission defect solely as a design defect. *See Nelson*, 2014 U.S. Dist. LEXIS 175224, at *8; *Coba*, 2016 U.S. Dist. LEXIS 136283, at *29. In *Nelson*, this Court rejected a similar express warranty claim where that plaintiff alleged the class vehicles' transmissions were defective because the lead bushings used in the vehicles' transmissions were vulnerable to high heat. In its analysis, the Court noted that "absent specific language to the contrary, design defects cannot be encompassed within the meaning of defects in workmanship or materials." 2014 U.S. Dist. LEXIS 175382, at *5 (citing *Mack Trucks, Inc. v. Borgwarner Turbo Sys.*, 508 F. App'x 180, 184 (3d Cir. 2012)). In dismissing the warranty claims, the Court found the allegedly defective lead bushings were "undisputedly common to every Class Vehicle," and their use was a design defect, not a manufacturing defect. *Id*. at *7–8.

Similarly, no claim can survive when a plaintiff has intentionally refused to plead that the defect alleged was one of design. *Coba*, 2016 U.S. Dist. LEXIS 136283, at *29. In *Coba*, because all the facts presented showed the plaintiff was alleging a design defect, the Court rejected the warranty claim because design defects were not covered by the express workmanship and materials warranty. *Id.* Here, Plaintiffs fail to properly classify the alleged transmission defect. Even so, the FAC can support only a claim for design defect, which is not covered under the express warranty. Boilerplate allegations regarding a supposed manufacturing defect do not satisfy Rule 8's plausibility standard. *Hindsman*, 2018 U.S. Dist. LEXIS 92319, at *23. Plaintiffs' express warranty claims must fail.

DMEAST #45108553 v1

**B.** **Plaintiff Treasurer fails to state a claim for breach of express or implied warranty because he affirmatively alleges fulfillment of the New Vehicle Limited Warranty and that his vehicle is merchantable. (Counts I & II)**

To succeed on a claim for breach of express warranty under North Carolina law, Plaintiff Treasurer must demonstrate "that (1) a defect exists, (2) a warranty covered the defect, and (3) the seller breached the warranty." *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 U.S. Dist. LEXIS 169752, at *21 (N.D. Ill. Dec. 18, 2015) (citing *Butcher v. DaimlerChrysler Co.*, No. 1:08CV207, 2008 U.S. Dist. LEXIS 57679, at *6 (M.D.N.C. July 29, 2008); N.C. Gen. Stat. 25-2-313).[5] Here, Treasurer fails to plead a plausible claim for breach of warranty because he alleges no breach by SOA. Indeed, what he actually alleges is that SOA fulfilled its obligations under the NVLW by paying for any necessary repairs.

When vehicle repairs are made free-of-charge to solve issues brought to an authorized retailer's attention by the plaintiff during the warranty period, no breach of warranty has occurred. *See Darne*, 2015 U.S. Dist. LEXIS 169752, at *21–24 (dismissing breach of warranty claim when Ford twice repaired truck during warranty period at no cost to the plaintiff); *Ferranti v. Hewlett-Packard Co.*, No. 5:13-cv-03847-EJD, 2014 U.S. Dist. LEXIS 131249, at *18 (N.D. Cal. Sept. 16, 2014) (HP compl[ied] with its warranty" through "replacement printers" and assistance); *Arndt v. Extreme Motorcycles*, No. 1:07cv302, 2007 U.S. Dist. LEXIS 95625, at *12-13 (W.D.N.C. Dec. 26, 2007) (dismissing warranty claim when defendant repaired all problems called to its attention and fully complied with terms of written warranty). The NVLW does not promise a perfect vehicle that will never require repairs—nor is that the expectation under well-settled law. *See, e.g., Thiedemann v. Mercedes-Benz USA, L.L.C.,* 183 N.J. 234, 251 (2005) ("Defects can, and do, arise with complex instrumentalities such as automobiles. The

---

[5] North Carolina law applies, at a minimum, to Plaintiff Treasurer's implied warranty claims. *See infra* Part III.C.2. However, the test is substantially the same under New Jersey law. N.J.S.A. 12A:2-313; *BK Trucking Co. v. PACCAR, Inc.*, Civil Action No. 15-2282 (JBS/AMD), 2016 U.S. Dist. LEXIS 85149, at *18 (D.N.J. June 30, 2016) ("To state a claim for breach of express warranty, a plaintiff must show: '(1) that [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.'").

DMEAST #45108553 v1

mere fact that an automobile defect arises does not establish … an actual and ascertainable loss to the vehicle purchaser."). What the NVLW does promise is that, upon presentment "to an Authorized SUBARU Retailer's place of business during normal business hours," covered "parts that malfunction or fail during the warranty period as a result of a manufacturing defect will be repaired without charge." Watkins Decl. Ex. A at 7. That is, "Plaintiffs agreed to the Limited Warranty which 'limit[s] the seller's obligation to repair or replace the defective equipment.'" *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 62373, at *44 (quoting *BOC Grp., Inc. v. Chevron Chem. Co., LLC*, 359 N.J. Super. 135, 147 (App. Div. 2003)). And that is precisely what Treasurer alleges happened here.

Treasurer alleges that he brought his vehicle to an authorized Subaru retailer for repairs on January 28, 2021, when his vehicle had 24,900 miles on the odometer, and that "Prestige Subaru performed a full transmission replacement." FAC ¶ 33. He does not allege that his vehicle was not successfully repaired or that it experienced any issues after it was repaired pursuant to the terms of the warranty. *Id.* Thus, his own allegations confirm that Subaru complied with its obligations to him under the NVLW. *See In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 62373, at *46–47 (dismissing warranty claims when the plaintiffs did not allege repair services performed failed to cure alleged issue).

Mr. Treasurer has failed to plead a necessary element of his claims, namely, that SOA failed to honor its warranty. As a result, he has not stated a claim for breach of warranty, express or implied.

**C.    Plaintiffs' implied warranty claims are subject to dismissal. (Count II)**

**1.    Plaintiffs do not allege their vehicles are unmerchantable or unfit for their ordinary purpose.**

Under the UCC, the implied warranty of merchantability requires that a product be reasonably fit for the general purpose for which it was sold, a standard that does not require the vehicle to satisfy buyers' expectations, but rather imposes only "a minimum level of quality." *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 566–67 (D.N.J. 2012) ("'Merchantability

- 10 -

does not mean that the goods are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality.'") (quoting *Sheris v. Nissan N. Am., Inc.*, No. 07-2516, 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. June 2, 2008) ("[T]he implied warranty of merchantability is breached only when a defect 'renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.'")); *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996) ("[W]here a car can provide safe, reliable transportation, it is generally considered merchantable.") (quoting *Carlson v. Gen. Motors. Corp.*, 883 F.2d 287, 297 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990)).

