**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| AIMEE HICKMAN, JARED HICKMAN, WILLIAM TREASURER, KELLY DROGOWSKI, FRANK DROGOWSKI, JOHN TAITANO, RICHARD PALERMO, LORI WOIWODE, SHAWN WOIWODE, CAROLYN PATOL, CASSANDRA SEMBER, AND STEVEN SEMBER, individually and on behalf of all others similarly situated, | No. 1:21-cv-02100-NLH-AMD |
| Plaintiffs, | **OPINION** |
| v. | |
| SUBARU OF AMERICA, INC. and SUBARU CORPORATION f/k/a FUJI HEAVY INDUSTRIES, LTD., | |
| Defendant. | |

---

**APPEARANCES**:

ABIGAIL GERTNER
NATALIE LESSER
RUSSELL D. PAUL
AMEY J. PARK
BERGER MONTAGUE PC
1818 MARKET STREET
SUITE 3600
PHILADELPHIA, PA 19103

   *On behalf of Plaintiffs*

NEAL D. WALTERS
CASEY GENE WATKINS
BALLARD SPAHR LLP
700 EAST GATE DRIVE
SUITE 330
MT. LAUREL, NJ 08054-0015

   *On behalf of SOA and SBR*

**HILLMAN**, District Judge

Before the Court is Subaru of America, Inc.'s ("SOA")
motion to dismiss Plaintiffs' Amended Complaint. (ECF 18).  Also
before the Court is Subaru Corporation's ("SBR") motion to
dismiss the Amended Complaint.  (ECF 28).  Finally, before the
Court is Plaintiffs' motion for judicial notice.  (ECF 31).  For
the reasons expressed below, the motions to dismiss will be
granted in part and denied in part.  The Court will grant the
motion for judicial notice in its entirety.

**BACKGROUND**

Plaintiffs brought this putative class action suit against
SOA and SBR (collectively, "Subaru" or "Defendants") alleging
that since, 2019, Subaru has manufactured, marketed, and sold
the Ascent model of their cars with dangerous and defective
transmissions.  The transmission in question, the TR690
transmission, a type of Continuously Variable Transmission
("CVT"), allegedly "causes hesitation, jerking, shuddering,
lurching, squeaking, whining, or other loud noises, delays in
acceleration, inconsistent shifting, stalling, and a loss of
power or ability to accelerate at all."  (ECF 16 at 2).

Plaintiffs claim that when they purchased or leased their
vehicles, they did so pursuant to an express warranty covering
their cars for "defects in materials or workmanship" over a

period of "three-year/36,000-mile[s]." (Id. at 29). Plaintiffs contend that Subaru was aware of these defects at least as early as 2011. (Id. at 2). Plaintiffs claim that with discovery they will be able to prove that the transmission issues stem from one or a combination of the following:

> 1) material and/or workmanship defects with transmission components, specifically the sensors for the hydraulic pressure system which determines the gear ratio, the CVT chain, and, the transmission wiring harness; 2) improper design and/or calibration of the software which controls the transmission's function, the Transmission Control Module (the "TCM"); 3) improper design and/or calibration of the transmission's features, including X-MODE, with other features of the vehicle, including Pre-Collision Throttle Management; and/or 4) design defects which did not properly account for the size, shape, and weight of the Ascent model compared to other Subaru models which also use the TR690 ("Transmission Defect" or "Defect").

(Id. at 2-3).

Plaintiffs contend that Subaru has recalled the Ascent multiple times for various issues, including some related to the transmission, but has failed to fix the central issue with the transmission. (Id. at 3 ("In fact, the build quality of the 2019 Ascent is so poor that it has been subject to 5 separate recalls, including a transmission recall."); id. at 19 ("However, these repairs failed to permanently remedy his transmission issues.")). Plaintiffs principally complain that the transmission issues make their cars unsafe "because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration." (Id.) Plaintiffs

3

allege that it can be problematic for their Ascents "to move smoothly through intersections and other commonplace driving situations such as entering and exiting highways, changing lanes, and even controlling speed on inclines and declines on the road."  (Id.)

They further allege that Subaru has known for quite some time that the transmission defect exists but that has refused to sufficiently rectify it, going so far as to conceal ongoing issues to prospective customers and Ascent owners.  (Id.) Plaintiffs state that they will seek to certify a nationwide class and several subclasses.  (Id. at 58-59).  The subclasses include ones for (i) Maryland, (ii) North Carolina, (iii) Pennsylvania, (iv) California, (v) Song-Beverly[1], (vi) Massachusetts, (vi) North Dakota, (vii) New York, and (vii) Virginia.  (Id.)

Plaintiffs originally filed a complaint in this matter on February 8, 2021.  (ECF 1).  SOA moved to dismiss that complaint

---

[1] Cal. Civ. Code §§ 1792 and 1791.1, et seq.  Plaintiffs define the Song-Beverly sub-class as "[a]all persons or entities who purchased or leased new Class Vehicles in the State of California."  (Id.)  The Song-Beverly subclass definition is narrower than the California subclass in that it only encompasses new vehicles whereas the California subclass does not have that limitation.  (Id.); Fish v. Tesla, Inc., No. SACV21060PSGJDEX, 2022 WL 1552137, at *10 (C.D. Cal. May 12, 2022) ("The Song- Beverly Act's 'refund-or-replace' express warranty provisions at issue here apply to only 'new motor vehicles.'") (citing Cal. Civ. Code § 1793.2(d)(2)).

on April 12, 2021 (ECF 14).  However, on May 14, 2021, before
briefing was completed on that motion, Plaintiffs superseded
that complaint with an amended complaint, (the "Amended
Complaint").  (ECF 16).  SOA moved to dismiss the Amended
Complaint on June 11, 2021, (ECF 18), and SBR moved to dismiss
on December 3, 2021.[2]  (ECF 28).