Here, each Plaintiff alleges they drove "their vehicle in a foreseeable manner and in the manner in which it was intended to be used." FAC ¶¶ 25, 36, 50, 63, 76, 86, 96, 107. No Plaintiff alleges that their Ascent no longer provides basic transportation or that they are unable to drive their vehicles on a daily basis. FAC ¶¶ 24–25, 36, 50, 63, 76, 86, 96, 107. No Plaintiff alleges his or her particular vehicle is unsafe or inoperable, or that he or she has stopped using the vehicle for any reason. FAC ¶¶ 26–107 (alleging Plaintiffs continued to drive vehicle after visits to dealerships). Indeed, Plaintiff Treasurer fails even to allege he experienced the transmission defect after his vehicle was properly repaired under the NVLW. *See supra* Part III.B. Rather, it appears Plaintiffs' vehicles provided regular, reliable transportation, and that the issues complained of did not impact their ability to use the vehicles for ordinary purposes. The dealerships found the Hickmans', Drogowskis', Taitano, Palermo, Patol, and Sembers' vehicles to be operating normally. FAC ¶¶ 23, 57, 71, 94, 104.

Plaintiffs do not sufficiently explain why the circumstances in which they experienced shuddering, slipping, or revving created an unreasonable safety risk or otherwise rendered their vehicles unfit for their ordinary purpose. *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) ("The mere manifestation of a defect by itself does not constitute a breach of the implied warranty of merchantability. Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose.") (internal quotation marks omitted). Thus, as the Central District of California recently held in a similar action, "Plaintiffs' own

- 11 -

allegations—which the Court must accept as true at this stage—severely undermine their implied warranty of merchantability claims because Plaintiffs effectively concede that their vehicles are fit for driving 'as intended.' It is therefore not plausible for the Court to infer that Plaintiffs' [vehicles] lack 'even the most basic degree of fitness for ordinary use.'" *Loo*, 2019 U.S. Dist. LEXIS 225771, at \*24 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009)).

### 2.    Plaintiffs Treasurer, Taitano, Patol, and the Sembers lack the requisite privity to assert a claim for breach of the implied warranty of merchantability against SOA. (Count II)

California, Florida, New York, and North Carolina law require plaintiffs asserting implied warranty claims to be in direct vertical privity with the defendant. *See, e.g., Johnson v. Nissan N. Am., Inc.,* No. 17-cv-00517-WHO, 2018 U.S. Dist. LEXIS 26065, at \*17–18 (N.D. Cal. Feb. 15, 2018); *Nguyen v. Cree, Inc.*, No. 3:18-cv-02097-SB, 2019 U.S. Dist. LEXIS 220007, at \*18 (D. Or. Nov. 6, 2019); *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 381 (C.D. Cal. Aug. 24, 2018); *Kelly v. Ga.-Pac. L.L.C.*, 671 F. Supp. 2d 785, 797 (E.D.N.C. 2009) (North Carolina requires privity "when a plaintiff asserts an implied warranty claim [against a manufacturer] seeking only the recovery of economic loss"); *Luciano v. World-Wide Volkswagen Corp.*, 514 N.Y.S.2d 140, 142 (3d Dep't 1987). Moreover, under Virginia law, vertical privity is required to recover economic loss damages from a remote distributor or manufacturer. *See Beard Plumbing & Heating v. Thompson Plastics*, 152 F.3d 313, 320 (4th Cir. 1998).

New Jersey law does not require privity. *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, Civ. No. 14-277 (NLH/KMW), 2015 U.S. Dist. LEXIS 108634, at \*9 (D.N.J. Aug. 18, 2015). In the face of this conflict with New Jersey law, California, Florida, New York, North Carolina, and Virginia law—as Plaintiffs Treasurer, Taitano, Patol, and the Sembers home state, has the most significant relationship to those Plaintiffs' claims under the test set forth in sections 6 and 188 of the *Restatement (Second) of Conflict of Laws* because they negotiated the purchase of their vehicle from third-party retailers in those states and presented their vehicles for repairs in those same states. *See Powell v. Subaru of Am., Inc.*, No. 1:19-cv-19114, 2020 U.S. Dist. LEXIS 220096, at \*37–38 (D.N.J. Nov. 24, 2020) (applying the law of the plaintiffs' home states when

- 12 -

DMEAST #45108553 v1

ruling on privity requirement of implied warranty claims).

Plaintiffs plead that SOA does not sell vehicles to consumers. FAC ¶ 26; *see also supra* note 2. Thus, Plaintiffs Treasurer, Taitano, Patol, and the Sembers are in vertical privity with the independent third-party retailers, not SOA. FAC ¶ 26. Their implied warranty claim must be dismissed for this additional reason. The Sembers' claim must further be dismissed to the extent they seek to assert an implied warranty claim based on economic damages.

**D.      Certain Plaintiffs' breach of warranty claims fail for lack of pre-suit notice. (Counts I & II)**

The laws of Virginia, North Carolina, and California all require consumers to provide pre-suit notice to a product manufacturer prior to bringing suit for breach of warranty.[6] Plaintiffs Treasurer, Taitano, and the Sembers do not allege that they provided such notice to SOA before filing suit. *See generally* FAC. Their breach of warranty claims should, therefore, be dismissed. *See, e.g.*, *Hammer v. Vital Pharms.*, No. Civ. 11-4124, 2012 WL 1018842, at *11 (D.N.J. Mar. 26, 2012) ("Plaintiff has failed to plead that he provided the pre-litigation notice of breach. More importantly, Plaintiff offers no excuse or explanation for his failure to do so. Accordingly, because Plaintiff has failed to allege that the condition precedent has been met—sending a pre-litigation notice—Plaintiff's express and implied warranty claims necessarily fail.").