During the course of briefing, on January 21, 2022,
Plaintiffs filed a Motion for Judicial Notice of a Part 573
Safety Recall Report (the "Recall Report") dated December 9,
2021, submitted by SOA to the National Highway Transportation
Safety Administration ("NHTSA").  (ECF 31).  Then, on February
4, 2022, the parties proposed a further briefing schedule to
address whether the Recall Report mooted any or all of the
claims in the Amended Complaint.[3] (ECF 35).  Briefing was
completed on March 18, 2022, (ECF 43), and this matter is now
ripe for the Court's consideration.

Plaintiffs

Aimee and Jared Hickman ("the Hickmans") purchased their
Subaru Ascent in June 2020 in Maryland.  (ECF 16 at 6).  The

---

[2] SBR waived service of the Amended Complaint as of September 4,
2022 and thereafter had 90 days to answer or filed a Rule 12
motion. (ECF 26).

[3] The parties disagreed on the extent of some of the further
briefing and the Court resolved the dispute in its February 4,
2022 Order.  (ECF 36).

Hickmans contend that they made the decision to purchase the vehicle after conducting internet searches on Subaru's website, reviewing the window sticker in the car, and speaking to a Subaru sales representative at the dealership who assured them of the safety and the quality of the vehicle.  (Id. at 7).  The Hickmans allege that their car began revving, lurching, and shuddering around November 2020.  (Id. at 8).  The Hickmans also state that "[o]n or about January 27, 2021, with approximately 11,600 miles on the odometer, Aimee Hickman took her vehicle to Heritage Subaru and complained about the transmission."  (Id.)  They allege that the dealership stated that there were no error codes on the car and therefore did not attempt any repairs. (Id.)  The Hickmans allege that they still experience these defects even though they drive their vehicle in a foreseeable manner.  (Id.)

William Treasurer ("Treasurer") purchased his Subaru Ascent in November 2018 in North Carolina.  (Id. at 8-9).  Treasurer alleges that prior to purchasing the vehicle, he relied on internet articles about the car, the car's window sticker, conversations with a Subaru sales representative, and a test drive he conducted.  (Id. at 9).  He claims that Subaru should have disclosed the transmission defect through these types of media and if he had known about the defect, it would have been material to his decision to purchase the car.  (Id.)  On July

31, 2020, brought his car to the dealership so that the dealership could perform several recalls, including one on his transmission. (Id.)  However, no error codes showed on his transmission. (Id.)  He also alleges that a transmission defect caused his car to completely stall at a red light in January 2021, causing his car to be towed to a Subaru dealership where they completely replaced his transmission. (Id. at 10.)  He states that this experience has resulted in his loss of confidence that his vehicle could provide safe and competent transportation. (Id. at 11).

Kelly and Frank Drogowski (the "Drogowskis") purchased their Subaru Ascent in December 2019 in Pennsylvania. (Id. at 11).  Similar to the Hickmans and Treasurer, they alleged that they relied on internet articles about the car, the car's window sticker, conversations with a Subaru sales representative, and a test drive in making their decision to buy the car. (Id.)  The Drogowskis allege that shortly after they purchased their Ascent, they began to experience "pulling, shuddering, and hesitating, especially when trying to accelerate from a stop." (Id.)  These problems were particularly pronounced where they were driving on an incline. (Id.)

When they took their car into the dealership in mid-July 2019, they allege that they complained about the transmission defect, but the dealership did not do anything about it. (Id.

7

at 12).  They allege that they continued to experience issues
and brought the car back within 10 days, but that the dealership
did not attempt to fix the transmission.  (Id.)  After further
issues, the Drogowskis brought their car to the dealership once
again in September 2019 and that time the dealership discovered
a transmission issue and replaced it.  (Id.)  However, this did
not fix the issue and that they have brought the car back to the
dealership multiple times since then and the dealership has not
fixed the issue.  (Id.)

John Taitano ("Taitano") alleges that he purchased his
Subaru Ascent in California in August 2019.  (Id. at 14).
Taitano alleges that he relied on internet articles about the
car, the car's window sticker, conversations with a Subaru sales
representative, and a test drive in making his decision to buy
the car. (Id. at 15).  He states that "[i]n June 2020, when the
vehicle's mileage was about 15,000 miles, Taitano experienced
the vehicle having limited power while ascending hills, losing
power while being driven, jerking at stop lights, and emitting a
white cloud from the exhaust pipe." (Id. at 16).  In July 2020
and March 2021, Taitano took his car to the dealership,
complaining of these issues, but the dealership told him that
there was nothing wrong with the car.  (Id. at 16).  He states
that he brought the car back later that March and that the
dealership replaced the battery in his car, but that he

8

continues to experience these issues.  (Id.)

Richard Palermo ("Palermo") leased his Subaru Ascent in December 2018 in Massachusetts.  (Id. at 17).  Palermo alleges that he relied on internet articles about the car, the car's window sticker, conversations with a Subaru sales representative, and a test drive in making his decision to buy the car.  (Id.)  He alleges that he began to experience transmission issues like those of the other Plaintiffs shortly after taking possession of the car and that starting in July 2019 he took the car to the dealership to get it repaired several times, but that the dealership never fixed the transmission issues.  (Id. at 18).  He states that his car continues to jolt and stutter to this day.  (Id.)

Lori and Shawn Woiwode ("the Woiwodes") leased their Subaru Ascent in September 2018 in North Dakota.  (Id. at 19).  As with the other named Plaintiffs, the Woiwodes allege that they relied on internet articles about the car, the car's window sticker, and conversations with a Subaru sales representative in making the decision to buy the car.  (Id.)  They allege that they began to experience transmission issues similar to those of the other Plaintiffs in November 2018 and brought the car to the dealership in June 2019 but were told simply that Subaru was working on the issue.  (Id. at 21).  They state that their car was worked on by the dealership in June 2020 but they continue

to experience issues with their transmission.  (Id.)

Carolyn Patol ("Patol") purchased her Subaru Ascent in January 2021 in New York.  (Id. at 22).  Patol relied on the same kinds of internet searches, representations in window stickers, and comments from Subaru sales representatives as the other Plaintiffs in making her decision to purchase her car. (Id.)  She alleges that she began to experience the transmission issues within a week of purchasing the car and brought it to the Subaru dealership in February 2021 for repairs.  (Id. at 23). The dealership did not attempt to remedy her concerns then or later when she again raised them in April 2021.  (Id.)  Patol states that she has lost confidence that her car can provide her with safe and reliable transportation. (Id.)