**E.      Plaintiff Taitano's breach of express warranty claims under the Song-Beverly Act fail as a matter of law. (Count VII)**

A plaintiff must demonstrate these elements to sufficiently plead a breach of express warranty claim under the Song-Beverly Act: (1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repairs. *Gonzalez v. Ford Motor Co.*, No. 19-652, 2019 U.S. Dist. LEXIS 50844, at *14–15 (C.D. Cal. Mar. 22, 2019) (citing *Arteaga v.*

---

[6] *Banh v. Am. Honda Motor Co.*, No. 2:19-cv-05984-RGK-AS, 2019 WL 8683361, at *10 (C.D. Cal. Dec. 17, 2019) (California, Illinois, Florida, North Carolina, and Virginia law); *Hebron v. Am. Isuzu Motors*, 60 F.3d 1095, 1098 (4th Cir. 1995) (Virginia law).

- 13 -

*Carmax Auto Superstores W. Coast, Inc.*, No. 14-1888, 2014 U.S. Dist. LEXIS 95593, at *3 (C.D. Cal. July 11, 2014). Plaintiff Taitano's claim fails to satisfy the first element because the Defect, a design defect, is not covered by the NVLW. *See supra* Part III.A; *Milman v. FCA U.S., LLC*, No. 18-00686, 2018 U.S. Dist. LEXIS 226613, at *13–16, 20 (C.D. Cal. Aug. 30, 2018) (dismissing plaintiffs' breach of express warranty claims under the Song-Beverly Act because design defects were not covered by the warranty at issue).

His claim additionally fails to satisfy the third element because he only presented his vehicle for repair of the transmission twice, and the second visit appears to have focused primarily on a battery issue. FAC ¶¶ 57–58. The third party retailer diagnosed the vehicle and determined no problems existed and no repairs were needed. *Id.* A third visit for a dead battery and the resulting replacement of that battery under warranty, *id.* ¶ 59, is irrelevant to the alleged transmission defect—and if anything shows compliance with SOA's warranty obligations. The Song-Beverly Act requires a "reasonable number of attempts" and Plaintiff has not pleaded that he provided SOA with a reasonable number of attempts to correct his alleged transmission issues. *Knafo v. Jaguar Land Rover N. Am. LLC*, No. 18-01401, 2019 U.S. Dist. LEXIS 210836, at *4–5 (C.D. Cal. July 12, 2019).

**F.    Plaintiffs' fraud claims fail for several reasons. (Counts III—XIV)**

**1.    Plaintiffs fail to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).**

Plaintiffs' statutory consumer fraud claims (Counts III—XIV), and claim of fraud by omission or fraudulent concealment (Count VI), are subject to the heightened pleading standard of Rule 9(b).[7] When fraud is alleged, the Rule 8 standard is enhanced by Rule 9(b), which

---

[7] Claims based upon deception and fraudulent statements are subject to the Rule 9(b) heightened pleading standard. *See, e.g., Cross v. Ciox Health, LLC*, No. 4:19-cv-7-FL, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020); *Foster v. Attias*, Nos. 18-4853, 19-866, 2020 U.S. Dist. LEXIS 165136, at *22 (E.D. Pa. Sept. 9, 2020); *Childers v. Menard, Inc.*, 20-cv-107-jdp, 2020 U.S. Dist. LEXIS 162283, at *20-22 (W.D. Wisc. Sept. 3, 2020) (applying 9(b) heightened pleading standards to North Dakota Consumer Fraud Act claim); *In re Elk Cross Timbers Decking Mktg., Sales Practices & Prod. Liab. Litig.*, Civ. No. 15-18 (JLL), MDL No. 2577, 2015 U.S. Dist. LEXIS 144790, at *51 (D.N.J. Oct. 26, 2015) (citing *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652, 656-57 (4th Cir. 2014)); *Martin v. Mead Johnson Nutrition Co.*, No. 09-11609-NMG, 2010

- 14 -

commands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Specifically, the plaintiff must plead or allege the 'date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Granillo v. FCA US L.L.C.*, No. 16-153 (FLW) (DEA), 2016 U.S. Dist. LEXIS 116573, at *16–17 (D.N.J. Aug. 29, 2016). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations omitted). Plaintiffs must state the precise conduct underlying their fraud claims. And where a complaint alleges fraud against multiple defendants, the complaint must "plead with particularity … the [specific] allegations of fraud" applicable to each defendant. *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).

Plaintiffs generally allege a fraudulent scheme to conceal from consumers that the Class Vehicles are supposedly defective. Plaintiffs assert in conclusory fashion that "Defendants" intended to mislead consumers through both misrepresentations and material omissions. *E.g.,* FAC ¶¶ 253, 258, 270–71, 276, 287–88.  As set forth below, both claims fail.

### a.    Plaintiffs plead no affirmative misrepresentations.[8]

The FAC pleads no actual statement, by any actual person, at any actual time. Instead, Plaintiffs advance generic assertions regarding build quality and vehicle capabilities made in advertising and other forms of communications. FAC ¶¶ 124–36. The FAC identifies no actual statements, when they were made, by whom they were made, or to whom they were made. Plaintiffs make conclusory allegations that SOA's website contains generalized advertisements

---

U.S. Dist. LEXIS 104923, at *8 (D. Mass. Sept. 30, 2010); *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 251-52 (D.Md. 2000). While not explicitly governed by Rule 9(b),when, as here, a plaintiff makes claims under N.Y. G.B.L. §§ 349–50 based on alleged omissions, she "must allege facts plausibly suggesting that (a) Defendant alone possessed material information about the defect, and (b) Defendant failed to provide that information to [her] and other consumers." *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D.N.Y. 2019).

[8] Plaintiffs do not assert a cause of action for fraudulent misrepresentation. It is addressed here to the extent Plaintiffs' statutory fraud claims generically reference supposed misrepresentations.

- 15 -

about safety and reliability, and make  boilerplate allegations that prior to purchasing their vehicles, Plaintiffs viewed Subaru marketing materials concerning the Class Vehicle, including Subaru television commercials and online advertising, the Monroney sticker on the vehicle, and that they spoke with Subaru sales representatives concerning the vehicle's features, *e.g.*, *id.* ¶¶ 18, 20, 28, 39, 41, 53, 55, 66, 79, 89, 99. Because Plaintiffs completely fail to identify any of those statements to any extent, not to mention when they were made, by whom and to whom, requires dismissal of those claims.