Cassandra and Steven Sember ("the Sembers") purchased their Subaru Ascent in October 2019 in Virginia.  (Id.)  They reviewed the window sticker, test drove the car, and relied on the Subaru representative's statements about the reliability of the car in deciding to purchase it.  (Id. at 24).  In January 2020, the car began to lag and exhibit other transmission defects which the dealership attempted to remedy that month, but the attempt was unsuccessful.  (Id.)  The Sembers brought the car back to the dealership multiple times thereafter complaining about the transmission defect, but the dealership did not attempt further repairs.  (Id.)  The Sembers state that they still experience

transmission issues with their vehicle.   (<u>Id</u>.)

**DISCUSSION**

I.   <u>**Subject Matter Jurisdiction**</u>

This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332.

II.   <u>**Standard for Rule 12(b)(6) Motion to Dismiss**</u>

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>,

11

40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v.</u>
<u>Allain</u>, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must
take three steps: (1) the court must take note of the elements a
plaintiff must plead to state a claim; (2) the court should
identify allegations that, because they are no more than
conclusions, are not entitled to the assumption of truth; and
(3) when there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.  <u>Malleus v.</u>
<u>George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (quoting <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 664, 675, 679 (2009) (alterations,
quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
<u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhoades</u>, 416
U.S. 232, 236 (1974)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our
decision in <u>Twombly</u> expounded the pleading standard for 'all
civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d
203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before <u>Twombly</u>.").  "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough

12

facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

## III. **Analysis**

Defendants raise a multitude of arguments to combat each of Plaintiffs' claims. The Court will take each argument in turn.

### a. **Whether the Most Recent Recall Moots the Instant Matter**

As a threshold matter prior to addressing any of the parties' substantive arguments, the Court must consider whether the December 9, 2021 Recall of certain Subaru vehicles moots this action or necessitates the filing of an amended complaint

13

to address the Recall.  The Court holds that it does not.

The relevant framework here is the prudential mootness doctrine.  "The central question in a prudential mootness analysis is 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'"  Sierra Club v. U.S. Army Corps of Engineers, 277 F. App'x 170, 172-73 (3d Cir. 2008) (quoting Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987)).  Prudential mootness is distinct from Article III mootness.  Id. at 172.  Article III mootness comes into play where there is no longer a "case or controversy" to bestow jurisdiction on a federal court.  Id. at 172.

Prudential mootness, on the other hand, is discretionary and is implicated where "the controversy is "'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" Id. (quoting Chamber of Commerce v. U.S. Dep't of Energy, 627 F.2d 289, 291 (D.C.Cir.1980)).  In the context of a recall, "[c]ourts have routinely declined to apply this doctrine where plaintiffs seek not just equitable relief, but legal relief that exceeds what defendants were offering through a recall."  Davis v. BMW of N. Am., LLC, No. 19-CV-19650, 2022 WL 3646571, at *3 (D.N.J. Aug.

14

23, 2022).

Generally, an attack based on the prudential mootness doctrine, which would fall under Rule 12(b)(1), should be construed as a factual attack on standing and therefore would only be appropriate to consider after an answer has been filed. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir. 1977) ("This 12(b)(1) factual evaluation may occur at any stage of the proceedings, from the time the answer has been served."). Prior to the filing of an answer, any attack on standing must be based on the allegations in the complaint. Askew v. Trustees of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc., 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial.").

Because no answer has been filed, this Court construes Defendants' arguments on mootness as facial attacks on standing. Mortensen, 549 F.2d at 891-92. As noted above, application of the prudential mootness doctrine, even in the context of a facial attack, is not appropriate where legal relief is sought that exceeds the relief provided through a recall. Compare Davis, 2022 WL 3646571 at *3, with Cheng v. BMW of N. Am., LLC, No. CV 12-09262 GAF SHX, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) (applying the doctrine of prudential mootness

15

following a recall because the plaintiffs did not plead any monetary damages).  Like in Davis, Plaintiffs clearly allege diminution in value for their vehicles, which is a separate request for relief than a recall.  (See ECF 16 at 87, 103, 111). To dismiss the action now would be to dismiss the matter without giving Plaintiffs a chance to seek complete relief.  Sater v. Chrysler Grp. LLC, No. EDCV1400700VAPDTBX, 2014 WL 11412674, at *5 (C.D. Cal. Oct. 7, 2014) ("To be sure, ordering Chrysler to replace the tie rods would duplicate the NHTSA-supervised recall, but holding it accountable for the other alleged injuries affords relief the recall does not provide. Dismissing this case as prudentially moot would likely leave the owners of Class Vehicles without complete relief.") (internal quotation marks omitted).  Because Plaintiffs have stated claims on the face of their Amended Complaint that go beyond the Recall, the Court will not dismiss the Amended Complaint on this basis.   "If [Defendants] still wishes to prove that Plaintiffs have no standing to sue [them], [they] must answer, participate in discovery, and make a motion based on a properly developed record."[4]  NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue

---

[4] Though the Court does not base its holding on this scope of the Recall given that Defendants have not answered the Amended Complaint, the Court notes that the Recall only implicates "2019-2020 Subaru Ascent" models that had issues "immediately after the engine was started."[44]  (ECF 31-2 at 2).  A fair reading of Plaintiffs' complaint reveals that they are alleging

Shield of New Jersey, Inc., No. CIV. 12-753 KM, 2014 WL 2854707,
at *4 (D.N.J. June 23, 2014).

Because the Court finds that this matter is not
prudentially moot and because the Court finds that it can fairly
assess the other arguments in the Motions to Dismiss
notwithstanding the Recall, the Court will not require
Plaintiffs to file an Amended Complaint on this basis.