Plaintiffs' wholly conclusory allegations of general knowledge of the alleged defect, and unspecified affirmative misrepresentations, fall even further from the mark. These allegations are insufficient as a matter of law under Rules 9(b), 12(b)(6), *Twombly*, and *Iqbal*. No Plaintiff alleges she received any affirmative representations about the alleged defect, or relied on such representations when purchasing a vehicle. Such boilerplate allegations should be disregarded. *See In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, at *38-42 (N.D. Cal. Nov. 6, 2009). Those bare recitations are untethered to any actual facts, and courts have dismissed analogous claims. *See, e.g.*, *Block v. Jaguar Land Rover N. Am., LLC*, No. 15-cv-5957 (SRC), 2016 U.S. Dist. LEXIS 69085, at *9 (D.N.J. May 26, 2016) (dismissing fraud claims arising when no facts concerning misrepresentations were pleaded). For example, in *In re MyFord Touch*, the court dismissed plaintiffs' fraud claims based on affirmative misrepresentations when they generically alleged, without details, they viewed advertisements and spoke to dealership employees about Ford's vehicles prior to purchase. 46 F. Supp. 3d 936, 953-54 (N.D. Cal. 2014). Plaintiffs here plead even less.

Unable to identify actionable misrepresentations, Plaintiffs aver that they saw advertisements or spoke with sales representatives regarding the vehicle's features or reliability. FAC ¶¶ 18, 20, 28, 39, 41, 53, 55, 66, 79, 89, 99. But those "vague, highly subjective" statements are mere puffery and not actionable as opposed to "specific, detailed factual assertions" that are entirely lacking from Plaintiffs' FAC. *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 08-939 (DRD), MDL No. 1956, 2009 U.S. Dist. LEXIS 82833, at *32

- 16 -

(D.N.J. Sept. 10, 2009) (quoting *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)); *see also In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1534 (E.D. Mo. 1997) (dismissing fraud claims based on general advertisements and promotional materials in action concerning allegedly defective anti-lock brake system)*; Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017) ("[T]o the extent [Plaintiff] is claiming that he relied on any [of Defendant's] representations regarding their vehicles' general safety, quality, reliability, or performance, those assertions undoubtedly constitute non-actionable puffery."); *Robinson v. Kia Motors Am., Inc.*, Civ. No. 13-006, 2015 U.S. Dist. LEXIS 121755, at *10–11 (D.N.J. Sept. 11, 2015) (finding the statement "[w]e have a lot of confidence in the quality and durability of every new Kia that rolls off the assembly line. So much confidence, that we offer an industry-leading Kia 10-year or 100,000-mile warranty program" non-actionable puffery).

### b.      Plaintiffs fail to adequately plead fraudulent omissions.

Plaintiffs similarly fail to adequately plead any fraudulent omissions. They allege no actual knowledge by anyone at SOA, but instead repeat generic allegations throughout the FAC. Parroting vague and unfounded conclusions, Plaintiffs baldly assert—with no supporting factual specificity—that "Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of sale or lease and thereafter." FAC ¶ 9. To support those unfounded assertions, Plaintiffs make general allegations about "pre-release testing data." *Id.* ¶ 10, 177. That allegation is woefully insufficient. Despite citation to *Car and Driver* articles that simply note preproduction testing occurred, *id.*¶ 179–80, at no point do Plaintiffs allege that any such pre-release testing *actually revealed any defect*, nor do Plaintiffs allege any background concerning any pre-release testing.[9] Such pleading failures mandate dismissal. *See Cummings v. FCA US L.L.C.*, 401 F. Supp. 3d 288, 308–09 (N.D.N.Y. 2019) ("Plaintiff does not allege any facts plausibly suggesting that this

---

[9] The Court may take judicial notice that all motor vehicles are subject to pre-release testing and that plaintiff does nothing more than borrow and parrot this generic notion with no specifics applicable to this case.

DMEAST #45108553 v1

testing in fact showed any sort of defect … or any occurrence of the problems Plaintiff has alleged she and others have experienced … [T]he mere existence of [pre-production] testing, without any allegations as to what that testing revealed, does not plausibly suggest that Defendant was aware of the alleged defect.").

Nor are Plaintiffs' broad and generic statements that SOA collects data and warranty information and maintains an internal quality management system, *e.g.* FAC ¶¶ 10, 174, 185–86, sufficient to satisfy the heightened pleading standard of Rule 9(b) or even Rule 8's plausibility standard.[10] *See Gotthelf v. Toyota Motor Sales, U.S.A., In.*, 525 F. App'x 94, 104 (3d Cir. 2013). In *Gotthelf*, the Third Circuit affirmed dismissal on the pleadings of statutory fraud claims where plaintiff alleged "that Toyota should have been aware of the [alleged] defect through its own '[b]ooks of [k]nowledge, internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints.'" *Id.* The court ruled that such general allegations about a car company's business operations were insufficiently pleaded because the plaintiff did "not state when the alleged complaints were received, or to whom at Toyota these alleged complaints were sent." *Id.* "Such conclusory allegations [were] insufficient to establish Toyota's knowledge, and concealment, of the [alleged] defect." *Id.*

Having alleged no presale knowledge based on supposed "internal pre-release testing," Plaintiffs point to unverified and anonymous complaints posted on the National Highway Traffic Safety Administration's ("NHTSA") website (many of which do not apply to vehicles owned by Plaintiffs), statements appearing in online forums, and technical service bulletins ("TSBs") previously issued by SOA. FAC. ¶ 173 and Exs. A–B. Oddly, Plaintiffs are improperly attempting to use post-sale service data and owner complaints to third parties to suggest that SOA had pre-sale knowledge of the supposed defect. If Plaintiffs suggest that warranty data and

---

[10] The Court may take judicial notice of the fact that every automotive company collects warranty data and maintains a quality management system as required by federal regulations (e.g., TREAD Act and NHTSA's early warning reporting regulations, 49 C.F.R. §§ 579.1–.21). Therefore, Plaintiffs' allegations say nothing about SOA's requisite knowledge.

- 18 -

NHTSA communications from vehicles *in use* would have been available *before* the vehicles were sold, that argument strains credulity.