### b. Whether the Express Warranty Covers Design Defects

SOA first argues that Count I, for violation of the express
warranty, must be dismissed because the express warranty
disclaims design defects and SOA argues that the Amended
Complaint only alleges a design defect with the transmission.
The Court disagrees.  First, as mentioned above, the Amended
Complaint alleges workmanship defects with the transmission,
which is distinct from a design defect.  Second, this Court
address this very issue in Powell v. Subaru of Am., Inc., 502 F.
Supp. 3d 856, 883 (D.N.J. 2020) where it determined that it
would be premature to dismiss an express warranty claim on the
ground that it only alleged design defects at the motion to
dismiss stage.  Courts in this district have previously "refused

---

issues that extend far beyond those that occur immediately after
starting the engine.  Specifically, Plaintiffs complain of
"hesitation, jerking, shuddering, lurching, squeaking, whining,
or other loud noises, delays in acceleration, inconsistent
shifting, stalling, and a loss of power or ability to accelerate
at all" while driving the car.  (ECF 16 at 2).

to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings stage of litigation." In re Volkswagen Timing Chain Prod. Liab. Litig., 2017 WL 1902160, at *12 (D.N.J. May 8, 2017). See also Alin v. Am. Honda Motor Co., 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) (holding that "where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."); Cox v. Chrysler Grp., LLC, 2015 WL 5771400, at *6 (D.N.J. Sept. 30, 2015) (same).  Construing these claims in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that these defects could be at least partly caused by a manufacturing defect.  The fact that Plaintiffs' allegations could be construed as design defects as well, or in the alternative, is insufficient to defeat these claims at the motion to dismiss stage.

### c. Whether Treasurer Has Stated a Claim for Breach of Express or Implied Warranty

SOA next contends that Treasurer has not stated a claim for a breach of an express or implied warranty.  SBR similarly contends that Treasurer has not stated a claim for breach of implied warranty against it.  The Court agrees with Defendants

on this argument.  To evaluate this argument, the Court must begin with a choice of law analysis as to whether to apply New Jersey or North Carolina law to Treasurer's warranty claims.

In diversity cases, federal courts apply the forum state's choice of law rules to determine which state's substantive laws are controlling.  Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013) (citing Klaxon Co. v. Stentor Elect. Mfg. Co., Inc., 313 U.S. 487, 496 (1941)).  When conducting a choice of law analysis, New Jersey uses the "most significant relationship" test of the Restatement (Second) of Conflict of Laws.  P.V. v. Camp Jaycee, 197 N.J. 132, 155 (2008) ("In balancing the relevant elements of the most significant relationship test, we seek to apply the law of the state that has the strongest connection to the case.").

Choice of law analysis is a two-step process.  First, the Court must determine whether there is an actual conflict between the laws of the two forums; "If there is no conflict or only a 'false conflict,' where 'the laws of the two jurisdictions would produce the same result on the particular issue presented,' the substantive law of the forum state applies."  Skeen v. BMW of North America, LLC, 2014 WL 283628, at *5 n.5 (D.N.J. Jan. 24, 2014) (quoting 15A C.J.S. Conflict of Laws § 30 (2013) and Williams v. Stone, 109 F.3d 890, 893 (3d Cir. 1997)).  If the court finds an actual conflict of laws exists, it proceeds to

step two, where it "must determine which state has the 'most
significant relationship' to the claim, by 'weigh[ing] the
factors set forth in the Restatement section corresponding to
the plaintiff's cause of action.'" Cox, 2015 WL 5771400, at *4
(quoting Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 717 (D.N.J.
2011)); see also P.V. ex rel. T.V. v. Camp Jaycee, 962 A.2d 453,
460 (N.J. 2008).

The Court notes that "'it can be inappropriate or
impossible for a court to conduct [a choice of law] analysis at
the motion to dismiss stage when little or no discovery has
taken place.'" Snyder, 792 F.Supp.2d at 717 (quoting In re
Samsung DLP Television Class Action Litig., 2009 WL 3584352, at
*3 (D.N.J. Oct. 27, 2009)). However, "'[s]ome choice of law
issues may not require a full factual record and may be
amendable to resolution on a motion to dismiss.'" Id. (quoting
Harper v. LG Elecs. USA, Inc., 595 F.Supp.2d 486, 491 (D.N.J.
2009)). The Court should make a threshold inquiry into whether
a choice of law analysis is appropriate at the motion to dismiss
stage by determining whether the choice of law issues require a
full factual record or not. Id. The factual record may be
sufficient for certain choice of law determinations, but not
others. See id. "Importantly, this choice-of-law analysis is
conducted on a claim-by-claim basis." Id.

First, the Court discerns no conflict with respect to

20

Treasurer's express warranty claim between New Jersey and North Carolina law as the elements are essentially the same in both states.  Rapid Models & Prototypes, Inc. v. Innovated Sols., 2015 WL 4914477, at *4 (D.N.J. Aug. 18, 2015); Prichard Enterprises, Inc. v. Adkins, 858 F. Supp. 2d 576, 584 (E.D.N.C. 2012).  Therefore, the Court will apply New Jersey law.

The elements under New Jersey law are: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description."  Rapid Models & Prototypes, Inc., 2015 WL 4914477 at *4.  However, if the car is repaired during the warranty period, there is no breach of warranty.  See Butera v. Honeywell Int'l, Inc., 2020 WL 64568, at *4 (D.N.J. Jan. 6, 2020) ("[T]here can be no breach where [the plaintiff] did not provide Defendant with an opportunity to repair or replace" the item subject to the warranty.).  Here, Treasurer states that the dealership did replace his transmission and he does not allege that he has had further difficulties with the car since that replacement.  Therefore, he fails to allege a plausible claim for a breach of the express warranty.

Treasurer's implied warranty claim in Count II fails for a different reason.  First, the Court holds that there is a false

conflict between New Jersey and North Carolina law on the issue
of implied warranty in that North Carolina law requires there to
be privity between the plaintiff and the defendant while New
Jersey law does not.  See City of High Point, N. Carolina v.
Suez Treatment Sols. Inc., 485 F. Supp. 3d 608, 627 (M.D.N.C.
2020) ("Privity is still required in an action for breach of
implied warranties that seeks recovery for economic loss.");
Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 454 (D.N.J.
2012) ("New Jersey does not require privity between a plaintiff
and defendant for such claims.").  Though North Carolina law
requires privity on an implied warranty claim, there is an
exception for an intended beneficiary, such as the ultimate
purchaser of a car from a dealership.  Coastal Leasing Corp. v.
O'Neal, 103 N.C. App. 230, 236 (1991) ("If the third party is an
intended beneficiary, the law implies privity of contract.").
Therefore, the Court will apply New Jersey law.