Moreover, those cited complaints to NHTSA or posted on other third-party websites were not made to SOA, and they provide no support for Plaintiffs' fraud claims. *See, e.g., McCabe v. Daimler AG,* 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) (quoting *Friedman v. Am. Guardian Warranty Servs.,* 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003) (holding "[f]raud based upon a failure to disclose material information exists only when a duty to make such disclosure exists" and finding no duty to disclose alleged defect when plaintiff failed to plausibly allege knowledge of the defect before sale)). Likewise, Plaintiffs' references to online forums are similarly unavailing. Setting aside that most of the posts referenced in the FAC post-date the sale of most of the named plaintiffs' vehicles, "[c]ourts in this district have repeatedly found that consumer complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where there are no allegations that the manufacturer saw such complaints." *Granillo*, 2016 U.S. Dist. LEXIS 116573, at *29–30; *see also Fisher v. Honda N. Am.*, No. LA CV13-09285 JAK(PLAx), 2014 U.S. Dist. LEXIS 84570, at *13–14 (C.D. Cal. June 12, 2014) (finding allegations of consumer complaints on government website allegedly "tracked" by the defendant could not support presale knowledge); *Alban v. BMW of N. Am., L.L.C.*, No. 09-5398 (DRD), 2011 U.S. Dist. LEXIS 26754, at *3, *10–12, *32-34 (D.N.J. Mar. 15, 2011) (declining to view statements made to third parties as admission of knowledge).

The assertions contained in the FAC that "Subaru has acknowledged to NHTSA that is was first aware of reports from the public in October 2018," FAC 170, is incapable of supporting Plaintiffs' fraud claims. First, as Plaintiffs' acknowledge, that complaint was made by a single customer in Canada. *See* Watkins Decl. Ex. B, at 2 (Part 573 Recall Report). Second, As numerous courts have held, awareness of a few "field reports" of transmission issues is insufficient to establish that SOA—an entity that does not operate in Canada or design or manufacture Subaru vehicles—knew that the transmissions in every Class Vehicle were allegedly defective. *See, e.g.*, *Schechter v. Hyundai Motor Am.*, No. 18-13634 (FLW), 2019 WL

- 19 -

3416902, at *6 (D.N.J. July 29, 2019) (finding that a handful of consumer complaints "[did] not demonstrate Defendants' knowledge of the [alleged] [d]effect"); *Dawson v. General Motors LLC*, No. 19-424, 2019 WL 3283046, at *6 (D.N.J. July 22, 2019) ("[A] company cannot be certain about a systematic part failure based on about 100 instances of failure in a national market over the course of several years."); *McQueenv. BMW of N. Am., LLC*, No. 12-85(SRC), 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013) ("[C]ustomer complaints do not constitute per se knowledge on the part of BMW that a defect exists in the [v]ehicles.").

Further, the TSBs and NHTSA-supervised recall No. 19V-855 referenced in the FAC cut against Plaintiffs' omission-based claims because those documents were—as demonstrated by Plaintiffs' citations—publicly available on NHTSA's website and Plaintiffs, at a minimum, had constructive notice of them and had a duty to exercise minimal diligence in investigating publicly available information.[11] *See, e.g.*, Cal. Civ. Code § 1795.91(a) (requiring new vehicle dealerships to post signage notifying customers that TSBs are available from the manufacturer or NHTSA); *Darne v. Ford Motor Co.*, No. 13-03594, 2015 U.S. Dist. LEXIS 169752, at *39 (N.D. Ill. Dec. 18, 2015) (noting NCUDTPA requires "consumer to use reasonable diligence to investigate before imposing a duty on seller to affirmatively disclose a defect."). Such notice is fatal to Plaintiffs' fraud claims. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1006 (E.D. Mich. 2017) (dismissing fraud claims based on allegedly concealed defect when defendant had previously filed a recall notice of defect with NHTSA); *Darne*, 2015 U.S. Dist. LEXIS 169752, at *39 (acknowledging "[t]hat Ford publicly issued a number of TSBs related to the 6.4L engine is incompatible with the allegations that it attempted to conceal these defects" and that plaintiff "could have discovered that information with the exercise of

---

[11] These documents relied on in the FAC may be considered without converting this motion to one for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 at 1426. They are also available on NHTSA's website and their authenticity cannot reasonably be disputed. *See* Fed. R. Evid. 201(c)(2); *Otsuka Pharm. Co. v. Torrent Pharm. Ltd.*, 118 F. Supp. 3d 646, 654–55 n.7 (D.N.J. 2015) (taking judicial notice of an FDA press release available on the agency's website).

- 20 -

reasonable diligence"). Indeed, the notice of Recall No. 19V-855 was sent directly to each owner of an affected vehicle. *See* Watkins Decl. Ex. C (Owner Notification Letter). Attempts to piggyback consumer fraud claims onto such NHTSA supervised recalls must be rejected. *Cf.*, *e.g.*, *McQueen v. BMW of N. Am., LLC*, Civil Action No. 12-06674 (SRC), 2014 U.S. Dist. LEXIS 21084, at *17 (D.N.J. Feb. 20, 2014); *Alban*, 2011 U.S. Dist. LEXIS 26754, at *3, *10–12, *32–34; *Chin v. Chrysler Corp.*, No. 95-5569 (JCL), 1999 U.S. Dist. LEXIS 23493, at *35-36 (D.N.J. Dec. 14, 1999); *infra* Part III.G.1. (discussing NHTSA's primary jurisdiction over vehicle recalls).

Finally, Plaintiffs' mention of the "Monroney" or "window sticker", *e.g.*, FAC ¶¶ 18, 28, 39, is irrelevant for both their fraudulent misrepresentation and omission claims because the categories of information to be included on that label are prescribed by law and do not include information about potential vehicle defects. *See* 15 U.S.C. § 1232 (delineating label and entry requirements). It is insufficient to allege that SOA omitted information that, by law, is not appropriate on this label because that label's content is strictly controlled by statute and regulated by the Department of Justice's Consumer Protection Branch. *See* https://www.justice.gov/civil/consumer-protection-branch-32 (last visited June 7, 2021).

Plaintiffs have pleaded no facts or specifics that establish who at SOA supposedly knew about the alleged defect or when that knowledge supposedly came about. Plaintiffs' omission-based fraud claims must be dismissed.