Treasurer has not alleged that his car is unmerchantable or
unfit for ordinary use since its repair.  Gindy Mfg. Corp. v.
Cardinale Trucking Corp., 268 A.2d 345, 349 (Law. Div. 1970)
(suggesting that repairs encompass the implied warranty of
merchantability) (disapproved of on other grounds by Ramirez v.
Autosport, 440 A.2d 1345 (1982)).  Without a clear statement of
what exactly constitutes the breach of his implied warranty, the
Court holds that Treasurer's claim does not meet the

plausibility pleading standard.  <u>Malleus</u>, 641 F.3d at 563.  The
omission of clear allegations that Treasurer cannot use his car
for its ordinary purpose is fatal to his implied warranty claim.

### d. Whether Plaintiffs Have Stated Claims for Implied Warranty

Defendants generally make arguments that are duplicative of
the arguments that they made with respect to Treasurer on the
claim of breach of implied warranty.  First, they argue that
Plaintiffs have not alleged that their cars were not reasonably
fit for the general purposes for which they were sold.  Second,
SOA argues that in addition to Treasurer, Taitano, Patol, and
the Sembers lack the necessary privity to assert their claims.
SBR makes the same argument but only for Treasurer, Patol and
Sembers.  The Court disagrees.

Taitano, Patol, and the Sembers purchased their cars in
California, New York, and Virginia, respectively.  First, the
Court notes that it finds no conflict or at worst a false
conflict between the law of New Jersey and that of California,
New York, and Virginia.[5]  Therefore, it will apply New Jersey

---

[5] SOA argues that California, New York, and Virginia have a
privity requirement without applicable exceptions for implied
warranty claims.  That is not the case.  <u>Henry v. Rehab Plus
Inc.</u>, 404 F. Supp. 2d 435, 443 (E.D.N.Y. 2005) ("However, in New
York, privity is no longer required for recovery under a theory
of breach of implied warranty."); <u>T & M Solar & Air
Conditioning, Inc. v. Lennox Int'l Inc.</u>, 83 F. Supp. 3d 855, 874
(N.D. Cal. 2015) (Noting that California has an exception when
"when the plaintiff relies on written labels or advertisements

law.  "Under an implied warranty of merchantability, a manufacturer warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet." Greene v. BMW of N. Am., 2012 WL 5986457, at *3 (D.N.J. Nov. 28, 2012) (internal alterations omitted).  "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation."  Id.  The Court is not prepared to hold at the motion to dismiss stage that a car with a shuddering and malfunctioning transmission that causes issues steering and merging, which each of the named Plaintiffs alleges they have in their cars, is a safe and reliable car.  Therefore, other than for Treasurer, the Court declines to dismiss implied warranty claims at this stage in the litigation.

### e. Whether Pre-Suit Notice Was Required for the Warranty Claims

Defendants next argue that the laws of Virginia, California, and North Carolina require pre-suit notice in order to state claims of express or implied warranty.  The Court need not consider this argument as it relates to North Carolina law,

---

of a manufacturer"); Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc., 254 Va. 240, 246 (1997) (leaving open the possibility that privity is not required on an implied warranty claim where the remedy sought is not purely damages for economic loss).  For the claim asserted under Virginia law, the remedy sought includes injunctive relief such as a recall and cannot fairly be considered one purely for damages for economic loss. (See ECF 16 at 115-16).

as the Court has already stated that it will dismiss Treasurer's warranty claims.  As the Court has already determined that it will apply New Jersey law to the Virginia and California claims, it will proceed to conduct its analysis under New Jersey law.[6] Since New Jersey law does not require pre-suit notice, the Court will decline to dismiss Plaintiffs' warranty claims on those grounds.  In re Volkswagen, 2017 WL 1902160 at *13 ("Pre-suit notice is not required when the action is brought against a remote manufacturer and/or seller.").

### f. Whether Taitano's Claim Under the Song-Beverly Act is Cognizable

The elements of a claim under the Song-Beverly Act, Cal. Civ. Code §§ 1792 and 1791.1, et seq., are: "(1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or

---

[6] SOA is correct that Virginia and California both require pre-suit notice for the breach of warranty claims while New Jersey law does not.  See Hebron v. Am. Isuzu Motors, Inc., 60 F.3d 1095, 1098 (4th Cir. 1995); Minkler v. Apple, Inc., 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014).  However, the Court determines that any conflict is a false conflict as it would come to the same conclusion under the law of all of the jurisdictions because Plaintiffs did in fact allege that they repeatedly brought their cars to Subaru dealerships for servicing before filing this suit.

his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element)." McGee v. Mercedes-Benz USA, LLC, 2020 WL 1530921, at *4 (S.D. Cal. Mar. 30, 2020).  SOA argues that Taitano fails at element one because he only alleges a design defect.[7]  As this Court stated above, it would be premature to determine whether the defects alleged are solely design defects.  Therefore, the Court rejects this argument.

SOA alternatively argues that Taitano has not alleged that he presented the car for a reasonable number of repairs.  The Court disagrees.  Taitano alleges that he brought his car to the dealership for repair three times to fix the transmission issue. The fact that the dealership tried to remedy the car's issues by replacing the battery instead of the transmission, does not change the Court's view.  The Court thus declines to dismiss Count VII.

### g. Whether Plaintiffs Have Adequately Pled Their Fraud Claims

Defendants mount several arguments to defeat Plaintiffs' claims sounding in fraud.  They argue that Plaintiffs have not plead with particularity under Federal Rule of Civil Procedure

---

[7] Plaintiffs concede that they are not asserting a claim under the Song-Beverly Act against SBR for an express warranty.  (ECF 33 at 3).  Thus, SBR's argument that Plaintiffs may not assert an express warranty claim against it under that Act is moot.