### 2. Plaintiffs have not alleged facts sufficient to give rise to a duty to disclose.

Plaintiffs can prevail on a fraud-by-omission claim only if, among other things, SOA had a duty to disclose the alleged transmission defect. Such a duty arises only with a confidential, fiduciary, or other direct transactional relationship. *See, e.g., Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493(VB), 2011 U.S. Dist. LEXIS 153911, at *46-47 (S.D.N.Y. Dec. 16, 2011) ("Under New Jersey law, [w]hen there is no fiduciary duty or special relationship between parties, there is no affirmative duty to disclose.") (citations omitted); *see also Coba v. Ford*

- 21 -

*Motor Co.*, No. Civ. 12-1622, 2013 U.S. Dist. LEXIS 8366, at \*37 (D.N.J. Jan. 22, 2013) ("New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers."). But the FAC alleges no facts indicating that SOA had a fiduciary or direct transactional relationship with Plaintiffs. Nor can any such relationship be inferred, especially given that (1) no Plaintiff alleges that he or she interacted with SOA before deciding to purchase his or her vehicle, and (2) each Plaintiff affirmatively pleads that he or she purchased or leased their vehicles through independent third-party retailers.[12] *See Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 850, 2018 U.S. Dist. LEXIS 87552, at \*13-14 (S.D. Tex. May 4, 2018), *report and recommendations adopted*, 2018 U.S. Dist. LEXIS 86750 (S.D. Tex. May 23, 2018) ("No duty [to disclose] arises in an arms-length transaction between a manufacturer and consumer, particularly where Plaintiffs did not purchase or lease their vehicles directly from the manufacturer."); *see also, e.g.*, *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500-01 (Ill. 1996) ("Nowhere in the complaint did plaintiffs sufficiently allege that they were in a confidential or fiduciary relationship with Suzuki or that Suzuki was in a position of superiority over them. Without such allegations, plaintiff's complaint did not allege a duty to disclose material facts"). This is fatal to Plaintiffs' fraud-by-omission

---

[12] *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311–12 (Cal. Ct. App. 2017) ("Our Supreme Court has described the necessary relationship giving rise to a duty to disclose as a 'transaction' between the plaintiff and the defendant . . . Such a transaction must necessarily arise from direct dealings between the plaintiff and the defendant"); *Wade v. Ford Motor Co.*, 341 Mass. 596, 597 (Mass. 1961) (holding that manufacturer had no duty to disclose because it was "a stranger to the transactions between [car dealership] and the plaintiffs"); *Rossman v. Herb Chambers Commonwealth Ave*, 09-P-954, 2011 Mass. App. Unpub. LEXIS 1198, at (Mass. App. Ct. Nov. 18, 2011) (holding that plaintiff failed to put forth evidence that defendant had a duty to disclose where it did not "participate in the ultimate transaction" of an automobile sale); *Harton v. Harton*, 344 S.E.2d 117, 119 (N.C. Ct. App. 1986) (stating that a duty to disclose arises only "where a fiduciary relationship exists between the parties to [a] transaction" or in certain circumstances "when the parties are negotiating at arm's length"); *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 586 (W.D. Pa. 2004) ("[T]he duty [to disclose] does not ordinarily arise in a transaction unless there is a confidential or fiduciary relationship between the parties . . . Such a relationship does not arise in a typical transactional setting unless one party surrenders substantial control over some portion of its affairs to the other.") (internal quotations and citations omitted); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1358 (N.D. Ga. 2015) (auto manufacturer had no duty to disclose under Virginia law "where the remote seller has no contractual relationship with the plaintiff and did not make any affirmative misrepresentation").

- 22 -

claims.

### 3.  The economic loss doctrine bars Plaintiffs' common law fraud claims.

While Plaintiffs attempt to frame their dissatisfaction with the Class Vehicles as a scheme to defraud, their claims are more accurately framed as an allegation they did not receive the full benefit of their bargain. *See* FAC ¶ 307. They are attempting to predicate a tort claim—common law fraud—on a purely economic loss. Those claims are barred because a purchaser may not sue in tort based on the allegation that the product she purchased did not perform as expected. Under the Economic Loss Doctrine, a claim that a product has disappointed a customer may only proceed as a breach of contract or warranty, if at all. *E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 871–72 (1986)*; see also Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 615 (7th Cir. 2001) (quoting *Collins v. Reynard*, 154 Ill. 2d 48, 54 (1992) (Miller, C.J., concurring) ("In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.")).

Thus, the economic loss doctrine precludes Plaintiffs from relying on the same alleged representations regarding the quality of the goods (the vehicles) subject to the contract for both their warranty and fraud claims. "Where the only alleged misrepresentations concern the heart of the parties' agreement simply applying the lanes of 'fraudulent inducement' to a cause will not suffice to subvert the sound policy rationales underlying the economic loss doctrine." *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, No. 10-61519, 2011 U.S. Dist. LEXIS 51440, at *16–17 (S.D. Fla. 2011) (citing *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884 (7th Cir. 2004)).[13]

---

[13] *Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749, 753 (E.D.N.C. 2002); *Franklin Livestock, Inc. v. Boehringer Ingelheim Vetmedica, Inc.*, 113 F. Supp. 3d 834, 840 (E.D.N.C. 2015); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (Pennsylvania law); *In re Takata Airbag Prods. Liab. Litig.*, 193 F.Supp.3d 1324, 1341–42 (S.D. Fla. 2016) (Pennsylvania law); *Stein v. Fenestra Am., L.L.C.*, No. 09-5038, 2010 U.S. Dist. LEXIS 22286, at *8-14 (E.D. Pa. Mar. 9, 2010).

- 23 -

Plaintiffs' common law fraud claims fail because the allegations underlying their fraud claims concern purported misrepresentations and omissions regarding their vehicles that go to "the heart of the parties' agreement." FAC ¶¶ 299–308.

### 4.    Plaintiffs' state consumer fraud claims fail for additional reasons.

#### a.    Plaintiff Treasurer's UDTPA claim is barred by the economic loss doctrine. (Count IV)

Plaintiff Treasurer asserts a claim under the North Carolina UDTPA (Count IV). FAC ¶¶ 266–81. However, his claim is barred by the economic loss doctrine. The economic loss doctrine bars UDTPA claims that are based on the defectiveness of a product where the only damages pled are to the product itself. *See Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311, 325-26 (D. Mass. 2018); *McDonald Bros., Inc. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 269 (M.D.N.C. 2005); *Garlock v. Henson*, 112 N.C. App. 243, 245 (1993).

Accordingly, the Court should dismiss Plaintiff Treasurer's UDTPA claim (Count IV) as barred by the economic loss rule.

#### b.    Plaintiff Treasurer's allegation of a mere breach of warranty is insufficient to state a UDTPA claim. (Count IV)

Even if Plaintiff Treasurer's UDTPA claim were not barred by the economic loss doctrine, his allegation of a mere breach of warranty (as inadequate as it is) is insufficient to sustain a claim under the UDTPA. "North Carolina courts have repeatedly held that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA.]" *Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 799 Fed. App'x 179, 181 (4th Cir. 2019) (internal quotation marks omitted). A plaintiff must demonstrate a showing of "substantial aggravating circumstances to support a claim" under the UDTPA. *Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 378 F. Supp. 3d 413, 433 (E.D.N.C. 2019) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998)). Here, Plaintiff Treasurer has failed to make such a showing.