9(b) an affirmative misrepresentation or fraud by omission.[8]
They also argue that Plaintiffs have not alleged that Defendants
had a duty to disclose and that the economic loss doctrine bars
Plaintiffs' claims.  The Court disagrees.

This Court's analysis in Powell is helpful here.[9]  In
Powell, the Court held that the plaintiffs sufficiently alleged
an affirmative misrepresentation under Rule 9(b) where the
plaintiffs pleaded they relied on advertisements from a
manufacturer and that "advertisements and representations made
by a car manufacturers' sales and marketing departments can
suffice to plead a fraudulent misrepresentation."  Powell, 502
F. Supp. 3d at 888.  Plaintiffs have explicitly done so in the
Amended Complaint, pointing to representations in Subaru
advertisements and on the internet multiple times.  Similarly,
for omissions, Powell held that the plaintiffs sufficiently
pleaded omissions where SOA had exclusive knowledge about the
defect.  Id.  SOA takes its argument a step further this time,
stating that they had no duty to disclose defects to Plaintiffs

_____

[8] In general, Federal Rule of Civil Procedure 9(b) requires a
party alleging fraud to "state with particularity the
circumstances constituting fraud . . . ." Id.

[9] SBR's arguments criticizing the holding in Powell are based on
other district court opinions that are not binding on this
Court.  (See ECF 28 at 9).  Even so, the Court does not find the
facts and analysis in those cases sufficiently compelling to
warrant a different result here.

because there was no fiduciary relationship.  SBR makes a
similar argument that it had no duty to disclose to Plaintiffs
because it is a foreign parent company of SOA and Plaintiffs
cannot point to partial disclosures by SBR that would trigger a
duty to disclose.  (ECF 28 at 11).

The various states whose laws apply in this matter have
differing rules regarding when knowledge gives rise to a duty to
disclose.  The parties also have not briefed which state's laws
should apply to Plaintiffs' fraudulent omission claim and the
location of such omissions such that the Court can presently
conduct the most significant relationship test.  Therefore, the
Court finds it premature at this time to address that argument.
See id. at 877; Harper, Inc., 595 F. Supp. 2d at 491 ("Some
choice of law issues may not require a full factual record and
may be amenable to resolution on a motion to dismiss.")

Similar to the argument on duty to disclose, the parties
have not explained which state's law should apply to the common
law fraud claims for purposes of analyzing the economic loss
doctrine.  The Court will, however, analyze the argument as its
independent review of the law of each of the relevant states in
this action reveals that the doctrines are substantially the
same across all of them.[10]  See Powell, 502 F. Supp. 3d at 894.

---

[10] Abi-Najm v. Concord Condo., LLC, 280 Va. 350, 363, 699 S.E.2d
483, 490 (2010) ("The fraud alleged by the Purchasers was

The axis of the economic loss doctrine is whether "the fraud allegations directly relate to the inducement of the contract, instead of the *performance* of the contract, and thus establish an independent tort claim."  Id.(emphasis in original).  Here, Plaintiffs have sufficiently alleged that they would not have purchased their vehicles but for Defendants' misrepresentations.

That claim is distinct from the claim that Defendants breached contractual obligations such as the express warranty.[11] Plaintiffs allege that both Defendants contributed to the manuals and advertisements for the Ascent, (ECF 16 at 27).  They also point to an excerpt from the Ascent's 2019 sales brochure

---

perpetrated by Concord *before* a contract between the two parties came into existence, therefore it cannot logically follow that the duty Concord allegedly breached was one that finds its source in the Contracts.") (emphasis in the original); Cummings v. Carroll, 2021-NCSC-147, ¶ 24, 379 N.C. 347, 359, 866 S.E.2d 675, 685 (allowing fraud claims to proceed when the allegations did not rely on contractual provisions); Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016) (same); Dwoskin v. Bank of Am., N.A., 850 F. Supp. 2d 557, 569 (D. Md. 2012) (same); Cooper v. Simpson Strong-Tie Co., Inc., 460 F. Supp. 3d 894, 917 (N.D. Cal. 2020) (same); In re WellNx Mktg. & Sales Pracs. Litig., 673 F. Supp. 2d 43, 57 (D. Mass. 2009) (same); EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 278 (S.D.N.Y. 2004) (same); Graham Const. Servs. v. Hammer & Steel Inc., 755 F.3d 611, 616 (8th Cir. 2014) (not squarely defining the contours of the fraud exception but discussing the economic loss doctrine in North Dakota in much the same manner as the other states).

[11] Plaintiffs are not proceeding on express warranty claims against SBR. (ECF 16 at 63).

that the Ascent had "active safety systems," as well as the
brochure's statements on the features of the transmission's "X-
MODE," (id. at 31-32).  Together these allegations convince the
Court for the purpose of deciding a motion to dismiss Plaintiffs
have sufficiently pled pre-contract misrepresentations and
concealment through partial disclosures.  Nothing in this
Opinion bars the Defendants from renewing their economic loss
defense if Plaintiff's allegations are unsupported through
discovery.  Cap. Inv. Funding, LLC v. Lancaster Grp. LLC, No. CV
08-4714 (JLL), 2015 WL 5882785, at *2 (D.N.J. Oct. 6, 2015)
("The Court reiterates that discovery may ultimately prove
Moving Defendants' contention that the economic loss doctrine
applies here, but given the breadth of allegations in the Third
Amended Complaint, the Court cannot definitively state prior to
discovery that the doctrine indeed applies.").  Therefore, the
Court is not prepared to hold now that the economic loss
doctrine bars Plaintiffs' common law fraud claims.[12]

Defendants next argue that Treasurer's claim under the
North Carolina Consumer Protection Act ("UDTPA") is barred by
the economic loss doctrine and that his breach of warranty claim

---

[12] The Court also notes that SBR's reliance on Werwinski v. Ford
Motor Co., 286 F.3d 661 (3d Cir. 2002), abrogated by Earl v.
NVR, Inc., 990 F.3d 310 (3d Cir. 2021) is inapposite as its
holding on the economic loss doctrine was narrowly tailored to a
Pennsylvania statute and even that holding was overturned by
Earl v. NVR, Inc., 990 F.3d 310 (3d Cir. 2021).

is not a basis to allow his UDTPA claim to proceed.  First, as explained in Powell, many federal courts have declined to apply the economic loss doctrine to the UDTPA where North Carolina law is murky on the subject.  Id.; Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 n.5 (4th Cir. 2012)("North Carolina courts have never addressed whether NCUDTPA claims are subject to the [economic loss doctrine].").  Therefore, the Court will not dismiss the UDTPA claim on that basis.  Similarly, since Treasurer alleges that Defendants misrepresented the quality and nature of his vehicle to him before he purchased it, the Court does not construe the UDTPA claim as based solely on a breach of contract and also will not dismiss it on that basis.