- 24 -

       **c.**       **Plaintiff Taitano's UCL claim must be dismissed to the extent he seeks monetary relief; and he may not recover restitution damages from SOA. (Count IX)**

The only relief available under the UCL is injunctive relief or restitution. To the extent any other relief is sought, it is not available. *Saitsky v. DirecTV, Inc.*, No. 08-cv-7918, 2009 U.S. Dist. LEXIS 134817, at *5 (C.D. Cal. Sept. 22, 2009); *see also Chowning v. Kohl's Dep't Stores, Inc.*, No. 15-8673, 2016 U.S. Dist. LEXIS 187402, at *1 (C.D. Cal. July 27, 2016). Restitution is not available from SOA because the third-party retailers are the entities that would have received money for repairing Plaintiffs' vehicles. Restitution is limited to situations in which the defendant directly took property from plaintiff. *Rosen v. Uber Tech., Inc.*, 164 F. Supp. 3d 1165, 1178 (N.D. Cal. 2016); *Acedo v. DMAX, Ltd.*, No. 15-02443, 2015 U.S. Dist. LEXIS 189402, at *16 (C.D. Cal. July 31, 2015).

Even if there are no direct dealings, Plaintiffs must still plead sufficient allegations demonstrating their purchase monies can be traced to SOA's possession. *Acedo v. DMAX, Ltd.*, No. 15-02443, 2015 U.S. Dist. LEXIS 189402, at *47–48 (C.D. Cal. July 31, 2015). In *Acedo*, the plaintiff merely alleged "[d]efendants earned direct and indirect profits from the deceptive sale of the trucks" and that the plaintiffs paid a premium price to GM because they were unaware of the alleged defect and GM misrepresented the true quality of the product. *Id.* at *47. That could not state a claim for restitution because the allegations did not indicate "defendants, as opposed to independent GM dealers, obtained [plaintiff's] money or property, or that defendants are in possession of funds that rightly belong to [plaintiff]." *Id.* at *47–48. Plaintiff Taitano's claims for restitution fails for the same reasons because he fails to allege SOA rather than the dealerships have the funds that rightly belong to him. *See generally* FAC.

       **d.**       **Plaintiff Taitano's UCL claim for equitable relief must also be dismissed because an adequate remedy at law exists. (Count IX)**

"It is a basic doctrine of equity jurisprudence that courts of equity should not act … when the moving party has an adequate remedy at law." *Loo v. Toyota Motor*, No. 19-00750, 2019 U.S. Dist. LEXIS 225771, at *39 (C.D. Cal. Dec. 20, 2019) (quoting *Mort v. United States*, 86

- 25 -

F.3d 890, 892 (9th Cir. 1996). "[E]quitable relief is not appropriate where an adequate remedy exists at law." *Id.* (quoting *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009)). For determining whether there is an adequate remedy, the question is not whether plaintiffs are likely to prevail on their legal claims. Instead, the question is whether, assuming they could prevail, the remedy available would be "adequate." *Mullins v. Premier Nutrition Corp.*, No. 13-01271, 2018 U.S. Dist. LEXIS 10810, at *5 (N.D. Cal. Jan. 23, 2018). "[L]egal and equitable claims based on the same factual predicates are not 'true alternative theor[ies] of relief but rather [are] duplicative.'" *Loo*, 2019 U.S. Dist. LEXIS 225771, at *40. Here, Plaintiff Taitano fails to "allege[] how [his] legal claims would not provide [him] with an 'adequate remedy law'" and his equitable UCL claim relies on "the same factual predicates" as his breach of warranty and fraud claims. *Id.* The dismissal the UCL claim for equitable relief is warranted. *See id.* (dismissing plaintiffs' equitable UCL claims as duplicative of their breach of warranty and fraud claims); *Mullins*, 2018 U.S. Dist. LEXIS 10810, at *5–13 (dismissing plaintiffs equitable UCL and CLRA claims where an adequate remedy at law existed despite plaintiffs' election to not pursue a damages remedy under the CLRA).

e.     **Plaintiff Patol fails to state a claim under the New York statutes because no alleged misconduct occurred in New York. (Counts XII & XIII)**

To state a claim under New York's consumer protection statute and false advertising law, "the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002); *see also Berkman*, 841 N.Y.S.2d at 825. To have standing under either statute, a plaintiff must allege that the deceptive acts giving rise to the claim took place inside the State of New York. *See Neu v. Neu*, 756 N.Y.S.2d 598, 598 (2d Dep't 2003); *Mountz v. Glob. Vision Prods.*, 770 N.Y.S.2d 603, 603 (2003). Here, Plaintiffs strive to convince the Court that the allegedly deceptive acts by SOA occurred in New Jersey, not in New York. *See* FAC ¶¶ 109, 414.

>    **f.**     **Plaintiff Patol's NYGBL claim under Section 350 fails to sufficiently allege she relied upon misleading advertisements. (Count XIII)**

"The standard for NYGBL § 350 … requires 'proof of actual reliance.'" *Tobin v. Samsung Elecs. Am.*, No. 18-12473, 2019 U.S. Dist. LEXIS 52360, at \*21-22 (D.N.J. Mar. 27, 2019) (quoting *Tomasino v. Estee Lauder Co.*, Inc., 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014) (citing *Goshen v. Mitt. Life Ins. Co. of N.Y.*, 746 N.Y.S.2d 858 (2002)); *see also Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580 (N.Y. App. Div. 2010) ("[P]laintiffs' cause of action for false advertising under General Business Law § 350, unlike their General Business Law § 349 claim, requires proof of reliance."). A claim for false advertising has four elements: (1) the advertisement was consumer-oriented, (2) the advertisement was materially misleading, (3) the plaintiff relied on the advertising, and (4) the plaintiff was injured because of the advertisement. *Zaccagnino v. Nissan N. Am., Inc.*, No. 14-3690, 2015 U.S. Dist. LEXIS 78441, at \*7 (S.D.N.Y. June 16, 2015) (quoting *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005)). "The reliance requirement 'means that the plaintiff must 'point to [a] specific advertisement or public pronouncement' upon which he or she relied.'" *Id.* In *Zaccagnino*, the court noted that the following allegation was the only allegation of reliance for the named plaintiff:

> Plaintiff saw advertisements for Nissan vehicles on television, in magazines, on billboards, in brochures and on the internet before he purchased his Altima. Before he purchased the 2013 Altima, he recalls that safety and quality were consistent themes across the advertisements he saw. These representations about safety and quality influenced Plaintiffs decision to purchase the 2013 Altima.