Defendants attack Taitano's California's Unfair Competition Law ("UCL") claim on the basis that he is not eligible for restitution or equitable relief.  The Court agrees with Defendants.  In SOA's motion to dismiss, SOA argues that it was the dealerships, not SOA, that received any money for repairs and thus a restitution claim does not lie against it.  As this Court held in Powell, the record is not complete as to where any money Taitano spent on his car went and whether SOA holds any of it.  That would normally entitle Plaintiffs to discovery on that point.  Powell, 502 F. Supp. 3d at 896; McDermott v. Cummins, Inc., 2016 WL 3287335, at *6 (D.N.J. June 7, 2016).

However, as SBR alludes to in its motion to dismiss,

restitution under the UCL is an equitable remedy and Plaintiffs must show that an adequate remedy at law does not exist before seeking equitable relief.  <u>Sonner v. Premier Nutrition Corp.</u>, 971 F.3d 834, 844 (9th Cir. 2020) ("[The plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL[.]"); <u>Sharma v. Volkswagen AG</u>, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) ("The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, <em>Sonner</em> holds that it does not.").  Plaintiffs do not plead anywhere in the Amended Complaint that they do not have an adequate remedy at law.[13]  Therefore, the Court will dismiss the

---

[13] The Court notes that at first glance this may simply appear to be permissible alternative pleading on Plaintiffs' part.  Fed. R. Civ. P. 8(d) (permissible to plead alternative or inconsistent theories).  And in the mine run case that would be the appropriate outcome.  Indeed, the cases are legion for the proposition that a plaintiff can plead a legal claim alongside a claim for equitable relief.  <u>See, e.g.</u>, <u>Gramercy Advisors, LLC v. Coe</u>, No. 13-CV-9069 VEC, 2014 WL 4197370, at *6 (S.D.N.Y. Aug. 25, 2014) ("Defendants assert that the Plaintiffs do not sufficiently plead that they lack an adequate remedy at law. Plaintiffs' adequate remedies at law are their breach of contract claims. It is, however, permissible to plead specific performance and breach of contract claims in the alternative."). However, here the general rule is trumped in the narrow context of a California UCL claim in light of the Ninth Circuit's decision in <u>Sonner</u> which explicitly held that for a UCL claim to go forward a plaintiff must explicitly plead the lack of an adequate remedy at law.  <u>Sonner</u>, 971 F.3d at 844.  While Sonner

UCL claim.

Defendants also argue that Patol has not stated a claim under the New York General Business Law ("NYGBL") §§ 349, 350. N.Y. Gen. Bus. Law §§ 349, 350.  They argue that Patol does not allege that the deceptive conduct of which she complains occurred in New York and that requires dismissing the NYGBL claims.  SBR argues more specifically that Plaintiff has failed to allege that it conducts any business in New York.  (ECF 28 at 16-17).  SOA is correct that to state a claim under the NYGBL, "the transaction in which the consumer is deceived must occur in New York."  Rodriguez v. It's Just Lunch, Int'l, 2010 WL 685009, at *7 (S.D.N.Y. Feb. 23, 2010).  But Patol explicitly alleges that she bought her car in "Bayside Queens, New York" and that she relied on representations made by a dealership representative to buy the car.  For those reasons alone, SOA's argument fails.  The claim against SBR is more tenuous given that it is SOA's foreign parent company, but Plaintiffs' allegations that SBR directed advertisements and written materials related to the Ascent, (ECF 16 at 27), convinces the

is not binding on the Court, a Ninth Circuit decision interpreting a statute of a state within its jurisdiction is highly persuasive authority and this Court now adopts it.  The Court notes that this holding today may seem inconsistent with its holding in Powell, where the Court did not dismiss a UCL claim.  Powell, 502 F. Supp. 3d at 896.  This issue was not raised in the briefing in Powell, likely because Sonner was decided after briefing was completed.

Court that dismissal of the claim against SBR for misrepresentations made in New York would be premature at this stage.

SOA further argues that the § 350 claim fails because Patol does not allege that she relied on a misleading advertisement by SOA. That is not the case. "[T]o establish a prima facie case under NYGBL § 350, a plaintiff must show: (1) the defendant directed advertisements at consumers; (2) the advertisements mislead in a material way; and (3) an injury, as a result of the advertisements." Id. at 10. Patol alleges that she relied on research she conducted on the Internet regarding the Subaru Ascent and the Amended Complaint attaches examples of the advertisements that Plaintiffs allegedly saw when purchasing their cars. Similar to the Court's analysis in Powell, the Court does not construe statements specifically pointing out the Ascent's "active safety systems" and the "X-MODE" feature of the transmission, (ECF 16 at 31-32), as puffery when considered in the context of the Amended Complaint as a whole. Powell, 502 F. Supp. 3d at 888 (noting that specific claims in advertisements about safety such as "Eyesight Driver Assist Technology" was enough to make a fraud claim viable). The Court will not require more of Patol at the motion to dismiss stage.