*Id.* at 7–8. The court did not focus on this entire allegation. Instead, the court concluded "consideration of the section 350 claim is limited to those themes of quality and safety that [the named plaintiff] allegedly relied on." *Id.* at 8. The court dismissed the plaintiff's Section 350 claim because such allegations are puffery and insufficient to demonstrate reliance. *Id.* ("Like speed and ease for internet service, safety and reliability are desirable qualities for a car. However, promoting a car as generally safe and reliable is too general a representation to be proven true or false. It is puffery and cannot be materially misleading under section 350.").

The only allegations that even detail the substance of what Plaintiff Patol relied on are

- 27 -

advertisements regarding reliability, safety, and quality of the Class Vehicles. FAC ¶¶ 91, 124–27, 414. Under *Zaccagnino*, these allegations of reliance are insufficient because promoting a car as generally safe and reliable is puffery and Plaintiffs' Section 350 claim should be dismissed. *See Beshwate*, 2017 U.S. Dist. LEXIS 204467, at *32–33; *Robinson*, 2015 U.S. Dist. LEXIS 121755, at *10–11; *Tatum v. Chrysler Grp. L.L.C.*, No. 10-cv-4269(DMC)(JAD), 2011 U.S. Dist. LEXIS 32362, at *13–15 (D.N.J. Mar. 28, 2011).

### G.       Plaintiffs seek relief they are not entitled to.

#### 1.       Plaintiffs' request for an order requiring SOA to issue a voluntary recall is preempted by the Safety Act.

In their prayer for relief, Plaintiffs ask the court to "compel[]Subaru to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a)." *See* FAC, Prayer for Relief ¶ B. That request is beyond the power of state law and must be dismissed.

Courts consistently conclude, regarding recalls, that state law is preempted by the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 49 U.S.C. §§ 30101-30183 (2012). *See Cox House Moving, Inc. v. Ford Motor Co.*, CA No. 7:06-1218-HMH, 2006 U.S. Dist. LEXIS 55490, at *23–24 (D.S.C. Aug. 8, 2006) ("Federal courts have held that conflict preemption applies to prevent the judiciary from ordering vehicle recalls as a remedy in a court action.").

Courts repeatedly have reached this conclusion under the principles of conflict preemption.[14] Conflict preemption arises where state action would frustrate the purpose of a federal scheme. *In re Bridgestone/Firestone Inc., ATX, ATX II & Wilderness Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 943-44 (S.D. Ind. 2001) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000)). It applies even if the preempting legislation contains a savings clause. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000). "[P]arallel,

---

[14]There is no presumption against preemption in this matter because "states have never assumed a significant role in *recalls* related to vehicle safety." *Bridgestone*, 153 F. Supp. 2d at 943–44 (emphasis in original).

- 28 -

competing system[s] of court-ordered and supervised recalls would undermine and frustrate the Safety Act's objectives of prospectively protecting the public interest through a scheme of administratively enforced remedies." *Bridgestone*, 153 F. Supp. 2d at 944. The fundamental underpinning of the Safety Act was to implement a recall system that supported and supplemented the Federal Motor Vehicle Safety Standards created by NHTSA.[15]

The notice and recall relief are barred also by the doctrine of primary jurisdiction, a court-created doctrine that focuses on "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006) (citing *Nader v. Allegheny Airlines*, 426 U.S. 290, 303 (1976)). Although its elements defy exact definition, courts consider two factors: (1) whether the case "involves a matter within the special expertise of the agency; and (2) [whether] there is a need to promote uniformity in administrative policy or a possibility of inconsistent results between the courts and the agency." *Id.* (citing *Far East Conf. v. United States*, 342 U.S. 570 (1952)). Here, both factors strongly favor deferring to NHTSA's "special competence." *Id.* at 629; *see Clark v. Actavis Grp. HF*, 567 F. Supp. 2d 711, 719 (D.N.J. 2008) (holding doctrine of primary jurisdiction applies to federal agency's particularized knowledge and statutory authority over recalls).

The authority to grant the relief requested by Plaintiffs—the issuance of a safety-related defect notice to consumers and implementing a recall—lies not with this Court, but rather exclusively with NHTSA.

---

[15] That scheme governs not only the recall itself, but any notices sent to consumers. *See, e.g.*, 49 U.S.C. § 30119 (2012) (mandating content, timing, and method of notification by manufacturers); *Bridgestone*, 153 F. Supp. 2d at 945 (discussing comprehensiveness of legislative scheme and stating "[t]he detail contained in the Safety Act suggests a clear congressional intent to limit encroachment on the agency's work"); 49 C.F.R. § 577.5 (regulating content and appearance of manufacturer's notice to customers in respect of safety recall); 49 C.F.R. § 577.7 (regulating time and manner of safety recall notifications); 49 C.F.R. § 577.13 (regulating safety-related defect notifications to dealers and distributors).

**2.    Plaintiffs' request for injunctive relief with respect to supposed false advertising fails as a matter of law.**

Among other relief, Plaintiffs seek "[a]n order enjoining Subaru from further deceptive distribution, sales, and lease practices with respect to Class Vehicles" and "enjoining Subaru from selling the Class Vehicles with the misleading information." FAC, Prayer for Relief ¶ B. To the extent Plaintiffs are seeking to base their fraud claims on supposed false advertising, they lack Article III standing to pursue such injunctive relief as past purchasers. *See Berni v. Barilla S.P.A.*, 964 F.3d 141, 148-49 (2d Cir. 2020); *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 225-26 (3d Cir. 2012).

## IV.    CONCLUSION

For all these reasons, Defendant SOA respectfully requests this Court enter an order dismissing Plaintiffs' claims as stated above.

Dated: June 11, 2021

Respectfully submitted,

*s/Casey Watkins*

Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
BALLARD SPAHR LLP
700 East Gate Drive, Suite 330
Mount Laurel, New Jersey 08054-0015
856.761.3400
856.761.1020 fax

Attorneys for Defendant Subaru of America, Inc.

- 30 -