**h. Whether Plaintiffs' Request that the Court Order Subaru to Issue a Voluntary Recall Is Preempted By the National Traffic and Motor Vehicle Safety Act of 1966 and Whether**

34

**Plaintiffs Are Entitled to Injunctive Relief for False
Advertising Claims**

Defendants argue that Plaintiffs' request that the Court
order them to issue a voluntary recall for the Subaru Ascent is
preempted by the National Traffic and Motor Vehicle Safety Act
of 1966, 49 U.S.C. § 30101, et seq., (the "Safety Act").  The
Court declines to limit Plaintiffs' potential remedies at this
stage.  There is no clear controlling precedent on the
preemptive effect of the Safety Act on state law remedies.  See
Robinson v. Kia Motors Am., Inc., 2015 WL 5334739, at *16
(D.N.J. Sept. 11, 2015).  In light of the other remedies sought
by Plaintiffs, the Court declines to opine on this fairly narrow
preemption issue at the motion to dismiss.  Id.  ("In any event,
given that Plaintiffs seek injunctive and declaratory relief as
part of their surviving claims, there is no need for the Court
to limit Plaintiffs' remedies at this stage.").

Conversely, the Court will grant Defendants' motion to
dismiss the claim for future injunctive relief based on false
advertising because Plaintiffs are past Subaru customers and
have not plausibly pled that they are likely to purchase a
Subaru in the future.  The controlling case here is McNair v.
Synapse Grp. Inc., 672 F.3d 213, 224 (3d Cir. 2012).  In McNair,
former subscribers to magazines marketed by the defendant sought
an injunction barring the defendant from sending misleading

35

marketing offers in the future.  Id.  The plaintiffs claimed
that they had standing to seek the injunction because the
defendant was "the leading marketer of magazine subscriptions
and bombard[ed] the public with its offers; because it offer[ed]
compelling deals in which it [did] not clearly identify itself;
and because it sen[t] customers advance notifications that
[were], by design, meant to fool consumers into discarding the
notification received." Id.

The Third Circuit held that the allegation that the
plaintiffs might want to subscribe again to one of the magazines
touted by the defendants was not enough.  Id. at 224-25 ("Unless
they decide to subscribe again, then, there is no reasonable
likelihood that they will be injured by those techniques in the
future. They do not allege that they intend to subscribe
again. Instead, they say that they may, one day, become Synapse
customers once more because" of the compelling offers by the
defendant).  The Third Circuit underscored that it would expect
a consumer harmed by the advertising of a product in the past to
integrate that knowledge and act rationally going forward.  Id.
at 225 ("Whether they accept an offer or not will be their
choice, and what that choice may be is a matter of pure
speculation at this point.").

The Court holds that the pleading of future harm in this
matter falls into the ambit of McNair's holding and makes such

36

harm purely speculative.  The closest claim for future harm that the Court discerns in the Amended Complaint is Taitano's allegation that "[a]s a result of the Transmission Defect, Taitano is unable to rely on Subaru's advertising, despite wanting to purchase a Subaru vehicle in the future."  (ECF 16 at 17).  This is very much like the plaintiffs' contention in McNair that they might want to subscribe to a magazine marketed by Defendant in the future.  Miller v. Samsung Elecs. Am., Inc., No. CV144076ESMAH, 2016 WL 6806331, at *5 (D.N.J. Nov. 16, 2016) ("Although Plaintiff alleges that he intends to purchase another laptop from Defendants, the Court must assume that Plaintiff will act rationally in light of the information he possesses.").  Accordingly, the Court will grant Defendants' motion to dismiss the claim for future injunctive relief based on false advertising.

**i. Leave to Amend**

In the Third Circuit "[l]eave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile."  Free Speech Coal., Inc. v. Att'y Gen. of U.S., 677 F.3d 519, 545 (3d Cir. 2012).  If an amended complaint would not withstand a motion to dismiss, granting amendment would be futile.  Heartland Payment Sys., LLC v. Carr, No. 318CV09764BRMDEA, 2021 WL 302918, at *3 (D.N.J. Jan. 29, 2021)

("The trial court may properly deny leave to amend where the
amendment would not withstand a motion to dismiss."). (internal
alteration and citation omitted).  Similarly, granting leave to
amend would be inequitable where it would cause unfair delay to
the defendant.  Based on the present record there is no evidence
that plaintiff is acting in bad faith or with a dilatory motive.
Bonanni v. Thompson, No. CV 14-4745 (NLH/JS), 2014 WL 12617283,
at *1 (D.N.J. Dec. 22, 2014) ("Additionally, there is no
unexplained delay or prejudice to defendants that would come
from this amendment as it complies with the Court's September
17, 2014 Scheduling Order.").

Of the Counts dismissed, it is possible that Treasurer can
plead more particular facts as to why he continues to suffer
harm so as to make out a plausible warranty claims.  As it
relates to the effect of the Recall instituted after the filing
of the Amended Complaint, the Court will allow, but not require
as Defendants request, Plaintiffs to file an amended complaint
addressing that issue if they so choose.  The Court will give
Plaintiffs 30 days from the date of the Order accompanying this
Opinion to file an amended complaint with respect to those two
issues.

However, the Court finds that leave to amend with respect
to Plaintiffs' request for injunctive relief on false
advertising would be futile as there does not appear a plausible

38

way for Plaintiffs to plead a substantial likelihood of future harm in light of <u>McNair</u>.  <u>Id</u>., 672 F.3d at 224.  It stretches the imagination to imagine a plausible complaint that on the one hand pleads that Subaru's practices are so deficient that they have "lost confidence", (<u>see</u> ECF 16 at 23), and pleads on the other hand that they intend to purchase a Subaru again in a free market system.  Thus, the Court will not grant leave to amend the claim for injunctive relief for future false advertising on the grounds that such a claim would be futile.

**CONCLUSION**

For the reasons expressed above, SOA's motion to dismiss the Amended Complaint (ECF 18) and SBR's motion to dismiss the Amended Complaint (ECF 28) will be granted in part and denied in part.[14]  The Court will also grant Plaintiffs' motion for judicial notice.  Plaintiffs shall have 30 days to file a further amended complaint in accordance with the directives in this Opinion.

An appropriate Order will be entered.

Date: October 19, 2022            s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

---

[14] The Court will deny as moot SOA's original motion to dismiss (ECF 14) as it was superseded by the instant one before the Court.